**FITAPELLI & SCHAFFER, LLP**
Joseph A. Fitapelli
Brian S. Schaffer
Frank J. Mazzaferro
475 Park Avenue South, 12th Floor
New York, NY 10016
Telephone: (212) 300-0375

**OUTTEN & GOLDEN LLP**
Justin M. Swartz
Sally J. Abrahamson
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: (212) 245-1000

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **JAMEL FLOOD, IRA HEASTON, ISAAC HEASTON, and JOSEPHINE DIAZ, on behalf of themselves and all others similarly situated,**<br><br>**Plaintiffs,**<br><br>-against-<br><br>**CARLSON RESTAURANTS INC., CARLSON RESTAURANTS WORLDWIDE INC., and T.G.I. FRIDAY'S INC.,**<br><br>**Defendants.** | No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiffs Jamel Flood, Ira Heaston, Isaac Heaston, and Josephine Diaz (collectively "Plaintiffs"), individually and on behalf of all others similarly situated, as class representatives, upon personal knowledge as to themselves, and upon information and belief as to other matters, allege as follows:

## NATURE OF THE ACTION

1.     This lawsuit seeks to recover minimum wages, overtime compensation, spread-of-hours pay, misappropriated tips, uniform-related expenses, unlawful deductions, and other wages for Plaintiffs and their similarly situated co-workers – servers, bussers, runners, bartenders, barbacks, hosts, and other "tipped workers" – who work or have worked at T.G.I. Friday's restaurants owned and/or operated by Carlson Restaurants Inc., Carlson Restaurants Worldwide

Inc., and T.G.I. Friday's Inc. nationwide (collectively "T.G.I. Friday's" or "Defendants").

2.  Plaintiffs bring this action on behalf of themselves and similarly situated current and former employees who elect to opt in to this action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), and specifically, the collective action provision of 29 U.S.C. § 216(b), to remedy violations of the wage-and-hour provisions of the FLSA by Defendants that have deprived Plaintiffs and others similarly situated of their lawfully earned wages.

3.  Plaintiffs also bring this action on behalf of themselves and similarly situated current and former tipped workers in New York pursuant to Federal Rule of Civil Procedure 23 ("Rule 23") to remedy violations of the New York Labor Law ("NYLL") Article 6, §§ 190 *et seq.*, and Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

4.  Carlson Restaurants Inc. and Carlson Restaurants Worldwide Inc. ("Carlson") are among the largest private companies in the world.[1]

5.  Carlson is a family-owned hospitality and travel company that operates some of the world's most recognizable brands including Quorvus Collection, Radisson Blu, Radisson, Radisson Red, Park Plaza, Park Inn by Radisson, Country Inns & Suites By Carlson, T.G.I. Friday's, and Carlson Wagonlit Travel.

6.  Carlson operates 1,300 hotels in 100 countries and territories, 920 T.G.I. Friday's restaurants in 60 countries and territories, and employs more than 175,000 people worldwide.

7.  As of 2013, Calrson's T.G.I. Friday's restaurants had system-wide revenues of approximately $2.7 billion.

8.  Defendants have maintained control, oversight, and direction over Plaintiffs and

---

[1]      http://www.carlson.com/our-company/index.do

out garbage; (15) cleaning the customer bathroom; (16) brewing large batches of tea and coffee; and (17) breaking down and cleaning the tea/coffee and soda stations.

24.     The "side work" described above is not specific to particular customers, tables, or sections, but is performed in mass quantities for the entire shift or for future shifts.  Moreover, as these duties are not related to Plaintiffs' duties as tipped workers, Plaintiffs are entitled to the full minimum wage.

25.     Defendants' timekeeping system is capable of tracking multiple job codes for different work assignments.

26.     Defendants also maintain a policy and practice whereby tipped workers are encouraged to work off-the-clock.

27.     For example, managers informed Plaintiffs that if they were "burning the clock," (approaching overtime in a given week), Plaintiffs should punch in only after they have received their first customer rather than when they arrived at the restaurant.

28.     Managers often punched Plaintiffs out after they completed serving tables in order to reduce the recorded number of hours worked.

29.     Although Plaintiffs continued to perform work for Defendants after their managers clock them out, they did so off-the-clock and without compensation.

30.     Some of the work that Plaintiffs performed off-the-clock was work in excess of forty hours in a workweek.

31.     While working off-the-clock, Plaintiffs were engaged in non-tip producing "side work," as described above.

32.     Defendants also "shaved" time from the total number of hours Plaintiffs worked and recorded in their time records.

33.     Managers informed Plaintiffs that they reduced the hours Plaintiffs worked and recorded in order to stay within T.G.I. Friday's labor matrix.

34.     Defendants maintain a policy and practice whereby tipped workers are required to wear uniforms featuring the T.G.I. Friday's logo.

35.     Defendants maintain a dress code policy that requires tipped workers' uniforms be "clean" and "wrinkle free."

36.     Defendants only supply tipped workers with one uniform.

37.     Defendants do not supply tipped workers with a sufficient number of uniforms for multiple shifts.

38.     Defendants do not launder tipped workers' uniforms.

39.     Defendants require Plaintiffs and other tipped workers to pay for the cleaning and maintenance of their uniforms.

40.     Defendants also require Plaintiffs and other tipped workers to engage in a tip distribution scheme whereby they must share tips with silverware rollers and expeditors.

41.     Silverware rollers and expeditors are not entitled to tips under the FLSA or the NYLL.

42.     Silverware rollers work in the back-of-the-house and roll large quantities of silverware for service.

43.     Expeditors work in the back-of-the-house garnishing plates and preparing sauces.

44.     Neither silverware rollers nor expeditors have direct interaction with customers.

45.     Defendants also maintain a policy and practice whereby they take unlawful deductions from tipped workers' wages.

46.     Defendants require tipped workers to pay customers' bills when the customers

walk out of the restaurant without paying for their meals.

## THE PARTIES

### Plaintiffs

#### Jamel Flood

47.     Jamel Flood ("Flood") is an adult individual who is a resident of Union City, New Jersey.

48.     Flood was employed by Defendants as a server at the T.G.I. Friday's restaurant located at 1780 E. Gun Hill Rd, New York, New York 10469 from in or around May 2010 until December 2011.

49.     Flood was employed by Defendants as a server at the T.G.I. Friday's restaurant located at 825 Central Park Ave, Scarsdale, New York 10583 from in or around January 2012 until May 2012.

50.     Carlson owned and operated the T.G.I. Friday's restaurants at which Flood worked.

51.     Flood is a covered employee within the meaning of the FLSA and the NYLL.

52.     A written consent form for Flood is being filed with this Class Action Complaint.

#### Ira Heaston

53.     Ira Heaston is an adult individual who is a resident of Springfield Gardens, New York.

54.     Ira Heaston was employed by Defendants as a server at the T.G.I. Friday's restaurant located at 829 Merrick Ave, Westbury, New York 11590 from in or around April 2012 until July 2013.

55.    Carlson owned and operated the T.G.I. Friday's restaurant at which Ira Heaston worked.

56.    Ira Heaston is a covered employee within the meaning of the FLSA and the NYLL.

57.    A written consent form for Ira Heaston is being filed with this Class Action Complaint.

**Isaac Heaston**

58.    Isaac Heaston is an adult individual who is a resident of Springfield Gardens, New York.

59.    Isaac Heaston was employed by Defendants as a server at the T.G.I. Friday's restaurant located at 1160 Carl D Silver Parkway, Fredericksburg, Virginia 22401 from in or around December 2011 until January 2012.

60.    Isaac Heaston was employed by Defendants as a server at the T.G.I. Friday's restaurant located at 829 Merrick Ave, Westbury, New York 11590 from in or around January 2012 until September 2013.

61.    Carlson owned and operated the T.G.I. Friday's restaurants at which Isaac Heaston worked.

62.    Isaac Heaston is a covered employee within the meaning of the FLSA and the NYLL.

63.    A written consent form for Isaac Heaston is being filed with this Class Action Complaint.

**Josephine Diaz**

64.    Josephine Diaz ("Diaz") is an adult individual who is a resident of Brooklyn, New York.

65.    Diaz was employed by Defendants as a server at the T.G.I. Friday's restaurant located at 3181 Harkness Ave, Brooklyn, New York 11235 from in or around May 2007 until December 2010.

66.    Carlson owned and operated the T.G.I. Friday's restaurants at which Diaz worked.

67.    Diaz is a covered employee within the meaning of the NYLL.

## Defendants

68.    Defendants Carlson Restaurants Inc., Carlson Restaurants Worldwide Inc., and T.G.I. Friday's Inc. jointly employed Plaintiffs and similarly situated employees at all times relevant.

69.    Each Defendant has had substantial control over Plaintiffs' working conditions, and over the unlawful policies and practices alleged herein.

70.    Defendants are part of a single integrated enterprise that jointly employed Plaintiffs and similarly situated employees at all times relevant.

71.    Defendants' operations are interrelated and unified.

72.    During all relevant times, T.G.I. Friday's shared a common management and was centrally controlled and/or owned by Defendants.

73.    During all relevant times, Defendants have been Plaintiffs' employers within the meaning of the FLSA and the NYLL.

**Carlson Restaurants Inc.**

74.    Together with the other Defendants, Carlson Restaurants Inc. ("Carlson

Restaurants") has owned and/or operated T.G.I. Friday's restaurants during the relevant period.

75.     Carlson Restaurants' principal executive office is located at 4201 Marsh Lane, Carrollton, Texas 75007.

76.     Carlson Restaurants is a foreign corporation doing business in New York State.

77.     At all relevant times, Carlson Restaurants has maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

78.     Carlson Restaurants allows employees to freely transfer between, or be shared by, the various T.G.I. Friday's restaurants it operates without retraining such employees.

79.     Carlson Restaurants applies the same employment policies, practices, and procedures to all tipped workers at its T.G.I. Friday's restaurants, including policies, practices, and procedures with respect to payment of minimum wage, overtime compensation, spread-of-hours pay, tips, uniform-related expenses, and the making of unlawful deductions.

80.     Carlson Restaurants is the name of an entity printed on Plaintiffs' paychecks.

81.     Upon information and belief, at all relevant times Carlson Restaurants has an annual gross volume of sales in excess of $500,000.

**Carlson Restaurants Worldwide Inc.**

82.     Together with the other Defendants, Carlson Restaurants Worldwide Inc. ("Carlson Worldwide") has owned and/or operated the Friday's restaurants during the relevant period.

83.     Carlson Worldwide's principal executive office is located at 4201 Marsh Lane, Carrollton, Texas 75007, the same principal executive office of Carlson Restaurants.

84.     Carlson Worldwide is a foreign corporation doing business in New York State.

85.     At all relevant times, Carlson Worldwide has maintained control, oversight, and

direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

86.     Carlson Worldwide allows employees to freely transfer between, or be shared by, the various T.G.I. Friday's restaurants it operates without retraining such employees.

87.     Carlson Worldwide applies the same employment policies, practices, and procedures to all tipped workers at its T.G.I. Friday's restaurants, including policies, practices, and procedures with respect to payment of minimum wage, overtime compensation, spread-of-hours pay, tips, uniform-related expenses, and the making of unlawful deductions.

88.     Carlson Restaurants Worldwide is the name of an entity printed on Plaintiffs' paychecks.

89.     Upon information and belief, at all relevant times Carlson Worldwide has an annual gross volume of sales in excess of $500,000.

**T.G.I. Friday's Inc.**

90.     Together with the other Defendants, T.G.I. Friday's Inc. has owned and/or operated T.G.I. Friday's restaurants during the relevant period.

91.     T.G.I. Friday's Inc. is a domestic corporation organized and existing under the laws of New York State.

92.     T.G.I. Friday's Inc.'s principal executive office is located at 4201 Marsh Lane, Carrollton, Texas 75007, the same principal executive office of Carlson Restaurants and Carlson Worldwide.

93.     T.G.I. Friday's Inc. is a wholly owned subsidiary of Carlson Restaurants and Carlson Worldwide.

94.     At all relevant times, T.G.I. Friday's Inc. has maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including timekeeping, payroll, and

other employment practices.

95.     T.G.I. Friday's Inc. applies the same employment policies, practices, and procedures to all tipped workers, including policies, practices, and procedures with respect to payment of minimum wage, overtime compensation, spread-of-hours pay, tips, uniform-related expenses, and the making of unlawful deductions.

96.     Upon information and belief, at all relevant times, T.G.I. Friday's Inc. has an annual gross volume of sales in excess of $500,000.

## JURISDICTION AND VENUE

97.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332 and 1337, and jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

98.     This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(a) because the parties are citizens of different states and the amount in controversy between at least one named Plaintiff and the Defendants exceeds the sum or value of $75,000.00.

99.     This Court has original jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), codified at 28 U.S.C. § 1332(d), because the amount in controversy against the Defendants in this matter exceeds the sum or value of $5,000,000, exclusive of interest and costs.

100.    The members of each of the proposed classes are citizens of states different from that of their respective Defendants.

101.    There are at least 100 members in the proposed class.

102.    Defendants are subject to personal jurisdiction in New York.

103.    This Court also has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

104.    This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

- 12 -

105.    Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## COLLECTIVE ACTION ALLEGATIONS

106.    Plaintiffs bring the First and Second Causes of Action, the FLSA claims, on behalf of themselves and all similarly situated current and former tipped workers employed at T.G.I. Friday's restaurants owned, operated, and/or controlled by Defendants, for a period of three years prior to the filing of this Complaint and the date of final judgment in this matter, and who elect to opt-in to this action (the "FLSA Collective Members").

107.    At all relevant times, Plaintiffs and the FLSA Collective Members are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to Defendants' decision, policy, plan, and common programs, practices, procedures, protocols, routines, and rules of willfully failing and refusing to pay Plaintiffs at the legally required minimum wage for all hours worked and one-and-one-half times this rate for work in excess of forty hours per workweek, and requiring tipped workers to engage in "side work" for more than twenty percent of their time at work.  Plaintiffs' claims stated herein are essentially the same as those of the other FLSA Collective Members.

108.    Defendants' unlawful conduct, as described in this Class Action Complaint, is pursuant to a corporate policy or practice of minimizing labor costs by failing to record the hours that employees work.

109.    Defendants are aware or should have been aware that federal law required them to pay employees minimum wage for all of the hours they work.

110.    Defendants are aware or should have been aware that federal law required them to

pay employees performing non-exempt duties an overtime premium for hours worked in excess of forty per workweek.

111.   Defendants' unlawful conduct has been widespread, repeated, and consistent.

112.   The First and Second Causes of Action are properly brought under and maintained as an opt-in collective action pursuant to 29 U.S.C. 216(b).

113.   The FLSA Collective Members are readily ascertainable.

114.   For the purpose of notice and other purposes related to this action, their names and addresses are readily available from Defendants' records.

115.   Notice can be provided to the FLSA Collective Members via first class mail to the last address known to Defendants.

## **CLASS ACTION ALLEGATIONS**

116.   Plaintiffs bring the Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, and Tenth Causes of Action, NYLL claims, under Rule 23, on behalf of themselves and all similarly situated current and former tipped workers employed at T.G.I. Friday's in New York owned and/or operated by Carlson Restaurants Inc., Carlson Restaurants Worldwide Inc., and/or T.G.I. Friday's Inc. between six years prior to the filing of this Class Action Complaint and the date of final judgment in this matter ("Rule 23 Class").

117.   Excluded from the Rule 23 Class Members are Defendants, Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Class.

118.   The members of the Rule 23 Class ("Rule 23 Class Members") are readily ascertainable. The number and identity of the Rule 23 Class Members are determinable from the Defendants' records. The hours assigned and worked, the positions held, and the rates of pay for each Rule 23 Class Member are also determinable from Defendants' records. For the purpose of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under Rule 23.

119.   The Rule 23 Class Members are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

120.   There are more than fifty Rule 23 Class Members.

121.   Plaintiffs' claims are typical of those claims which could be alleged by any Rule 23 Class Member, and the relief sought is typical of the relief which would be sought by each Rule 23 Class Member in separate actions.

122.   All the Rule 23 Class Members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage, failing to pay overtime, failing to pay off-the-clock work, failing to properly distribute tips, failing to pay spread-of-hours pay, making illegal deductions, failing to pay uniform-related expenses, failing to provide proper wage statements, and failing to provide proper wage and hour notices.

123.   Plaintiffs and the Rule 23 Class Members have all sustained similar types of damages as a result of Defendants' failure to comply with the NYLL.

124.   Plaintiffs and the Rule 23 Class Members have all been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices, and patterns of conduct. Defendants' corporate-wide policies and practices affected all Rule 23 Class

Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each of the Rule 23 Class Members.

125.    Plaintiffs and other Rule 23 Class Members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

126.    Plaintiffs are able to fairly and adequately protect the interests of the Rule 23 Class Members and have no interests antagonistic to the Rule 23 Class Members.

127.    Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented many plaintiffs and classes in wage and hour cases.

128.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.  Because the losses, injuries, and damages suffered by each of the individual Rule 23 Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Rule 23 Class Members to redress the wrongs done to them.  On the other hand, important public interests will be served by addressing the matter as a class action.  The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs.  The prosecution of separate actions by individual Rule 23 Class Members would create a risk of

inconsistent and/or varying adjudications with respect to the individual Rule 23 Class Members, establishing incompatible standards of conduct for Defendants and resulting in the impairment of the Rule 23 Class Members' rights and the disposition of their interests through actions to which they were not parties.  The issues in this action can be decided by means of common, class-wide proof.  In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

129.   Upon information and belief, Defendants and other employers throughout the state violate the NYLL.  Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation.  Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment.  Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

130.   This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

131.   Common questions of law and fact exist as to the Rule 23 Class that predominate over any questions only affecting Plaintiffs and the Rule 23 Class Members individually and include, but are not limited to, the following:

(a)   whether Defendants violated NYLL Articles 6 and 19, and the supporting New York State Department of Labor Regulations;

(b)   whether Defendants employed Plaintiffs and the Rule 23 Class Members within the meaning of the NYLL;

(c)   whether Defendants paid Plaintiffs and the Rule 23 Class Members at the proper minimum wage rate for all hours worked;

(d)   whether Defendants had a policy or practice of failing to provide adequate notice of their payment of a reduced minimum wage to Plaintiffs and the Rule 23 Class Members;

(e)   what notice is required in order for Defendants to take a tip credit under New York State Department of Labor regulations;

(f)   at what common rate, or rates subject to common methods of calculation, Defendants were required to pay Plaintiffs and the Rule 23 Class Members for their work;

(g)   whether Defendants have a policy of requiring tipped employees to engage in side work for two hours or more and/or for more than twenty percent of their time at work in violation of the NYLL;

(h)   whether Defendants properly compensated Plaintiffs and the Rule 23 Class Members for hours worked in excess of forty hours per workweek;

(i)   whether Defendants failed to provide Plaintiffs and the Rule 23 Class Members spread-of-hours pay when the length of their workday was greater than ten hours;

(j)   whether Defendants misappropriated tips from Plaintiffs and the Rule 23 Class Members by demanding, handling, pooling, counting, distributing, accepting, and/or retaining tips and/or service charges paid by customers that were intended for Plaintiffs and the Rule 23 Class Members, and which customers reasonably believed to be gratuities for Plaintiffs and the Rule 23 Class Members;

(k)   whether Defendants distributed a portion of the tips paid by customers to workers who are not entitled to receive tips under the NYLL;

(l)   whether Defendants failed to pay Plaintiffs and the Rule 23 Class Members for uniform-related expenses;

(m)   whether Defendants made unlawful deductions from wages paid to Plaintiffs and the Rule 23 Class Members;

(n)   whether Defendants failed to keep true and accurate time and pay records for all hours worked by Plaintiffs and the Rule 23 Class Members, and other records required by the NYLL;

(o)   whether Defendants failed to furnish Plaintiffs and the Rule 23 Class Members with an accurate statement of wages, hours worked, rates paid, gross wages, and the claimed tip allowance, as required by the Wage Theft Protection Act; and

(p)   the nature and extent of class-wide injury and the measure of damages for those injuries.

## PLAINTIFFS' FACTUAL ALLEGATIONS

132.    Consistent with their policies and patterns or practices as described herein, Defendants harmed Plaintiffs, individually, as follows:

**Jamel Flood**

133.    Defendants did not pay Flood the proper minimum wages, overtime wages, and spread-of-hours pay for all of the time that he was suffered or permitted to work each workweek.

134.    Throughout the duration of his employment at T.G.I. Friday's, Flood received weekly paychecks from Defendants that did not properly record or compensate him for all the hours that he worked.

135.    Defendants paid Flood at the New York tipped minimum wage rate.

136.    Defendants did not provide Flood with notification of the tipped minimum wage or tip credit provisions of the FLSA or the NYLL, or their intent to apply a tip credit to his wages.

137.    Defendants unlawfully required Flood to share tips with silverware rollers and/or expeditors, employees in positions that are not entitled to tips under the FLSA and/or the NYLL.

138.    Defendants required Flood to spend at least 20% of his shift performing non-tipped work unrelated to his duties as a tipped worker. These duties included, but are not limited to, running silverware through the dishwashing machine, sorting silverware, rolling silverware, breaking down side stands, breaking down and cleaning the soda machine and coffee machine, setting up burger bins, cutting lemons, sweeping, wiping down booths and chairs, stocking plates, napkins, cups, and to-go containers, cleaning doors and windows, and setting up and breaking down the expeditor line.

139.   Although Flood should have been paid the full minimum wage, Defendants paid him an hourly rate that fell below the minimum wage.

140.   Defendants frequently required Flood to perform work off-the-clock without compensation.

141.   For instance, Defendants often instructed Flood to punch into the time clock when he started to serve his first table, rather than when he arrived at work.  Defendants only compensated Flood for the time after he punched in.  Torres "Doe," one of Flood's managers, informed him how many hours Flood could "play with" before having to punch out and work off the clock.

142.   Defendants often punched Flood out when he finished serving tables but required him to continue working, performing "side work," off-the-clock.  Defendants did not compensate Flood for this time.  For example, if Flood was close to forty hours in a workweek, Flood's managers punched him out after service so that he could perform "side work."

143.   Defendants suffered or permitted Flood to work more than forty hours per week, including weeks during which he was not paid at all for some of his time.

144.   As Flood typically worked five to seven shifts per week, some of the above mentioned off-the-clock work was in excess of forty hours per week.

145.   In addition, Defendants also removed hours that Flood worked from his time records and did not pay him for the time that was removed.

146.   Some weeks, Flood worked between fifty and sixty-three hours per week without proper overtime compensation.

147.   During his employment, Flood generally worked the following scheduled hours unless he missed time for vacation, sick days, or holidays:

- From in or around May 2010 until December 2011, Flood typically worked 6 to 7 shifts per week at the Bronx T.G.I. Friday's. Morning shifts typically started between 10:00 a.m. and ended around approximately 5:00 p.m. Dinner shifts typically started around approximately 4:45 p.m. and ended between 2:00 a.m. and 2:30 a.m.

- From in or around January 2012 until May 2012, Flood typically worked 5 to 6 dinner shifts per week at the Scarsdale, New York T.G.I. Friday's. Dinner shifts typically started at approximately 6:00 p.m. and ended between 2:30 a.m. and 3:00 a.m.

148.    The overtime premiums Defendants paid Flood for hours worked in excess of 40 per workweek were not calculated at 1.5 times the full minimum wage rate.

149.    Flood worked more than ten hours in a day several times. Flood regularly worked approximately two double shifts per week which lasted longer than ten hours in a day.

150.    Defendants never paid Flood spread-of-hours pay.

151.    Defendants required Flood to wear a uniform consisting of a shirt with the T.G.I. Friday's logo, black slacks, black shoes, and black socks.

152.    Defendants did not launder and/or maintain Flood's mandatory uniform, and failed to pay Flood the required weekly uniform-maintenance amount in addition to the required minimum wage.

153.    Defendants regularly made deductions from Flood's paychecks for reasons including, but not limited to, customer walkouts. For instance, managers required Flood to "pitch in" tips Flood had earned to assist a fellow server pay for a walkout.

154.    Defendants did not keep accurate records of wages or tips earned, or of hours worked by Flood.

155.    Defendants failed to furnish Flood with accurate statements of wages, hours worked, rates paid, gross wages, and the claimed tip allowance.

**Ira Heaston**

156.    Defendants did not pay Ira Heaston the proper minimum wages, overtime wages, and spread-of-hours pay for all of the time that he was suffered or permitted to work each workweek.

157.    Throughout the duration of his employment at T.G.I. Friday's, Ira Heaston received weekly paychecks from Defendants that did not properly record or compensate him for all the hours that he worked.

158.    Defendants paid Ira Heaston at the New York tipped minimum wage rate.

159.    Defendants did not provide Ira Heaston with notification of the tipped minimum wage or tip credit provisions of the FLSA or the NYLL, or their intent to apply a tip credit to his wages.

160.    Defendants unlawfully required Ira Heaston to share tips with silverware rollers and/or expeditors, employees in positions that are not entitled to tips under the FLSA and/or the NYLL.

161.    Defendants required Ira Heaston to spend at least 20% of his shift performing non-tipped work unrelated to his duties as a tipped worker.  These duties included, but are not limited to, setting up and breaking down the expeditor's line, cutting lemons and limes, assembling burger and appetizer baskets, wiping down booths and chairs, dusting lids, sweeping the dining area, cleaning the bathrooms, setting up and breaking down the soda machine and coffee machine, restocking plates, cups, and to-go containers, and taking out the trash.

162.    Although Ira Heaston should have been paid the full minimum wage, Defendants paid him an hourly rate that fell below the minimum wage.

163.    Defendants frequently required Ira Heaston to perform work off-the-clock without compensation.

164.     For instance, Defendants often instructed Ira Heaston to punch into the time clock when he started to serve his first table, rather than when he arrived at work.  Defendants only compensated Ira Heaston for the time after he punched in.  Randy "Doe," Lisa "Doe," and Deon "Doe," Ira Heaston's former managers, informed Ira Heaston that he could not punch in until he got his first table to prevent him from working overtime hours.

165.     Defendants often punched Ira Heaston out when he finished serving tables but required him to continue working, performing "side work," off-the-clock.  For example, when Ira Heaston worked as a closer, his managers punched him out at the conclusion of service so the additional hours Ira Heaston spent performing "side work" were off-the-clock.

166.     In addition, Defendants also removed hours that Ira Heason worked from his time records and did not pay him for the time that was removed.

167.     As Ira Heaston typically worked five to six shifts per week, some of the above mentioned off-the-clock work was in excess of forty hours per week.

168.     Some weeks, Ira Heason worked between fifty-five and sixty hours per week without proper overtime compensation.

169.     During his employment, Ira Heaston generally worked the following scheduled hours unless he missed time for vacation, sick days, or holidays:

- From in or around April 2012 until July 2013, Ira Heaston typically worked 5 to 6 shifts per week.  Morning shifts typically started at 10:15 a.m. and ended between 3:45 p.m. and 4:45 p.m.  Dinner shifts typically started between 3:45 p.m. and 4:45 p.m. and ended between 2:30 a.m. and 4:00 a.m.  "Swing Shifts" started at approximately 12:00 p.m. and ended between 2:30 a.m. and 4:00 a.m.

170.     The overtime premiums Defendants paid Ira Heaston for hours worked in excess of 40 per workweek were not calculated at 1.5 times the full minimum wage rate.

171.   Ira Heaston worked more than ten hours in a day several times.  For example, Ira Heaston regularly worked approximately two to three swing shifts per week that lasted longer than ten hours in a day.

172.   Defendants never paid Ira Heaston spread-of-hours pay.

173.   Defendants required Ira Heaston to wear a uniform consisting of a shirt with the T.G.I. Friday's logo, black slacks, black shoes, and black socks.

174.   Defendants did not launder and/or maintain Ira Heaston's mandatory uniform, and failed to pay Ira Heaston the required weekly uniform-maintenance amount in addition to the required minimum wage.

175.   Defendants regularly made deductions from Ira Heaston's paychecks for reasons including, but not limited to, customer walkouts.  For instance, Ira Heason was required to pay for customer walkouts on four to five occasions.

176.   Defendants did not keep accurate records of wages or tips earned, or of hours worked by Ira Heaston.

177.   Defendants failed to furnish Ira Heaston with accurate statements of wages, hours worked, rates paid, gross wages, and the claimed tip allowance.

**Isaac Heaston**

178.   Defendants did not pay Isaac Heaston the proper minimum wages, overtime wages, and spread-of-hours pay for all of the time that he was suffered or permitted to work each workweek.

179.   Throughout the duration of his employment at T.G.I. Friday's, Isaac Heaston received weekly paychecks from Defendants that did not properly record or compensate him for all the hours that he worked.

180.    Defendants paid Isaac Heaston at the New York tipped minimum wage rate.

181.    Defendants did not provide Isaac Heaston with notification of the tipped minimum wage or tip credit provisions of the FLSA or the NYLL, or their intent to apply a tip credit to his wages.

182.    Defendants unlawfully required Isaac Heaston to share tips with silverware rollers and/or expeditors, employees in positions that are not entitled to tips under the FLSA and/or the NYLL.

183.    Defendants required Isaac Heaston to spend at least 20% of his shift performing non-tipped work unrelated to his duties as a tipped worker.  These duties included, but are not limited to, setting up and breaking down the expeditor's line, cutting lemons and limes, assembling burger and appetizer baskets, wiping down booths and chairs, dusting lids, sweeping the dining area, cleaning the bathrooms, setting up and breaking down the soda machine and coffee machine, restocking plates, cups, and to-go containers, and taking out the trash.

184.    Although Isaac Heaston should have been paid the full minimum wage, Defendants paid him an hourly rate that fell below the minimum wage.

185.    Defendants frequently required Isaac Heaston to perform work off-the-clock without compensation.

186.    For instance, Defendants often instructed Isaac Heaston to punch into the time clock when he started to serve his first table, rather than when he arrived at work.  Defendants only compensated Isaac Heaston for the time after he punched in.  Bouba "Doe," Isaac Heaston's former manager, informed Isaac Heaston that he could not punch in until he got his first table to prevent him from working overtime hours.

187.    Defendants often punched Isaac Heaston out when he finished serving tables but required him to continue working, performing "side work," off-the-clock.  For example, when Isaac Heaston worked as a closer, his managers punched Isaac Heaston out at the conclusion of service so the additional hours Isaac Heaston spent performing "side work" were off-the-clock.

188.    In addition, Defendants also removed hours that Isaac Heaston worked from his time records and did not pay him for the time that was removed.

189.    As Isaac Heaston typically worked five to six shifts per week, some of the above mentioned off-the-clock work was in excess of forty hours per week.

190.    Some weeks, Isaac Heaston worked between fifty-five and sixty hours per week without proper overtime compensation.

191.    During his employment, Isaac Heaston generally worked the following scheduled hours unless he missed time for vacation, sick days, or holidays:

- From in or around December 2011 until January 2012, Isaac Heaston typically worked 5 to 6 shifts per week at the Fredericksburg, Virginia T.G.I. Friday's. Morning shifts typically started between 9:30 a.m. and 10:00 a.m. and ended around approximately 3:00 p.m.  Dinner shifts typically started between 3:45 p.m. and 4:45 p.m. and ended between 2:30 a.m. and 4:00 a.m. "Swing Shifts" started at approximately 12:00 p.m. and end between 2:30 a.m. and 4:00 a.m.

- From in or around January 2012 until September 2012, Isaac Heaston typically worked 5 to 6 shifts per week at the Westbury, New York T.G.I. Friday's. Morning shifts typically started at 10:15 a.m. and ended between 3:45 p.m. and 4:45 p.m.  Dinner shifts typically started between 3:45 p.m. and 4:45 p.m. and ended between 2:30 a.m. and 4:00 a.m. "Swing Shifts" started at approximately 12:00 p.m. and end between 2:30 a.m. and 4:00 a.m.

192.    The overtime premiums Defendants paid Isaac Heaston for hours worked in excess of 40 per workweek were not calculated at 1.5 times the full minimum wage rate.

193.     Isaac Heaston worked more than ten hours in a day several times.  For example, Isaac Heaston regularly worked approximately two to three swing shifts per week that lasted longer than ten hours in a day.

194.     Defendants never paid Isaac Heaston spread-of-hours pay.

195.     Defendants required Isaac Heaston to wear a uniform consisting of a shirt with the T.G.I. Friday's logo, black slacks, black shoes, and black socks.

196.     Defendants did not launder and/or maintain Isaac Heaston's mandatory uniform, and failed to pay Isaac Heaston the required weekly uniform-maintenance amount in addition to the required minimum wage.

197.     Defendants regularly made deductions from Isaac Heaston's paychecks for reasons including, but not limited to customer walkouts.  For instance, Isaac Heaston was required to pay for customer walkouts on four to six occasions.

198.     Defendants did not keep accurate records of wages or tips earned, or of hours worked by Isaac Heaston.

199.     Defendants failed to furnish Isaac Heaston with accurate statements of wages, hours worked, rates paid, gross wages, and the claimed tip allowance.

**Josephine Diaz**

200.     Defendants did not pay Diaz the proper minimum wages, overtime wages, and spread-of-hours pay for all of the time that she was suffered or permitted to work each workweek.

201.     Throughout the duration of her employment at T.G.I. Friday's, Diaz received weekly paychecks from Defendants that did not properly record or compensate her for all the hours that she worked.

202.    Defendants paid Diaz at the New York tipped minimum wage rate.

203.    Defendants did not provide Diaz with notification of the tipped minimum wage or tip credit provisions of the FLSA or the NYLL, or their intent to apply a tip credit to her wages.

204.    Defendants unlawfully required Diaz to share tips with silverware rollers and/or expeditors, employees in positions that are not entitled to tips under the FLSA and/or the NYLL.

205.    Defendants required Diaz to spend at least 20% of her shift performing non-tipped work unrelated to her duties as a tipped worker.  These duties included, but not limited to, setting up and breaking down the expeditor's line, cutting lemons and limes, assembling burger and appetizer baskets, wiping down booths and chairs, dusting lids, sweeping the dining area, setting up and breaking down the soda machine and coffee machine, and restocking plates, cups, and to-go containers.

206.    Although Diaz should have been paid the full minimum wage, Defendants paid her an hourly rate that fell below the minimum wage.

207.    Defendants frequently required Diaz to perform work off-the-clock without compensation.

208.    For instance, Defendants often instructed Diaz to punch into the time clock when she started to serve her first table, rather than when she arrived at work.  Defendants only compensated Diaz for the time after she punched in.  Diaz was informed by several managers during the course of her employment of this policy.

209.    Defendants often punched Diaz out when she finished serving tables but required her to continue working, performing "side work," off-the-clock.  For example, when Diaz was approaching forty hours in a workweek, her managers punched her out at the conclusion of service so the additional hours Diaz spent performing "side work" were off-the-clock.

210.     In addition, Defendants also removed hours that Diaz worked from her time records and did not pay her for the time that was removed.

211.     Defendants suffered or permitted Diaz to work more than forty hours per week, including weeks during which she was not paid at all for some of her time.

212.     As Diaz typically worked approximately four to five shifts per week, some of the above mentioned off-the-clock work was in excess of forty hours per week.

213.     Some weeks, Diaz worked between forty-two and forty-four hours per week without proper overtime compensation.

214.     During her employment, Diaz generally worked the following scheduled hours unless she missed time for vacation, sick days, or holidays:

- From in or around May 2007 until December 2010, Diaz typically worked four to five shifts per week at the Sheepshead Bay, New York T.G.I. Friday's. Morning shifts typically started between 10:00 a.m. and ended around approximately 7:00 p.m.  Dinner shifts typically started at approximately 4:30 p.m. and ended between 3:00 a.m. and 3:30 a.m. "Swing Shifts" started at approximately 12:00 p.m. and ended between 6:00 p.m. and 7:00 p.m.

215.     The overtime premiums Defendants paid Diaz for hours worked in excess of 40 per workweek were not calculated at 1.5 times the full minimum wage rate.

216.     Diaz worked more than ten hours in a day several times.  For example, Diaz regularly worked approximately two dinner closing shifts per week that lasted longer than ten hours in a day.

217.     Defendants never paid Diaz spread-of-hours pay.

218.     Defendants required Diaz to wear a uniform consisting of a shirt with the T.G.I. Friday's logo, black slacks, black shoes, and black socks.

219.    Defendants did not launder and/or maintain Diaz's mandatory uniform, and failed to pay Diaz the required weekly uniform-maintenance amount in addition to the required minimum wage.

220.    Defendants regularly made deductions from Diaz's paychecks for reasons including, but not limited to customer walkouts.  For instance, Diaz was required to pay for customer walkouts on two to three occasions.

221.    Defendants did not keep accurate records of wages or tips earned, or of hours worked by Diaz.

222.    Defendants failed to furnish Diaz with accurate statements of wages, hours worked, rates paid, gross wages, and the claimed tip allowance.

## FIRST CAUSE OF ACTION
### Fair Labor Standards Act – Minimum Wages
### (Brought on behalf of Plaintiffs and the FLSA Collective)

223.    Plaintiffs, on behalf of themselves and the FLSA Collective Members, reallege and incorporate by reference all allegations in all preceding paragraphs.

224.    Defendants have engaged in a widespread pattern, policy, and practice of violating the FLSA, as detailed in this Class Action Complaint.

225.    At all relevant times, each of the Defendants have been, and continues to be, employer engaged in interstate commerce and/or in the production of goods for commerce, within the meaning of FLSA, 29 U.S.C. § 203.  At all relevant times, each Defendant has employed "employee[s]," including Plaintiffs and the FLSA Collective Members.

226.    Defendants were required to pay directly to Plaintiffs and the FLSA Collective Members the applicable New York State minimum wage rate for all hours worked.

227.    Defendants failed to pay Plaintiffs and the FLSA Collective Members the

minimum wages to which they are entitled under the FLSA.

228.    Defendants were not eligible to avail themselves of the federal tipped minimum wage rate under the FLSA, 29 U.S.C. §§ 201 *et seq.*, because Defendants failed to inform Plaintiffs and FLSA Collective Members of the provisions of subsection 203(m) of the FLSA, and distributed a portion of their tips to workers who do not "customarily and regularly" receive tips.

229.    Defendants also required Plaintiffs and the FLSA Collective Members to perform a substantial amount of non-tipped "side work" in excess of twenty percent of their time at work. During these periods, Defendants compensated Plaintiffs and the FLSA Collective Members at the tipped minimum wage rate rather than the full hourly minimum wage rate as required by 29 U.S.C. §§ 201 *et seq.*

230.    Defendants' unlawful conduct, as described in this Class Action Complaint, has been willful and intentional.   Defendants were aware or should have been aware that the practices described in this Class Action Complaint were unlawful.  Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiffs and the FLSA Collective Members.

231.    Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. §§ 201 *et seq.*

232.    As a result of Defendants' willful violations of the FLSA, Plaintiffs and the FLSA Collective Members have suffered damages by being denied minimum wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq.*

## SECOND CAUSE OF ACTION
### Fair Labor Standards Act – Overtime Wages
### (Brought on behalf of Plaintiffs and the FLSA Collective)

233.    Plaintiffs, on behalf of themselves and the FLSA Collective Members, reallege and incorporate by reference all allegations in all preceding paragraphs.

234.    The overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq.*, and the supporting federal regulations, apply to Defendants and protect Plaintiffs and the FLSA Collective Members.

235.    Plaintiffs and the FLSA Collective Members worked in excess of forty hours during some workweeks in the relevant period.

236.    Defendants willfully failed to pay Plaintiffs and FLSA Collective Members one-and-one-half times the full minimum wage for all work in excess of forty hours per workweek. Defendants' unlawful conduct, as described in this Class Action Complaint, has been willful and intentional.  Defendants were aware or should have been aware that the practices described in this Class Action Complaint were unlawful.  Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiffs and the FLSA Collective Members.

237.    Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. §§ 201 *et seq.*

238.    As a result of Defendants' violations of the FLSA, Plaintiffs and the FLSA Collective Members have been deprived of overtime compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq.*

## THIRD CAUSE OF ACTION
### New York Labor Law – Minimum Wage
### (Brought on behalf of Plaintiffs and the Rule 23 Class)

239.    Plaintiffs, on behalf of themselves and the Rule 23 Class Members, reallege and incorporate by reference all allegations in all preceding paragraphs.

240.    Defendants have engaged in a widespread pattern, policy, and practice of violating the NYLL, as detailed in this Class Action Complaint.

241.    At all times relevant, Plaintiffs and the Rule 23 Class Members have been employees of Defendants, and Defendants have been employers of Plaintiffs and the Rule 23 Class Members within the meaning of the NYLL §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

242.    At all times relevant, Plaintiffs and the Rule 23 Class Members have been covered by the NYLL.

243.    The wage provisions of Article 19 of the NYLL and the supporting New York State Department of Labor Regulations apply to Defendants, and protect Plaintiffs and the Rule 23 Class Members.

244.    Defendants failed to pay Plaintiffs and the Rule 23 Class Members the minimum hourly wages to which they are entitled under the NYLL and the supporting New York State Department of Labor Regulations.

245.    Defendants required Plaintiffs and the Rule 23 Class Members to perform a substantial amount of non-tipped "side work" in excess of two hours or more, or twenty percent of their time at work.  During these periods, Plaintiffs and the Rule 23 Class Members were engaged in a non-tipped occupation and compensated by Defendants at the tipped minimum

wage or lower rate rather than the full hourly minimum wage rate, in violation of the NYLL and the supporting New York State Department of Labor Regulations.

246.    Defendants were required to pay Plaintiffs and the Rule 23 Class Members the full minimum wage at a rate of; (a) $7.15 per hour for all hours worked from January 1, 2007 through July 23, 2009; (b) $7.25 per hour for all hours worked from July 24, 2009 through the December 30, 2013; and (c) $8.00 per hour for all hours worked from December 31, 2013 to the present  under the NYLL §§ 650 *et seq.* and the supporting New York State Department of Labor Regulations.

247.    Through their knowing or intentional failure to pay minimum hourly wages to Plaintiffs and the Rule 23 Class Members, Defendants have willfully violated the NYLL,  Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

248.    Due to Defendants' willful violations of the NYLL, Plaintiffs and Rule 23 Class Members are entitled to recover from Defendants their unpaid minimum wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

### FOURTH CAUSE OF ACTION
**New York Labor Law – Unpaid Overtime**
**(Brought on behalf of Plaintiffs and the  Rule 23 Class)**

249.    Plaintiffs, on behalf of themselves and the Rule 23 Class Members, reallege and incorporate by reference all allegations in all preceding paragraphs.

250.    Defendants failed to pay Plaintiffs and the Rule 23 Class Members the proper overtime wages to which they are entitled under the NYLL and the supporting New York State Department of Labor Regulations.

251.    Defendants failed to pay Plaintiffs and the Rule 23 Class Members one-and-one-half times the full minimum wage for all work in excess of forty hours per workweek.

252.    Through their knowing or intentional failure to pay Plaintiffs and the Rule 23 Class Members overtime wages for hours worked in excess of forty hours per workweek, Defendants have willfully violated the NYLL, Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

253.    Due to Defendants' willful violations of the NYLL, Plaintiffs and the Rule 23 Class Members are entitled to recover from Defendants their unpaid overtime wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

**FIFTH CAUSE OF ACTION**
**New York Labor Law – Spread-of-Hours Pay**
**(Brought on behalf of Plaintiffs and the Rule 23 Class)**

254.    Plaintiffs, on behalf of themselves and the Rule 23 Class Members, reallege and incorporate by reference all allegations in all preceding paragraphs.

255.    At times, Plaintiffs and the Rule 23 Class Members worked more than ten hours in a workday.

256.    Defendants willfully failed to compensate Plaintiffs and the Rule 23 Class Members one hour's pay at the basic New York minimum hourly wage rate on days in which the length of their workday was more than ten hours, as required by New York law.

257.    Through their knowing or intentional failure to pay Plaintiffs and the Rule 23 Class Members spread-of-hours pay, Defendants have willfully violated the NYLL, Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

258.   Due to Defendants' willful violations of the NYLL, Plaintiffs and the Rule 23 Class Members are entitled to recover from Defendants their unpaid spread-of-hours wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

**SIXTH CAUSE OF ACTION**
**New York Labor Law –Tip Misappropriation**
**(Brought on behalf of Plaintiffs and the Rule 23 Class Members)**

259.   Plaintiffs, on behalf of themselves and the Rule 23 Class Members, reallege and incorporate by reference all allegations in all preceding paragraphs.

260.   Defendants unlawfully demanded or accepted, directly or indirectly, part of the gratuities received by Plaintiffs and the Rule 23 Class Members in violation of NYLL, Article 6, § 196-d and the supporting New York State Department of Labor Regulations.

261.   Defendants unlawfully retained part of the gratuities earned by Plaintiffs and the Rule 23 Class Members in violation of NYLL, Article 6, § 196-d and the supporting New York State Department of Labor Regulations.

262.   Defendants required Plaintiffs and the Rule 23 Class Members to share a portion of the gratuities they received with employees other than waiters, servers, bussers, or similar employees, in violation of NYLL, Article 6 § 196-d and the supporting New York State Department of Labor Regulations.

263.   By Defendants' knowing or intentional demand for, acceptance of, and/or retention of a portion of the gratuities received by Plaintiffs and the Rule 23 Class Members, Defendants have willfully violated the NYLL, Article 6, § 196-d and the supporting New York State Department of Labor Regulations.

264. Due to Defendants' willful violations of the NYLL, Plaintiffs and the Rule 23 Class Members are entitled to recover from Defendants their unpaid gratuities, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

### SEVENTH CAUSE OF ACTION
**New York Labor Law – Uniform Violations**
**(Brought on behalf of Plaintiffs and the Rule 23 Class)**

265. Plaintiffs, on behalf of themselves and the Rule 23 Class Members, reallege and incorporate by reference all allegations in all preceding paragraphs.

266. Defendants required Plaintiffs and the Rule 23 Class Members to wear a uniform consisting of shirt with the T.G.I. Friday's logo, black slacks, black shoes, and black socks.

267. Defendants failed to launder and/or maintain the required uniforms for Plaintiffs and the Rule 23 Class Members, and failed to pay them the required weekly amount in addition to the required minimum wage.

268. By failing to pay Plaintiffs and the Rule 23 Class Members for the maintenance of required uniforms, Defendants have willfully violated the NYLL, and the supporting New York State Department of Labor Regulations.

269. Due to Defendants' willful violations of the NYLL, Plaintiffs and the Rule 23 Class Members are entitled to recover from Defendants the costs of maintaining their uniforms, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

### EIGHTH CAUSE OF ACTION
**New York Labor Law – Unlawful Deductions From Wages**
**(Brought on behalf of Plaintiffs and the Rule 23 Class)**

270. Plaintiffs, on behalf of themselves and the Rule 23 Class Members, reallege and incorporate by reference all allegations in all preceding paragraphs.

271.    Defendants made unlawful deductions from the wages of Plaintiffs and the Rule 23 Class Members.  These deductions included, but were not limited to, customer walkouts.

272.    The deductions made from the wages of Plaintiffs and the Rule 23 Class Members were not authorized or required by law.

273.    The deductions made from the wages of Plaintiffs and the Rule 23 Class Members were not expressly authorized in writing by Plaintiffs and the Rule 23 Class Members, and were not for the benefit of Plaintiffs and the Rule 23 Class Members.

274.    Through their knowing or intentional efforts to permit unauthorized deductions from the wages of Plaintiffs and the Rule 23 Class Members, Defendants have willfully violated NYLL, Article 6, §§ 190 *et seq.*, and the supporting New York State Department of Labor Regulations.

275.    Due to Defendants' willful violations of the NYLL, Plaintiffs and Rule 23 Class Members are entitled to recover from Defendants the amounts of any unlawful deductions, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

### NINTH CAUSE OF ACTION
### New York Labor Law – Failure to Provide Annual Wage Notices
### (Brought on behalf of Plaintiffs and the Rule 23 Class)

276.    Plaintiffs, on behalf of themselves and the Rule 23 Class Members, reallege and incorporate by reference all allegations in all preceding paragraphs.

277.    Defendants have willfully failed to supply Plaintiffs and the Rule 23 Class Members with wage notices, as required by NYLL, Article 6, § 195(1), in English or in the language identified as their primary language, containing Plaintiffs and the Rule 23 Class Members' rate or rates of pay and  basis thereof, whether paid by the hour, shift, day, week,

salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if

applicable; the regular pay day designated by the employer in accordance with NYLL, Article 6,

§ 191; the name of the employer; any "doing business as" names used by the employer; the

physical address of the employer's main office or principal place of business, and a mailing

address if different; the telephone number of the employer; plus such other information as the

commissioner deems material and necessary.

278.   Through their knowing or intentional failure to provide Plaintiffs and the Rule 23

Class Members with the wage notices required by the NYLL, Defendants have willfully violated

NYLL, Article 6, §§ 190 *et seq.*, and the supporting New York State Department of Labor

Regulations.

279.   Due to Defendants' willful violations of NYLL, Article 6, § 195(1), Plaintiffs and

the Rule 23 Class Members are entitled to statutory penalties of fifty dollars for each workweek

that Defendants failed to provide them with wage notices, or a total of twenty-five hundred

dollars, reasonable attorneys' fees, costs, and injunctive and declaratory relief, as provided for by

NYLL, Article 6, § 198(1-b).

### TENTH CAUSE OF ACTION
### New York Labor Law – Failure to Provide Accurate Wage Statements
### (Brought on behalf of Plaintiffs and the Rule 23 Class)

280.   Plaintiffs, on behalf of themselves and the Rule 23 Class Members, reallege and

incorporate by reference all allegations in all preceding paragraphs.

281.   Defendants have willfully failed to supply Plaintiffs and the Rule 23 Class

Members with accurate statements of wages as required by NYLL, Article 6, § 195(3),

containing the dates of work covered by that payment of wages; name of employee; name of

employer; address and phone number of employer; rate or rates of pay and basis thereof, whether

paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

282.    Through their knowing or intentional failure to provide Plaintiffs and the Rule 23 Class Members with the accurate wage statements required by the NYLL, Defendants have willfully violated NYLL, Article 6, §§ 190 *et seq.*, and the supporting New York State Department of Labor Regulations.

283.    Due to Defendants' willful violations of NYLL, Article 6, § 195(3), Plaintiffs and the Rule 23 Class Members are entitled to statutory penalties of one hundred dollars for each workweek that Defendants failed to provide them with accurate wage statements, or a total of twenty-five hundred dollars, reasonable attorneys' fees, costs, and injunctive and declaratory relief, as provided for by NYLL, Article 6, § 198(1-d).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually, and on behalf of all other similarly situated persons, respectfully requests that this Court grant the following relief:

A.      Designation of this action as a collective action on behalf of the FLSA Collective Members (asserting FLSA claims and state claims) and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b);

B.      Unpaid minimum wages, overtime pay, and an additional and equal amount as liquidated damages pursuant to the FLSA and the supporting United States Department of Labor Regulations;

C.      Certification of this case as a class action pursuant to Rule 23;

D.    Designation of Plaintiffs as representatives of the Rule 23 Class and counsel of record as Class Counsel;

E.    Issuance of a declaratory judgment that the practices complained of in this Class Action Complaint are unlawful under the NYLL, Article 6, §§ 190 *et seq.*, NYLL, Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations;

F.    Unpaid minimum wages, overtime pay, spread-of-hours pay, misappropriated tips, uniform related expenses, unlawful deductions, and other unpaid wages, and liquidated damages permitted by law pursuant to the NYLL and the supporting New York State Department of Labor Regulations;

G.    Statutory penalties of fifty dollars for each workweek that Defendants failed to provide Plaintiffs and the Rule 23 Class Members with a wage notice, or a total of twenty-five hundred dollars, as provided for by NYLL, Article 6 § 198;

H.    Statutory penalties of one hundred dollars for each workweek that Defendants failed to provide Plaintiffs and the Rule 23 Class Members with accurate wage statements, or a total of twenty-five hundred dollars, as provided for by NYLL, Article 6 § 198;

I.    Prejudgment and post-judgment interest;

J.    An injunction requiring Defendants to pay all statutorily required wages and cease the unlawful activity described herein pursuant to the NYLL;

K.    Reasonable attorneys' fees and costs of the action;

L.    Reasonable incentive awards for each named Plaintiff to compensate them for the time they spent attempting to recover wages for Class Members and for the risks they took in doing so; and

M.    Such other relief as this Court shall deem just and proper.

Dated:      New York, New York
                April 17, 2014

Respectfully submitted,

_____

Sally J. Abrahamson

**OUTTEN & GOLDEN LLP**
Justin M. Swartz
Sally J. Abrahamson
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: (212) 245-1000

**FITAPELLI & SCHAFFER, LLP**
Joseph A. Fitapelli
Brian S. Schaffer
Frank J. Mazzaferro
475 Park Avenue South, 12th Floor
New York, NY 10016
Telephone: (212) 300-0375

*Attorneys for Plaintiffs and
the Putative Class*

<u>FAIR LABOR STANDARDS ACT CONSENT</u>

1. I consent to be a party plaintiff in a lawsuit against TGI Fridays / Carlson and/or related entities and individuals in order to seek redress for violations of the Fair Labor Standards Act, pursuant to 29 U.S.C. § 216 (b).

2. By signing and returning this consent form, I hereby designate Fitapelli & Schaffer, LLP, and Outten & Golden, LLP ("the Firm") to represent me and make decisions on my behalf concerning the litigation and any settlement. I understand that reasonable costs expended on my behalf will be deducted from any settlement or judgment amount on a pro rata basis among all other plaintiffs. I understand that the Firm will petition the Court for attorney's fees from any settlement or judgment in the amount of the greater of: (1) the "lodestar" amount, calculated by multiplying reasonable hourly rates by the number of hours expended on the lawsuit, or (2) 1/3 of the gross settlement or judgment amount. I agree to be bound by any adjudication of this action by a court, whether it is favorable or unfavorable.

_____
Signature

_____
Full Legal Name (Print)



REDACTED

Union City, NS   07087
_____
City, State Zip Code

REDACTED

## FAIR LABOR STANDARDS ACT CONSENT

     1.     I consent to be a party plaintiff in a lawsuit against TGI Fridays and/or related entities and individuals in order to seek redress for violations of the Fair Labor Standards Act, pursuant to 29 U.S.C. § 216 (b).

     2.     By signing and returning this consent form, I hereby designate Fitapelli & Schaffer, LLP, ("the Firm") to represent me and make decisions on my behalf concerning the litigation and any settlement. I understand that reasonable costs expended on my behalf will be deducted from any settlement or judgment amount on a pro rata basis among all other plaintiffs. I understand that the Firm will petition the Court for attorney's fees from any settlement or judgment in the amount of the greater of: (1) the "lodestar" amount, calculated by multiplying reasonable hourly rates by the number of hours expended on the lawsuit, or (2) 1/3 of the gross settlement or judgment amount. I agree to be bound by any adjudication of this action by a court, whether it is favorable or unfavorable.

_____
Signature

Ira Heaston
_____
Full Legal Name (Print)

REDACTED

Springfield Gardens, NY 11413
_____
City, State      Zip Code

REDACTED

## FAIR LABOR STANDARDS ACT CONSENT

1.     I consent to be a party plaintiff in a lawsuit against TGI Fridays and/or related entities and individuals in order to seek redress for violations of the Fair Labor Standards Act, pursuant to 29 U.S.C. § 216 (b).

2.     By signing and returning this consent form, I hereby designate Fitapelli & Schaffer, LLP, ("the Firm") to represent me and make decisions on my behalf concerning the litigation and any settlement. I understand that reasonable costs expended on my behalf will be deducted from any settlement or judgment amount on a pro rata basis among all other plaintiffs. I understand that the Firm will petition the Court for attorney's fees from any settlement or judgment in the amount of the greater of: (1) the "lodestar" amount, calculated by multiplying reasonable hourly rates by the number of hours expended on the lawsuit, or (2) 1/3 of the gross settlement or judgment amount. I agree to be bound by any adjudication of this action by a court, whether it is favorable or unfavorable.

_____
Signature

Issac Heaston
_____
Full Legal Name (Print)

REDACTED

Springfield Gardens        11413
_____
City, State        Zip Code

REDACTED

<u>FAIR LABOR STANDARDS ACT CONSENT</u>

1.    I consent to be a party plaintiff in a lawsuit against TGI Friday's and/or related entities and individuals in order to seek redress for violations of the Fair Labor Standards Act, pursuant to 29 U.S.C. § 216 (b).

2.    By signing and returning this consent form, I hereby designate Fitapelli & Schaffer, LLP, and Outten & Golden, LLP ("the Firms") to represent me and make decisions on my behalf concerning the litigation and any settlement.  I understand that reasonable costs expended on my behalf will be deducted from any settlement or judgment amount on a pro rata basis among all other plaintiffs.  I understand that the Firms will petition the Court for attorney's fees from any settlement or judgment in the amount of the greater of: (1) the "lodestar" amount, calculated by multiplying reasonable hourly rates by the number of hours expended on the lawsuit, or (2) 1/3 of the gross settlement or judgment amount.  I agree to be bound by any adjudication of this action by a court, whether it is favorable or unfavorable.


_____
Signature


Roseluz Morel
_____
Full Legal Name (Print)


REDACTED
_____
Address


Jamaica  NY  11432
_____
City, State        Zip Code


REDACTED
E-mail Address