**FITAPELLI & SCHAFFER, LLP**
Joseph A. Fitapelli
Brian S. Schaffer
Frank J. Mazzaferro
475 Park Avenue South, 12th Floor
New York, NY 10016
Telephone: (212) 300-0375

**OUTTEN & GOLDEN LLP**
Justin M. Swartz
Sally J. Abrahamson
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: (212) 245-1000

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  4/15/15
```

| | |
|---|---|
| JAMEL FLOOD, IRA HEASTON, ISSAC HEASTON, TASHAUNA REID, PATRICK PINK, AMY COURTEMANCHE, EURY ESPINAL, and JOSE FERNANDEZ on behalf of themselves and all others similarly situated,<br><br>　　　　　Plaintiffs,<br><br>　　-against-<br><br>CARLSON RESTAURANTS INC., CARLSON RESTAURANTS WORLDWIDE INC., and T.G.I. FRIDAY'S INC.,<br><br>　　　　　Defendants. | No. 14 Civ. 2740 (AT)<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiffs Jamel Flood, Ira Heaston, Issac Heaston, Tashauna Reid, Patrick Pink, Amy Courtemanche, Eury Espinal, and Jose Fernandez (collectively "Plaintiffs"), individually and on behalf of all others similarly situated, as class representatives, upon personal knowledge as to themselves, and upon information and belief as to other matters, allege as follows:

### NATURE OF THE ACTION

1.　　This lawsuit seeks to recover minimum wages, overtime compensation, spread-of-hours pay, misappropriated tips, uniform-related expenses, unlawful deductions, and other wages for Plaintiffs and their similarly situated co-workers – servers, bussers, runners, bartenders, barbacks, hosts, and other "tipped workers" – who work or have worked at T.G.I. Friday's

restaurants owned and/or operated by Carlson Restaurants Inc., Carlson Restaurants Worldwide Inc., and T.G.I. Friday's Inc. nationwide (collectively "T.G.I. Friday's" or "Defendants").

2.     Plaintiffs bring this action on behalf of themselves and similarly situated current and former employees who elect to opt in to this action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), and specifically, the collective action provision of 29 U.S.C. § 216(b), to remedy violations of the wage-and-hour provisions of the FLSA by Defendants that have deprived Plaintiffs and others similarly situated of their lawfully earned wages.

3.     Plaintiffs Jamel Flood, Ira Heaston, Issac Heaston, Tashauna Reid, and Patrick Pink ("the New York Plaintiffs") also bring this action on behalf of themselves and similarly situated current and former tipped workers in New York pursuant to Federal Rule of Civil Procedure 23 ("Rule 23") to remedy violations of the New York Labor Law ("NYLL") Article 6, §§ 190 *et seq.*, and Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

4.     Plaintiffs Amy Courtemanche and Eury Espinal ("the Massachusetts Plaintiffs") also bring this action on behalf of themselves and similarly situated current and former tipped workers and/or wait staff in Massachusetts pursuant to Federal Rule of Civil Procedure 23 to remedy violations of the Massachusetts Wage Law, Tips Law, and Minimum & Overtime Law Wage Law ("MA Wage Laws"), Mass. Gen. L. ch. 149 §§ 148 and 152A and Mass. Gen. L. ch. 151 §§ 1, 1A and 7.

5.     Plaintiff Jose Fernandez also brings this action on behalf of himself and similarly situated current and former tipped workers in New Jersey pursuant to Federal Rule of Civil Procedure 23 to remedy violations of the New Jersey Wage and Hour Law ("NJWL"), N.J.S.A.

34:11-56a *et seq.* and the supporting New Jersey Department of Labor and Workforce Development regulations.

6.     Carlson Restaurants Inc. and Carlson Restaurants Worldwide Inc. ("Carlson") are among the largest private companies in the world.[1]

7.     Carlson is a family-owned hospitality and travel company that operates some of the world's most recognizable brands, including Quorvus Collection, Radisson Blu, Radisson, Radisson Red, Park Plaza, Park Inn by Radisson, Country Inns & Suites By Carlson, T.G.I. Friday's, and Carlson Wagonlit Travel.

8.     Carlson operates 1,300 hotels in 100 countries and territories, 920 T.G.I. Friday's restaurants in 60 countries and territories, and employs more than 175,000 people worldwide.

9.     As of 2013, Carlson's T.G.I. Friday's restaurants had system-wide revenues of approximately $2.7 billion.

10.    Defendants have maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including the ability to hire, fire, and discipline them.

11.    Defendants maintain a human resources "hub" where tipped workers at any Carlson T.G.I. Friday's restaurant nationwide can access information regarding payroll and benefits, enroll in benefits programs, and print tax forms.[2]

12.    If Defendants' tipped workers at any Carlson T.G.I. Friday's restaurant have questions about their wages, they can contact a centralized employee services through a Carlson email address, Team-Member-Services@carlson.com.

13.    At all times relevant, Defendants have paid Plaintiffs at a "tipped" minimum wage rate – less than the full minimum wage rate for non-tipped workers.

---

[1]     http://www.carlson.com/our-company/index.do
[2]     www.myhr.carlson.com.

14.     Defendants, however, have not satisfied the strict requirements under the FLSA, the NYLL, or MA Wage Laws that would allow them to pay this reduced minimum wage (take a "tip credit").

15.     Specifically, Defendants maintain a policy and practice whereby tipped workers are required to spend a substantial amount of time performing non-tip producing "side work" including, but not limited to, general cleaning of the restaurant, preparing food in bulk for customers, cutting produce, refilling condiments, and stocking and replenishing the bar and service areas.

16.     Defendants require tipped workers to perform side work at the start and end of every shift.

17.     Defendants typically schedule tipped workers to work lunch, dinner, or a "swing" shift.

18.     Regardless of the type of shift, Defendants require tipped workers to perform side work at the start and end of each shift.

19.     Defendants require tipped workers to perform most side work before the restaurant is open or after the restaurant has closed and customers have left.

20.     For instance, Defendants typically require tipped workers to arrive at least an hour prior to the start of customer service and to stay at work approximately two hours after the restaurant closes.

21.     During these periods, Defendants required tipped workers to perform side work.

22.     As a result, tipped workers spend in excess of two hours and more than twenty percent of their work time engaged in side work duties.

23.     Defendants pay tipped workers for this work at or below the reduced tip credit minimum wage rate.

24.     The duties that Defendants require tipped workers to perform are duties that are customarily assigned to "back-of-the-house" employees in other restaurants, who typically receive at least the full minimum wage rate.

25.     The side work that Defendants require tipped workers to perform includes, but is not limited to: (1) setting up the expeditor line in the back of the house (filling bins with ice, lettuce, tomatoes, condiments, and sauces); (2) cutting lemons; (3) setting up dishes and glassware at the bar; (4) slicing garnishes for the bar; (5) lining baskets with wax paper for hamburgers; (6) assembling stacks of sliced tomatoes, pickles, and onions to be used to dress hamburgers; (7) breaking down sheets of premade desserts into smaller pieces; (8) stocking server stations with plates, glasses, and silverware; (9) rolling silverware; (10) sweeping and mopping floors; (11) stocking "to-go" containers; (12) dusting window blinds and windowsills; (13) cleaning and breaking down the expeditor's line, soup station, and salad area; (14) taking out garbage; (15) cleaning the customer bathroom; (16) brewing large batches of tea and coffee; and (17) breaking down and cleaning the tea/coffee and soda stations.

26.     The side work described above is not specific to particular customers, tables, or sections, but is performed in mass quantities for the entire shift or for future shifts.  Moreover, as these duties are not related to Plaintiffs' duties as tipped workers, Plaintiffs are entitled to the full minimum wage.

27.     Defendants' timekeeping system is capable of tracking multiple job codes for different work assignments.

28.     Defendants also maintain a policy and practice whereby tipped workers are

encouraged to work off-the-clock.

29.     For example, managers informed Plaintiffs that if they were "burning the clock," (approaching overtime in a given week), Plaintiffs should punch in only after they had received their first customer, rather than when they arrived at the restaurant and began to work.

30.     Managers often punched Plaintiffs out after they completed serving tables in order to reduce the recorded number of hours worked.

31.     Although Plaintiffs continued to perform work for Defendants after their managers clocked them out, they did so off-the-clock and without compensation.

32.     Some of the work that Plaintiffs performed off-the-clock was in excess of forty hours in a workweek.

33.     While working off-the-clock, Plaintiffs were engaged in non-tip producing side work, as described above.

34.     Defendants also "shaved" time from the total number of hours Plaintiffs worked and recorded in their time records.

35.     Managers informed Plaintiffs that they reduced the hours Plaintiffs worked and recorded in order to stay within T.G.I. Friday's labor matrix.

36.     Defendants maintain a policy and practice whereby tipped workers are required to wear uniforms featuring the T.G.I. Friday's logo.

37.     Defendants maintain a dress code policy that requires tipped workers' uniforms to be "clean" and "wrinkle free."

38.     Defendants only supply tipped workers with one uniform.

39.     Defendants do not supply tipped workers with a sufficient number of uniforms for multiple shifts.

40.     Defendants do not launder tipped workers' uniforms.

41.     Defendants require Plaintiffs and other tipped workers to pay for the cleaning and maintenance of their uniforms.

42.     Defendants also require Plaintiffs and other tipped workers to engage in a tip distribution scheme wherein they must share tips with silverware rollers and expeditors.

43.     Silverware rollers and expeditors are not entitled to share tips under the FLSA or the NYLL.

44.     Silverware rollers work in the back-of-the-house and roll large quantities of silverware for service.

45.     Expeditors work in the back-of-the-house garnishing plates and preparing sauces.

46.     Neither silverware rollers nor expeditors have direct interaction with customers.

47.     Defendants also maintain a policy and practice whereby they take unlawful deductions from tipped workers' wages.

48.     Defendants require tipped workers to pay customers' bills when the customers walk out of the restaurant without paying for their meals, commonly referred to as a "customer walkout."

**THE PARTIES**

**Plaintiffs**

**Jamel Flood**

49.     Jamel Flood ("Flood") is an adult individual who is a resident of Union City, New Jersey.

50.    Flood was employed by Defendants as a server at the T.G.I. Friday's restaurant located at 825 Central Park Ave, Scarsdale, New York 10583, from in or around July 2011 until November 2012.

51.    Carlson owned and operated the T.G.I. Friday's restaurants at which Flood worked.

52.    Flood is a covered employee within the meaning of the FLSA and the NYLL.

53.    A written consent form for Flood was filed with the original Class Action Complaint.

**Ira Heaston**

54.    Ira Heaston is an adult individual who is a resident of Springfield Gardens, New York.

55.    Ira Heaston was employed by Defendants as a server at the T.G.I. Friday's restaurant located at 829 Merrick Ave, Westbury, New York 11590, from in or around May 2012 until July 2013.

56.    Carlson owned and operated the T.G.I. Friday's restaurant at which Ira Heaston worked.

57.    Ira Heaston is a covered employee within the meaning of the FLSA and the NYLL.

58.    A written consent form for Ira Heaston was filed with the original Class Action Complaint.

**Issac Heaston**

59.    Issac Heaston is an adult individual who is a resident of Springfield Gardens, New York.

60.     Issac Heaston was employed by Defendants as a server at the T.G.I. Friday's restaurant located at 1160 Carl D Silver Parkway, Fredericksburg, Virginia 22401, from in or around February 2011 until December 2011.

61.     Issac Heaston was employed by Defendants as a server at the T.G.I. Friday's restaurant located at 829 Merrick Ave, Westbury, New York 11590, from in or around January 2012 until October 2012.

62.     Carlson owned and operated the T.G.I. Friday's restaurants at which Issac Heaston worked.

63.     Issac Heaston is a covered employee within the meaning of the FLSA and the NYLL.

64.     A written consent form for Issac Heaston was filed with the original Class Action Complaint.

**Tashauna Reid**

65.     Tashauna Reid ("Reid") is an adult individual who is a resident of Loriton, New York.

66.     Reid was employed by Defendants as a host at the T.G.I. Friday's restaurant located at Green Acres Mall, 950 West Circle Drive, Valley Stream, New York 11581, from in or around December 2012 until February 2013.

67.     Carlson owned and operated the T.G.I. Friday's restaurant at which Reid worked.

68.     Reid is a covered employee within the meaning of the FLSA and the NYLL.

69.     A written consent form for Reid was filed with the First Amended Class Action Complaint.

**Patrick Pink**

70.     Patrick Pink ("Pink") is an adult individual who is a resident of Springfield Gardens, New York.

71.     Pink was employed by Defendants as a server at the T.G.I. Friday's restaurant located at 829 Merrick Ave, Westbury, New York 11590, from in or around January 2012 until January 3, 2015.

72.     Carlson owned and operated the T.G.I. Friday's restaurant at which Pink worked.

73.     Pink is a covered employee within the meaning of the FLSA and the NYLL.

74.     A written consent form for Pink is being filed with this Amended Class Action Complaint.

**Amy Courtemanche**

75.     Amy Courtemanche ("Courtemanche") is an adult individual who is a resident of Mansfield, Massachusetts.

76.     Courtemanche has been employed by Defendants as a server and bartender at the T.G.I. Friday's restaurant located at Mansfield Crossing, 280 School Street, Suite A100, Mansfield, Massachusetts 02048, from in or around February 2008 until the present.

77.     Carlson owns and operates the T.G.I. Friday's restaurant at which Courtemanche works.

78.     Courtemanche is a covered employee and/or wait staff employee within the meaning of the FLSA and MA Wage Laws.

79.     A written consent form for Courtemanche was filed with the First Amended Class Action Complaint.

**Eury Espinal**

80.     Eury Espinal ("Espinal") is an adult individual who is a resident of Mansfield, Massachusetts.

81.     Espinal was employed by Defendants from in or around April 2012 until August 2014. Espinal was employed by Defendants as a server at the T.G.I. Friday's restaurant located at Mansfield Crossing, 280 School Street, Suite A100, Mansfield, Massachusetts 02048, from in or around December 2012 until September 2013.

82.     Carlson owns and operates the T.G.I. Friday's restaurant at which Espinal worked.

83.     Espinal is a covered employee and/or wait staff employee within the meaning of the FLSA and MA Wage Laws.

84.     A written consent form for Espinal is being filed with this Amended Class Action Complaint.

**Jose Fernandez**

85.     Jose Fernandez ("Fernandez") is an adult individual who is a resident of North Plainfield, New Jersey.

86.     Fernandez was employed by Defendants as a server and bartender at the T.G.I. Friday's restaurant located at 1701 U.S. 22 #100, Watchung, NJ 07060, from in or around March 2011 until December 2014.

87.     Fernandez was employed by Defendants as a server and bartender at the T.G.I. Friday's restaurant located at 13500 W Sunrise Blvd, Sunrise, Florida 33323, from in or around February 2014 until August 2014.

88.     Carlson owned and operated the T.G.I. Friday's restaurants at which Fernandez worked.

89.     Fernandez is a covered employee within the meaning of the FLSA and the NJWL.

90.     A written consent form for Fernandez is being filed with this Amended Class Action Complaint.

**Defendants**

91.     Defendants Carlson Restaurants Inc., Carlson Restaurants Worldwide Inc., and T.G.I. Friday's Inc. jointly employed Plaintiffs and similarly situated employees at all times relevant.

92.     Each Defendant has had substantial control over Plaintiffs' working conditions, and over the unlawful policies and practices alleged herein.

93.     Defendants are part of a single integrated enterprise that jointly employed Plaintiffs and similarly situated employees at all times relevant.

94.     Defendants' operations are interrelated and unified.

95.     During all relevant times, T.G.I. Friday's shared a common management and was centrally controlled and/or owned by Defendants.

96.     During all relevant times, Defendants have been Plaintiffs' employers within the meaning of the FLSA and the NYLL.

**Carlson Restaurants Inc.**

97.     Together with the other Defendants, Carlson Restaurants Inc. ("Carlson Restaurants") has owned and/or operated T.G.I. Friday's restaurants during the relevant period.

98.     Carlson Restaurants' principal executive office is located at 4201 Marsh Lane, Carrollton, Texas 75007.

99.     Carlson Restaurants is a foreign corporation doing business in New York State.

100.    At all relevant times, Carlson Restaurants has maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

101.    Carlson Restaurants allows employees to freely transfer between, or be shared by, the various T.G.I. Friday's restaurants it operates without retraining such employees.

102.    Carlson Restaurants applies the same employment policies, practices, and procedures to all tipped workers at its T.G.I. Friday's restaurants, including policies, practices, and procedures with respect to payment of minimum wage, overtime compensation, spread-of-hours pay, tips, uniform-related expenses, and the making of unlawful deductions.

103.    Carlson Restaurants is the name of an entity printed on Plaintiffs' paychecks.

104.    Upon information and belief, at all relevant times Carlson Restaurants has an annual gross volume of sales in excess of $500,000.

**Carlson Restaurants Worldwide Inc.**

105.    Together with the other Defendants, Carlson Restaurants Worldwide Inc. ("Carlson Worldwide") has owned and/or operated the Friday's restaurants during the relevant period.

106.    Carlson Worldwide's principal executive office is located at 4201 Marsh Lane, Carrollton, Texas 75007, the same principal executive office of Carlson Restaurants.

107.    Carlson Worldwide is a foreign corporation doing business in New York State.

108.    At all relevant times, Carlson Worldwide has maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

109.    Carlson Worldwide allows employees to freely transfer between, or be shared by, the various T.G.I. Friday's restaurants it operates without retraining such employees.

110.    Carlson Worldwide applies the same employment policies, practices, and procedures to all tipped workers at its T.G.I. Friday's restaurants, including policies, practices, and procedures with respect to payment of minimum wage, overtime compensation, spread-of-hours pay, tips, uniform-related expenses, and the making of unlawful deductions.

111.    Carlson Restaurants Worldwide is the name of an entity printed on Plaintiffs' paychecks.

112.    Upon information and belief, at all relevant times Carlson Worldwide has an annual gross volume of sales in excess of $500,000.

**T.G.I. Friday's Inc.**

113.    Together with the other Defendants, T.G.I. Friday's Inc. has owned and/or operated T.G.I. Friday's restaurants during the relevant period.

114.    T.G.I. Friday's Inc. is a domestic corporation organized and existing under the laws of New York State.

115.    T.G.I. Friday's Inc.'s principal executive office is located at 4201 Marsh Lane, Carrollton, Texas 75007, the same principal executive office of Carlson Restaurants and Carlson Worldwide.

116.    T.G.I. Friday's Inc. is a wholly owned subsidiary of Carlson Restaurants and Carlson Worldwide.

117.    At all relevant times, T.G.I. Friday's Inc. has maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including timekeeping, payroll, and other employment practices.

118.    T.G.I. Friday's Inc. applies the same employment policies, practices, and procedures to all tipped workers, including policies, practices, and procedures with respect to payment of minimum wage, overtime compensation, spread-of-hours pay, tips, uniform-related

expenses, and the making of unlawful deductions.

119.   Upon information and belief, at all relevant times, T.G.I. Friday's Inc. has an annual gross volume of sales in excess of $500,000.

## JURISDICTION AND VENUE

120.   This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332 and 1337, and jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

121.   This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(a) because the parties are citizens of different states and the amount in controversy between at least one named Plaintiff and the Defendants exceeds the sum or value of $75,000.00.

122.   This Court has original jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), codified at 28 U.S.C. § 1332(d), because the amount in controversy against the Defendants in this matter exceeds the sum or value of $5,000,000, exclusive of interest and costs.

123.   The members of each of the proposed classes are citizens of states different from that of their respective Defendants.

124.   There are at least 100 members in each of the proposed classes.

125.   Defendants are subject to personal jurisdiction in New York.

126.   This Court also has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

127.   This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

128.   Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## COLLECTIVE ACTION ALLEGATIONS

129.    Plaintiffs bring the First and Second Causes of Action, the FLSA claims, on behalf of themselves and all similarly situated current and former tipped workers employed at T.G.I. Friday's restaurants owned, operated, and/or controlled by Defendants, for a period of three years prior to the filing of the original Complaint and the date of final judgment in this matter, and who elect to opt-in to this action (the "FLSA Collective Members").

130.    At all relevant times, Plaintiffs and the FLSA Collective Members are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to Defendants' decision, policy, plan, and common programs, practices, procedures, protocols, routines, and rules of willfully failing and refusing to pay Plaintiffs at the legally required minimum wage for all hours worked and one-and-one-half times this rate for work in excess of forty hours per workweek, and requiring tipped workers to engage in side work for more than twenty percent of their time at work.  Plaintiffs' claims stated herein are essentially the same as those of the other FLSA Collective Members.

131.    Defendants' unlawful conduct, as described in this Amended Class Action Complaint, is pursuant to a corporate policy or practice of minimizing labor costs by failing to record the hours that employees work.

132.    Defendants are aware or should have been aware that federal law required them to pay employees minimum wage for all of the hours they work.

133.    Defendants are aware or should have been aware that federal law required them to pay employees performing non-exempt duties an overtime premium for hours worked in excess of forty per workweek.

134.    Defendants' unlawful conduct has been widespread, repeated, and consistent.

135.    The First and Second Causes of Action are properly brought under and maintained as an opt-in collective action pursuant to 29 U.S.C. 216(b).

136.    The FLSA Collective Members are readily ascertainable.

137.    For the purpose of notice and other purposes related to this action, the FLSA Collective Members' names and addresses are readily available from Defendants' records.

138.    Notice can be provided to the FLSA Collective Members via first class mail to the last address known to Defendants.

## NEW YORK CLASS ACTION ALLEGATIONS

139.    The New York Plaintiffs bring the Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, and Tenth Causes of Action, NYLL claims, under Rule 23, on behalf of themselves and all similarly situated current and former tipped workers employed at T.G.I. Friday's in New York owned and/or operated by Carlson Restaurants Inc., Carlson Restaurants Worldwide Inc., and/or T.G.I. Friday's Inc. between April 17, 2008, which is six years prior to the filing of the original Class Action Complaint in this action, and the date of final judgment in this matter ("NY Rule 23 Class").

140.    Excluded from the NY Rule 23 Class Members are Defendants, Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the NY Rule 23 Class.

141.    The members of the NY Rule 23 Class ("NY Rule 23 Class Members") are readily ascertainable.  The number and identity of the NY Rule 23 Class Members are determinable from the Defendants' records.  The hours assigned and worked, the positions held,

and the rates of pay for each NY Rule 23 Class Member are also determinable from Defendants'
records.  For the purpose of notice and other purposes related to this action, their names and
addresses are readily available from Defendants.  Notice can be provided by means permissible
under NY Rule 23.

142.    The NY Rule 23 Class Members are so numerous that joinder of all members is
impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

143.    There are more than fifty NY Rule 23 Class Members.

144.    Plaintiffs' claims are typical of those claims which could be alleged by any Rule
23 Class Member, and the relief sought is typical of the relief which would be sought by each
Rule 23 Class Member in separate actions.

145.    All the NY Rule 23 Class Members were subject to the same corporate practices
of Defendants, as alleged herein, of failing to pay minimum wage, failing to pay overtime,
failing to pay for off-the-clock work, failing to properly distribute tips, failing to pay spread-of-
hours pay, making illegal deductions, failing to pay uniform-related expenses, failing to provide
proper wage statements, and failing to provide proper wage and hour notices.

146.    Plaintiffs and the NY Rule 23 Class Members have all sustained similar types of
damages as a result of Defendants' failure to comply with the NYLL.

147.    Plaintiffs and the NY Rule 23 Class Members have all been injured in that they
have been uncompensated or under-compensated due to Defendants' common policies, practices,
and patterns of conduct.  Defendants' corporate-wide policies and practices affected all NY Rule
23 Class Members similarly, and Defendants benefited from the same type of unfair and/or
wrongful acts as to each of the NY Rule 23 Class Members.

148.    Plaintiffs and other NY Rule 23 Class Members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

149.    Plaintiffs are able to fairly and adequately protect the interests of the NY Rule 23 Class Members and have no interests antagonistic to the NY Rule 23 Class Members.

150.    Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented many plaintiffs and classes in wage and hour cases.

151.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.  Because the losses, injuries, and damages suffered by each of the individual NY Rule 23 Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual NY Rule 23 Class Members to redress the wrongs done to them.  On the other hand, important public interests will be served by addressing the matter as a class action.  The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual NY Rule 23 Class Members would create a risk of inconsistent and/or varying adjudications with respect to the individual NY Rule 23 Class Members, establishing incompatible standards of conduct for Defendants and resulting in the

impairment of the NY Rule 23 Class Members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

152.    Upon information and belief, Defendants and other employers throughout the state violate the NYLL. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

153.    This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

154.    Common questions of law and fact exist as to the NY Rule 23 Class that predominate over any questions only affecting Plaintiffs and the NY Rule 23 Class Members individually and include, but are not limited to, the following:

    (a)    whether Defendants violated NYLL Articles 6 and 19, and the supporting New York State Department of Labor Regulations;

    (a)    whether Defendants employed Plaintiffs and the NY Rule 23 Class Members within the meaning of the NYLL;

    (b)    whether Defendants paid Plaintiffs and the NY Rule 23 Class Members at the proper minimum wage rate for all hours worked;

    (c)    whether Defendants had a policy or practice of failing to provide adequate notice of their payment of a reduced minimum wage to Plaintiffs and the NY Rule 23 Class Members;

    (d)    what notice is required in order for Defendants to take a tip credit under New York State Department of Labor regulations;

(e)     at what common rate, or rates subject to common methods of calculation, Defendants were  required to pay Plaintiffs and the NY Rule 23 Class Members for their work;

(f)     whether Defendants have a policy of requiring tipped employees to engage in side work for two hours or more per day and/or for more than twenty percent of their time at work in violation of the NYLL;

(h)     whether Defendants properly compensated Plaintiffs and the NY Rule 23 Class Members for hours worked in excess of forty hours per workweek;

(i)     whether Defendants failed to provide Plaintiffs and the NY Rule 23 Class Members spread-of-hours pay when the length of their workday was greater than ten hours;

(j)     whether Defendants misappropriated tips from Plaintiffs and the NY Rule 23 Class Members by demanding, handling, pooling, counting, distributing, accepting, and/or retaining tips and/or service charges paid by customers that were intended for Plaintiffs and the NY Rule 23 Class Members, and which customers reasonably believed to be gratuities for Plaintiffs and the NY Rule 23 Class Members;

(k)     whether Defendants distributed a portion of the tips paid by customers to workers who are not entitled to receive tips under the NYLL;

(l)     whether Defendants failed to pay Plaintiffs and the NY Rule 23 Class Members for uniform-related expenses;

(m)     whether Defendants made unlawful deductions from wages paid to Plaintiffs and the NY Rule 23 Class Members;

(n)     whether Defendants failed to keep true and accurate time and pay records for all hours worked by Plaintiffs and the NY Rule 23 Class Members, and other records required by the NYLL;

(o)     whether Defendants failed to furnish Plaintiffs and the NY Rule 23 Class Members with an accurate statement of wages, hours worked, rates paid, gross wages, and the claimed tip allowance, as required by the Wage Theft Prevention Act; and

(p)     the nature and extent of class-wide injury and the measure of damages for those injuries.

## MASSACHUSETTS CLASS ACTION ALLEGATIONS

155.    The Massachusetts Plaintiffs bring the Eleventh and Twelfth causes of action, MA

Wage Law claims, under Rule 23, on behalf of all persons who work or have worked as tipped

workers and/or wait staff at T.G.I. Friday's in Massachusetts owned and/or operated by Carlson

Restaurants Inc., Carlson Restaurants Worldwide, Inc., and/or TGI Friday's Inc. between

December 9, 2011, which is three years prior to the filing of the First Amended Class Action

Complaint in this action, and the date of final judgment in this matter ("MA Rule 23 Class").

     156.    Excluded from the MA Rule 23 Class Members are Defendants, Defendants' legal

representatives, officers, directors, assigns, and successors, or any individual who has, or who at

any time during the class period has had, a controlling interest in Defendants; the Judge(s) to

whom this case is assigned and any member of the Judges' immediate family; and all persons

who will submit timely and otherwise proper requests for exclusion from the MA Rule 23 Class.

     157.    The members of the MA Rule 23 Class ("MA Rule 23 Class Members") are

readily ascertainable.  The number and identity of the MA Rule 23 Class Members are

determinable from the Defendants' records.  The hours assigned and worked, the positions held,

and the rates of pay for each MA Rule 23 Class Member are also determinable from Defendants'

records.  For purposes of notice and other purposes related to this action, their names and

addresses are readily available from Defendants.  Notice can be provided by means permissible

under MA Rule 23.

     158.    The MA Rule 23 Class Members are so numerous that joinder of all members is

impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

     159.    There are more than fifty MA Rule 23 Class Members.

     160.    The Massachusetts Plaintiffs' claims are typical of those claims which could be

alleged by any MA Rule 23 Class Member, and the relief sought is typical of the relief which

would be sought by each MA Rule 23 Class Member in separate actions.

161.   All the MA Rule 23 Class Members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage, failing to pay overtime, failing to pay for off-the-clock work, and failing to properly distribute tips.

162.   The Massachusetts Plaintiffs and the MA Rule 23 Class Members have all sustained similar types of damages as a result of Defendants' failure to comply with the MA Wage Laws.

163.   The Massachusetts Plaintiffs and the MA Rule 23 Class Members have all been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices, and patterns of conduct. Defendants' corporate-wide policies and practices affected all MA Rule 23 Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each of the MA Rule 23 Class Members.

164.   The Massachusetts Plaintiffs and other MA Rule 23 Class Members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

165.   The Massachusetts Plaintiffs are able to fairly and adequately protect the interests of the MA Rule 23 Class Members and has no interests antagonistic to the MA Rule 23 Class Members.

166.   The Massachusetts Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented many plaintiffs and classes in wage and hour cases.

167.   A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against

corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries, and damages suffered by each of the individual MA Rule 23 Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual MA Rule 23 Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual MA Rule 23 Class Members would create a risk of inconsistent and/or varying adjudications with respect to the individual MA Rule 23 Class Members, establishing incompatible standards of conduct for Defendants and resulting in the impairment of the MA Rule 23 Class Members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

168. Upon information and belief, Defendants and other employers throughout the state violate the MA Wage Laws. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree

of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

169.    This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

170.    Common questions of law and fact exist as to the MA Rule 23 Class that predominate over any questions only affecting them individually and include, but are not limited to, the following:

(a)    whether Defendants employed the Massachusetts Plaintiffs and the MA Rule 23 Class Members within the meaning of the MA Wage Laws;

(b)    whether Defendants paid the Massachusetts Plaintiffs and the MA Rule 23 Class Members at the proper minimum wage rate for all hours worked;

(c)    whether Defendants had a policy or practice of failing to provide adequate notice of their payment of a reduced minimum wage to the Massachusetts Plaintiffs and the MA Rule 23 Class Members;

(d)    what notice is required in order for Defendants to take a tip credit under the MA Wage Laws;

(e)    whether Defendants misappropriated tips from the Massachusetts Plaintiffs and the MA Rule 23 Class Members by demanding, handling, pooling, counting, distributing, accepting, and/or retaining tips and/or service charges paid by customers that were intended for the Massachusetts Plaintiffs and the MA Rule 23 Class Members, and which customers reasonably believed to be gratuities for Plaintiffs and the MA Rule 23 Class Members;

(f)    whether Defendants distributed a portion of the tips paid by customers to workers who are not entitled to receive tips under the MA Wage Laws;

(g)    whether Defendants failed to keep true and accurate time and pay records for all hours worked by the Massachusetts Plaintiffs and the MA Rule 23 Class Members, and other records required by the MA Wage Laws; and

(h)    the nature and extent of class-wide injury and the measure of damages for those injuries.

## NEW JERSEY CLASS ACTION ALLEGATIONS

171.     Plaintiff Jose Fernandez brings the Thirteenth and Fourteenth causes of action, New Jersey Wage and Hour Law, under Rule 23, on behalf of all persons who work or have worked as tipped workers and/or wait staff at T.G.I. Friday's in New Jersey owned and/or operated by Carlson Restaurants Inc., Carlson Restaurants Worldwide, Inc., and/or TGI Friday's Inc. between January 30, 2013, which is two years prior to the filing of the Second Amended Class Action Complaint in this action, and the date of final judgment in this matter ("NJ Rule 23 Class").

172.     Excluded from the NJ Rule 23 Class Members are Defendants, Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the NJ Rule 23 Class.

173.     The members of the NJ Rule 23 Class ("NJ Rule 23 Class Members") are readily ascertainable.  The number and identity of the NJ Rule 23 Class Members are determinable from the Defendants' records.  The hours assigned and worked, the positions held, and the rates of pay for each NJ Rule 23 Class Member are also determinable from Defendants' records.  For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants.  Notice can be provided by means permissible under NJ Rule 23.

174.     The NJ Rule 23 Class Members are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

175.     There are more than fifty NJ Rule 23 Class Members.

176.    Plaintiff Fernandez's claims are typical of those claims which could be alleged by any NJ Rule 23 Class Member, and the relief sought is typical of the relief which would be sought by each NJ Rule 23 Class Member in separate actions.

177.    All the NJ Rule 23 Class Members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage, failing to pay overtime, failing to pay for off-the-clock work, and failing to properly distribute tips.

178.    Plaintiff Fernandez and the NJ Rule 23 Class Members have all sustained similar types of damages as a result of Defendants' failure to comply with the NJ Wage Laws.

179.    Plaintiff Fernandez and the NJ Rule 23 Class Members have all been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices, and patterns of conduct. Defendants' corporate-wide policies and practices affected all NJ Rule 23 Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each of the NJ Rule 23 Class Members.

180.    Plaintiff Fernandez and other NJ Rule 23 Class Members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

181.    Plaintiff Fernandez is able to fairly and adequately protect the interests of the NJ Rule 23 Class Members and has no interests antagonistic to the NJ Rule 23 Class Members.

182.    Plaintiff Fernandez is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented many plaintiffs and classes in wage and hour cases.

183.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against

corporate defendants.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.  Because the losses, injuries, and damages suffered by each of the individual NJ Rule 23 Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual NJ Rule 23 Class Members to redress the wrongs done to them.  On the other hand, important public interests will be served by addressing the matter as a class action.  The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual NJ Rule 23 Class Members would create a risk of inconsistent and/or varying adjudications with respect to the individual NJ Rule 23 Class Members, establishing incompatible standards of conduct for Defendants and resulting in the impairment of the NJ Rule 23 Class Members' rights and the disposition of their interests through actions to which they were not parties.  The issues in this action can be decided by means of common, class-wide proof.  In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

184.    Upon information and belief, Defendants and other employers throughout the state violate the NJ Wage Laws.  Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation.  Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment.  Class actions provide class members who are not named in the complaint a degree

of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

185.    This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

186.    Common questions of law and fact exist as to the NJ Rule 23 Class that predominate over any questions only affecting them individually and include, but are not limited to, the following:

(i)     whether Defendants employed Plaintiff Fernandez and the NJ Rule 23 Class Members within the meaning of the NJ Wage Laws;

(j)     whether Defendants paid Plaintiff Fernandez and the NJ Rule 23 Class Members at the proper minimum wage rate for all hours worked;

(k)     whether Defendants had a policy or practice of failing to provide adequate notice of their payment of a reduced minimum wage to Plaintiff Fernandez and the NJ Rule 23 Class Members;

(l)     what notice is required in order for Defendants to take a tip credit under the NJ Wage Laws;

(m)     whether Defendants misappropriated tips from Plaintiff Fernandez and the NJ Rule 23 Class Members by demanding, handling, pooling, counting, distributing, accepting, and/or retaining tips and/or service charges paid by customers that were intended for Plaintiff Fernandez and the NJ Rule 23 Class Members, and which customers reasonably believed to be gratuities for Plaintiffs and the NJ Rule 23 Class Members;

(n)     whether Defendants distributed a portion of the tips paid by customers to workers who are not entitled to receive tips under the NJ Wage Laws;

(o)     whether Defendants failed to keep true and accurate time and pay records for all hours worked by Plaintiff Fernandez and the NJ Rule 23 Class Members, and other records required by the NJ Wage Laws; and

(p)     the nature and extent of class-wide injury and the measure of damages for those injuries.

## PLAINTIFFS' FACTUAL ALLEGATIONS

187.    Consistent with their policies and patterns or practices as described herein,

Defendants harmed Plaintiffs, individually, as follows:

**Jamel Flood**

188.    Defendants did not pay Flood the proper minimum wages, overtime wages, and

spread-of-hours pay for all of the time that he was suffered or permitted to work each workweek.

189.    Throughout the duration of his employment at T.G.I. Friday's, Flood received

weekly paychecks from Defendants that did not properly record or compensate him for all the

hours that he worked.

190.    Defendants paid Flood at the New York tipped minimum wage rate.

191.    Defendants did not provide Flood with notification of the tipped minimum wage

or tip credit provisions of the FLSA or the NYLL, or their intent to apply a tip credit to his

wages.

192.    Defendants unlawfully required Flood to share tips with silverware rollers and/or

expeditors, employees in positions that are not entitled to share tips under the FLSA and/or the

NYLL.

193.    Defendants required Flood to spend at least 20% of his shift performing non-

tipped work unrelated to his duties as a tipped worker.  These duties included, but are not limited

to, running silverware through the dishwashing machine, sorting silverware, rolling silverware,

breaking down side stands, breaking down and cleaning the soda machine and coffee machine,

setting up burger bins, cutting lemons, sweeping, wiping down booths and chairs, stocking

plates, napkins, cups, and to-go containers, cleaning doors and windows, and setting up and

breaking down the expeditor line.

194.    Although Flood should have been paid the full minimum wage, Defendants paid him an hourly rate that fell below the minimum wage.

195.    Defendants frequently required Flood to perform work off-the-clock without compensation.

196.    For instance, Defendants often instructed Flood to punch into the time clock when he started to serve his first table, rather than when he arrived and began to work.  Defendants only compensated Flood for the time after he punched in.  Torres "Doe," one of Flood's managers, informed him how many hours Flood could "play with" before having to punch out and work off the clock.

197.    Defendants often punched Flood out when he finished serving tables, but required him to continue working, performing side work, off-the-clock.  Defendants did not compensate Flood for this time.  For example, if Flood was close to forty hours in a workweek, Flood's managers punched him out after he completed table service so that he could perform side work.

198.    Defendants suffered or permitted Flood to work more than forty hours per week, including weeks during which he was not properly paid at all for some of his time.

199.    As Flood typically worked five to seven shifts per week, some of the above-mentioned off-the-clock work was in excess of forty hours per week.

200.    In addition, Defendants also removed hours that Flood worked from his time records and did not pay him for the time that was removed.

201.    Some weeks, Flood worked between fifty and sixty-three hours per week without being properly compensated for all of his overtime hours.

202.    During his employment, Flood generally worked the following scheduled hours unless he missed time for vacation, sick days, or holidays:

- Flood typically worked 5 to 6 dinner shifts per week at the Scarsdale, New York T.G.I. Friday's. Dinner shifts typically started at approximately 6:00 p.m. and ended between 2:30 a.m. and 3:00 a.m.

203.    Even when Defendants did pay Flood overtime premiums for some hours worked in excess of 40 per workweek, the premiums were not calculated at 1.5 times the full minimum wage rate.

204.    Flood worked more than ten hours in a day on many occasions. Flood regularly worked approximately two double shifts per week that lasted longer than ten hours in a day.

205.    On some of these occasions, Defendants did not pay Flood spread-of-hours pay.

206.    Defendants required Flood to wear a uniform consisting of a shirt with the T.G.I. Friday's logo, black slacks, black shoes, and black socks.

207.    Defendants did not launder and/or maintain Flood's mandatory uniform, and failed to pay Flood the required weekly uniform-maintenance amount in addition to the required minimum wage.

208.    Defendants regularly made deductions from Flood's paychecks for reasons including, but not limited to, customer walkouts. For instance, managers required Flood to "pitch in" tips Flood had earned to assist a fellow server in paying for a walkout.

209.    Defendants did not keep accurate records of wages or tips earned, or of hours worked by Flood.

210.    Defendants failed to furnish Flood with accurate statements of wages, hours worked, rates paid, gross wages, and the claimed tip allowance.

**Ira Heaston**

211.    Defendants did not pay Ira Heaston the proper minimum wages, overtime wages, and spread-of-hours pay for all of the time that he was suffered or permitted to work each workweek.

212.    Throughout the duration of his employment at T.G.I. Friday's, Ira Heaston received weekly paychecks from Defendants that did not properly record or compensate him for all the hours that he worked.

213.    Defendants paid Ira Heaston at the New York tipped minimum wage rate.

214.    Defendants did not provide Ira Heaston with notification of the tipped minimum wage or tip credit provisions of the FLSA or the NYLL, or their intent to apply a tip credit to his wages.

215.    Defendants unlawfully required Ira Heaston to share tips with silverware rollers and/or expeditors, employees in positions that are not entitled to share tips under the FLSA and/or the NYLL.

216.    Defendants required Ira Heaston to spend at least 20% of his shift performing non-tipped work unrelated to his duties as a tipped worker.  These duties included, but are not limited to, setting up and breaking down the expeditor's line, cutting lemons and limes, assembling burger and appetizer baskets, wiping down booths and chairs, dusting lids, sweeping the dining area, cleaning the bathrooms, setting up and breaking down the soda machine and coffee machine, restocking plates, cups, and to-go containers, and taking out the trash.

217.    Although Ira Heaston should have been paid the full minimum wage, Defendants paid him an hourly rate that fell below the minimum wage.

218.    Defendants frequently required Ira Heaston to perform work off-the-clock without compensation.

219.   For instance, Defendants often instructed Ira Heaston to punch into the time clock when he started to serve his first table, rather than when he arrived and began to work. Defendants only compensated Ira Heaston for the time after he punched in.  Randy "Doe," Lisa "Doe," and Deon "Doe," Ira Heaston's former managers, informed Heaston that he could not punch in until he was assigned his first table of the day to prevent him from accruing overtime hours in Defendants' time-keeping system.

220.   Defendants often punched Ira Heaston out when he finished serving tables, but required him to continue working, performing side work, off-the-clock.  For example, when Ira Heaston worked as a closer, his managers punched him out at the conclusion of his table service so that the additional hours Ira Heaston spent performing side work were off-the-clock.

221.   In addition, Defendants also removed hours that Heaston worked from his time records and did not pay him for the time that was removed.

222.   As Ira Heaston typically worked five to six shifts per week, some of the above-mentioned off-the-clock work was in excess of forty hours per week.

223.   Some weeks, Ira Heaston worked between fifty-five and sixty hours per week without proper overtime compensation.

224.   During his employment, Ira Heaston generally worked the following scheduled hours unless he missed time for vacation, sick days, or holidays:

- 5 to 6 shifts per week.  Morning shifts typically started at 10:15 a.m. and ended between 3:45 p.m. and 4:45 p.m.  Dinner shifts typically started between 3:45 p.m. and 4:45 p.m. and ended between 2:30 a.m. and 4:00 a.m.  "Swing Shifts" started at approximately 12:00 p.m. and ended between 2:30 a.m. and 4:00 a.m.

225.   Even when Defendants did pay Ira Heaston  overtime premiums for some hours worked in excess of 40 per workweek, these premiums were not calculated at 1.5 times the full minimum wage rate.

226.   Ira Heaston worked more than ten hours on many occasions.  For example, Ira Heaston regularly worked approximately two to three swing shifts per week that lasted longer than ten hours in a day.

227.   On some of these occasions, Defendants did not pay Ira Heaston spread-of-hours pay.

228.   Defendants required Ira Heaston to wear a uniform consisting of a shirt with the T.G.I. Friday's logo, black slacks, black shoes, and black socks.

229.   Defendants did not launder and/or maintain Ira Heaston's mandatory uniform, and failed to pay Ira Heaston the required weekly uniform-maintenance amount in addition to the required minimum wage.

230.   Defendants regularly made deductions from Ira Heaston's paychecks for reasons including, but not limited to, customer walkouts.  For instance, Ira Heason was required to pay for customer walkouts on four to five occasions.

231.   Defendants did not keep accurate records of wages or tips earned, or of hours worked by Ira Heaston.

232.   Defendants failed to furnish Ira Heaston with accurate statements of wages, hours worked, rates paid, gross wages, and the claimed tip allowance.

**Issac Heaston**

233.   Defendants did not pay Issac Heaston the proper minimum wages, overtime wages, and spread-of-hours pay for all of the time that he was suffered or permitted to work each workweek.

234.    Throughout the duration of his employment at T.G.I. Friday's, Issac Heaston received weekly paychecks from Defendants that did not properly record or compensate him for all the hours that he worked.

235.    Defendants paid Issac Heaston at the New York tipped minimum wage rate.

236.    Defendants did not provide Issac Heaston with notification of the tipped minimum wage or tip credit provisions of the FLSA or the NYLL, or their intent to apply a tip credit to his wages.

237.    Defendants unlawfully required Issac Heaston to share tips with silverware rollers and/or expeditors, employees in positions that are not entitled to share tips under the FLSA and/or the NYLL.

238.    Defendants required Issac Heaston to spend at least 20% of his shift performing non-tipped work unrelated to his duties as a tipped worker.  These duties included, but are not limited to, setting up and breaking down the expeditor's line, cutting lemons and limes, assembling burger and appetizer baskets, wiping down booths and chairs, dusting lids, sweeping the dining area, cleaning the bathrooms, setting up and breaking down the soda machine and coffee machine, restocking plates, cups, and to-go containers, and taking out the trash.

239.    Although Issac Heaston should have been paid the full minimum wage, Defendants paid him an hourly rate that fell below the minimum wage.

240.    Defendants frequently required Issac Heaston to perform work off-the-clock without compensation.

241.    For instance, Defendants often instructed Issac Heaston to punch into the time clock when he started to serve his first table, rather than when he arrived and began to work. Defendants compensated Issac Heaston for the time after he punched in.  Bouba "Doe," Issac

Heaston's former manager, informed Issac Heaston that he could not punch in until he was assigned his first table of the day to prevent him from accruing overtime hours in Defendants' time-keeping system.

242. Defendants often punched Issac Heaston out when he finished serving tables, but required him to continue working, performing side work, off-the-clock. For example, when Issac Heaston worked as a closer, his managers punched Issac Heaston out at the conclusion of his table service so that the additional hours Issac Heaston spent performing side work were off-the-clock.

243. In addition, Defendants also removed hours that Issac Heaston worked from his time records and did not pay him for the time that was removed.

244. As Issac Heaston typically worked five to six shifts per week, some of the above-mentioned off-the-clock work was in excess of forty hours per week.

245. Some weeks, Issac Heaston worked between fifty-five and sixty hours per week without proper overtime compensation.

246. During his employment, Issac Heaston generally worked the following scheduled hours unless he missed time for vacation, sick days, or holidays:

- 5 to 6 shifts per week at the Fredericksburg, Virginia T.G.I. Friday's. Morning shifts typically started between 9:30 a.m. and 10:00 a.m. and ended around approximately 3:00 p.m. Dinner shifts typically started between 3:45 p.m. and 4:45 p.m. and ended between 2:30 a.m. and 4:00 a.m. "Swing Shifts" started at approximately 12:00 p.m. and ended between 2:30 a.m. and 4:00 a.m.

- 5 to 6 shifts per week at the Westbury, New York T.G.I. Friday's. Morning shifts typically started at 10:15 a.m. and ended between 3:45 p.m. and 4:45 p.m. Dinner shifts typically started between 3:45 p.m. and 4:45 p.m. and ended between 2:30 a.m. and 4:00 a.m. "Swing Shifts" started at approximately 12:00 p.m. and ended between 2:30 a.m. and 4:00 a.m.

247.    Even when Defendants paid Issac Heaston overtime premiums for some hours he worked in excess of 40 per workweek, these premiums were not calculated at 1.5 times the full minimum wage rate.

248.    Issac Heaston worked more than ten hours in a day on many occasions.  For example, Issac Heaston regularly worked approximately two to three swing shifts per week that lasted longer than ten hours in a day.

249.    On some of these occasions, Defendants did not pay Issac Heaston spread-of-hours pay.

250.    Defendants required Issac Heaston to wear a uniform consisting of a shirt with the T.G.I. Friday's logo, black slacks, black shoes, and black socks.

251.    Defendants did not launder and/or maintain Issac Heaston's mandatory uniform, and failed to pay Issac Heaston the required weekly uniform-maintenance amount in addition to the required minimum wage.

252.    Defendants regularly made deductions from Issac Heaston's paychecks for reasons including, but not limited to, customer walkouts.  For instance, Issac Heaston was required to pay for customer walkouts on four to six occasions.

253.    Defendants did not keep accurate records of wages or tips earned, or of hours worked by Issac Heaston.

254.    Defendants failed to furnish Issac Heaston with accurate statements of wages, hours worked, rates paid, gross wages, and the claimed tip allowance.

**Tashauna Reid**

255.    Defendants did not pay Reid the proper wages for all of the time that she was suffered or permitted to work each workweek.

256.     Throughout the duration of her employment at T.G.I. Friday's, Reid received paychecks from Defendants that did not properly record or compensate her for all the hours that she worked.

257.     Defendants paid Reid at the New York tipped minimum wage rate when she should have been paid at the full minimum wage.

258.     Defendants did not provide Reid with notification of the tipped minimum wage or tip credit provisions of the FLSA or the NYLL, or their intent to apply a tip credit to her wages.

259.     Defendants required Reid to perform non-tip producing "side work" including, but not limited to,  setting up and breaking down the expediter's line, cutting lemons, setting up dishes and glassware at the bar, slicing garnishes for the bar, lining baskets with wax paper for hamburgers, assembling stacks of sliced tomatoes, pickles, and onions to be used to dress hamburgers, stocking server stations with plates, glasses, and silverware, rolling silverware, sweeping and mopping floors, stocking "to-go" containers, dusting window blinds and windowsills, taking out garbage, cleaning the customer bathroom, and brewing large batches of tea and coffee.

260.     As a result of this practice, on many days, Reid spent in excess of two hours per workday and/or more than 20% of her workday engaged in non-tipped tasks.

261.     Defendants frequently required Reid to perform work off-the-clock without compensation.

262.     For instance, Defendants often instructed Reid to punch into the time clock when she completed her pre-shift "side work," rather than when she arrived and began to work. Defendants compensated Reid for only the time that she was punched in. Manny Petric and

Derrick "Doe," Reid's former managers, informed Reid that she could not punch in until finishing her pre-shift side work.

263.   Defendants often punched Reid out when she finished her host duties, but required her to continue working, performing "side work," off-the-clock.

264.   Defendants suffered or permitted Reid to work more than forty hours per week, including weeks during which she was not paid at all for some of her time.

265.   In addition, Defendants also removed hours that Reid worked from her time records and did not pay her any wages for the time that was removed.

266.   As Reid typically worked five to six shifts per week, some of the above-mentioned off-the-clock work was in excess of forty hours per week.

267.   Defendants suffered or permitted Reid to work more than forty hours per week, including weeks during which she was not paid at all for some of her time.

268.   Some weeks, Reid worked between forty and forty-five hours per week without being paid proper overtime compensation.

269.   During her employment, Reid generally worked the following scheduled hours unless she missed time for vacation, sick days, or holidays:

- 5 to 6 shifts per week.  Morning shifts typically started at 8 a.m. and ended between 3:45 p.m. and 4:45 p.m.  Dinner shifts typically started between 3:45 p.m. and 4:45 p.m. and ended between 2:30 a.m. and 4:00 a.m.

270.   Even when Defendants did pay Reid overtime premiums for some hours she worked in excess of forty per workweek, these premiums were not calculated at 1.5 times the full minimum wage rate.

271.   Reid worked more than ten hours in a day several times and was not paid spread-of-hours pay for some of these days.

272.    Defendants required Reid to wear a uniform consisting of a shirt with the T.G.I. Friday's logo, black slacks, black shoes, and black socks.

273.    Defendants did not launder and/or maintain Reid's mandatory uniform, and failed to pay Reid the required weekly uniform-maintenance amount in addition to the required minimum wage.

274.    Defendants regularly made deductions from Reid's paychecks for reasons including, but not limited to, customer walkouts.

275.    Defendants did not keep accurate records of wages or tips earned, or of hours worked by Reid.

276.    Defendants failed to furnish Reid with accurate statements of wages, hours worked, rates paid, gross wages, and the claimed tip allowance.

**Patrick Pink**

277.    Defendants did not pay Patrick Pink ("Pink") the proper minimum wages, overtime wages, and spread-of-hours pay for all of the time that he was suffered or permitted to work each workweek.

278.    Throughout the duration of his employment at T.G.I. Friday's, Pink received weekly paychecks from Defendants that did not properly record or compensate him for all the hours that he worked.

279.    Defendants paid Pink at the New York tipped minimum wage rate.

280.    Defendants did not provide Pink with notification of the tipped minimum wage or tip credit provisions of the FLSA or the NYLL, or their intent to apply a tip credit to his wages.

281.    Defendants unlawfully required Pink to share tips with silverware rollers and/or expeditors, employees in positions that are not entitled to share tips under the FLSA and/or the NYLL.

282.    Defendants required Pink to spend at least 20% of his shift performing non-tipped work unrelated to his duties as a tipped worker.  These duties included, but are not limited to, setting up and breaking down the expeditor's line, cutting lemons and limes, assembling burger and appetizer baskets, wiping down booths and chairs, dusting lids, sweeping the dining area, cleaning the bathrooms, setting up and breaking down the soda machine and coffee machine, restocking plates, cups, and to-go containers, and taking out the trash.

283.    Although Pink should have been paid the full minimum wage, Defendants paid him an hourly rate that fell below the minimum wage.

284.    Defendants frequently required Pink to perform work off-the-clock without compensation.

285.    For instance, Defendants often instructed Pink to punch into the time clock when he started to serve his first table, rather than when he arrived and began to work.  Defendants compensated Pink for the time after he punched in.  Randy "Doe," Pink's former manager, informed Pink that he could not punch in until he was assigned his first table of the day to prevent him from accruing overtime hours in Defendants' time-keeping system.

286.    Defendants often punched Pink out when he finished serving tables, but required him to continue working, performing side work, off-the-clock.  For example, Randy "Doe," Pink's manager punched him out at the conclusion of his table service so that the additional hours Pink spent performing side work were off-the-clock.

287.    As Pink typically worked five to six shifts per week, some of the above-mentioned off-the-clock work was in excess of forty hours per week.

288.    Some weeks, Pink worked between fifty-five and sixty hours per week without proper overtime compensation.

289.    During his employment, Pink generally worked the following scheduled hours unless he missed time for vacation, sick days, or holidays:

- 5 to 6 shifts per week. Morning shifts typically started at 10:15 a.m. and ended between 3:45 p.m. and 4:45 p.m. Dinner shifts typically started between 3:45 p.m. and 4:45 p.m. and ended between 2:30 a.m. and 4:00 a.m. "Swing Shifts" started at approximately 12:00 p.m. and ended between 2:30 a.m. and 4:00 a.m.

290.    Even when Defendants paid Pink overtime premiums for some hours he worked in excess of 40 per workweek, these premiums were not calculated at 1.5 times the full minimum wage rate.

291.    Pink regularly worked approximately one to two double shifts per week that lasted longer than ten hours in a day.

292.    On some of these occasions, Defendants did not pay Pink spread-of-hours pay.

293.    Defendants required Pink to wear a uniform consisting of a shirt with the T.G.I. Friday's logo, black slacks, black shoes, and black socks.

294.    Defendants did not launder and/or maintain Pink's mandatory uniform, and failed to pay Pink the required weekly uniform-maintenance amount in addition to the required minimum wage.

295.    On four to six occasions, Defendants made deductions from Pink's paychecks for reasons including, but not limited to, customer walkouts.

296.    Defendants did not keep accurate records of wages or tips earned, or of hours worked by Pink.

297.     Defendants failed to furnish Pink with accurate statements of wages, hours worked, rates paid, gross wages, and the claimed tip allowance.

**Amy Courtemanche**

298.     Defendants did not pay Courtemanche the proper wages for all of the time that she was suffered or permitted to work each workweek.

299.     Throughout the duration of her employment at T.G.I. Friday's, Courtemanche received paychecks from Defendants that did not properly record or compensate her for all the hours that she worked.

300.     Defendants paid Courtemanche at the Massachusetts tipped minimum wage rate when she should have been paid at the full minimum wage rate.

301.     Defendants did not provide Courtemanche with notification of the tipped minimum wage or tip credit provisions of the FLSA or the MA Wage Laws, or their intent to apply a tip credit to her wage.

302.     Defendants unlawfully required Courtemanche to share tips with silverware rollers and/or expeditors, employees in non-wait staff positions that are not entitled to share tips under the FLSA and/or the MA Wage Laws.

303.     Defendants required Courtemanche to perform non-tip producing "side work" including, but not limited to, setting up and breaking down the expediter's line, cutting lemons and limes, wiping down booths and chairs, dusting lids, sweeping the dining area, cleaning the bathrooms, setting up and breaking down the soda machine and coffee machine, restocking plates, cups, and to-go containers, cleaning windows, rolling silverware, and taking out the trash.

304.     As a result of this practice, there were days where Courtemanche spent in excess of 20% of her day engaged in non-tipped tasks.

305. Although Courtemanche should have been paid the full minimum wage, Defendants paid her an hourly rate that fell below the minimum wage.

306. Defendants frequently required Courtemanche to perform work off-the-clock without compensation.

307. For instance, Defendants often instructed Courtemanche to punch into the time clock when she started to serve her first table, rather than when she arrived and began to work. Defendants compensated Courtemanche for only the time that she was punched in. Rihanna Simard, Courtemanche's former manager, informed Courtemanche that she could not punch in until she was assigned her first table of the day.

308. Defendants often punched out or requested that Courtemanche punch out when she finished serving tables, but required her to continue working, performing "side work," off-the-clock. Rihanna Simard, Courtemanche's former manager, informed Courtemanche of this requirement.

309. Defendants suffered or permitted Courtemanche to work more than forty hours per week, including weeks during which she was not paid at all for some of her time.

310. As Courtemanche typically worked four to six shifts per week, some of the above-mentioned off-the-clock work was in excess of forty hours per week.

311. Some weeks, Courtemanche worked between forty and forty-five hours per week without being paid proper overtime compensation.

312. During her employment, Courtemanche generally worked the following scheduled hours unless she missed time for vacation, sick days, or holidays:

- 4 to 6 shifts per week. Morning shifts typically started at 10:30 a.m. and ended at approximately 5:00 p.m. Dinner shifts typically started between 4:45 p.m. and ended between 1:30 a.m. and 1:00 a.m.

313.    Even when Defendants paid Courtemanche overtime premiums for some hours she worked in excess of forty per workweek, these premiums were not calculated at 1.5 times the full minimum wage rate.

314.    Defendants did not keep accurate records of wages or tips earned, or of hours worked by Courtemanche.

315.    Defendants failed to furnish Courtemanche with accurate statements of wages, hours worked, rates paid, gross wages, and the claimed tip allowance.

**Eury Espinal**

316.    Defendants did not pay Espinal proper wages for all of the time that he was suffered or permitted to work each workweek.

317.    Throughout the duration of his employment at T.G.I. Friday's, Espinal received paychecks from Defendants that did not properly record or compensate him for all the hours that he worked.

318.    Defendants paid Espinal at the Massachusetts tipped minimum wage rate when he should have been paid at the full minimum wage rate.

319.    Defendants did not provide Espinal with notification of the tipped minimum wage or tip credit provisions of the FLSA or the MA Wage Laws, or their intent to apply a tip credit to his wages.

320.    Defendants unlawfully required Espinal to share tips with silverware rollers and/or expeditors, employees in non-wait staff positions that are not entitled to share tips under the FLSA and/or the MA Wage Laws.

321.    Defendants required Espinal to perform non-tip producing "side work" including, but not limited to, setting up and breaking down the expediter's line, cutting lemons and limes, wiping down booths and chairs, dusting lids, sweeping the dining area, cleaning the bathrooms,

setting up and breaking down the soda machine and coffee machine, restocking plates, cups, and to-go containers, cleaning windows, rolling silverware, and taking out the trash.

322.    As a result of this practice, there were days where Espinal spent in excess of 20% of his day engaged in non-tipped tasks.

323.    Although Espinal should have been paid the full minimum wage, Defendants paid him an hourly rate that fell below the minimum wage.

324.    Defendants frequently required Espinal to perform work off-the-clock without compensation.

325.    For instance, Defendants often instructed Espinal to punch into the time clock when he started to serve his first table, rather than when he arrived and began to work. Defendants compensated Espinal for only the time that he was punched in.

326.    Defendants often punched out or requested that Espinal punch out when he finished serving tables, but required him to continue working, performing "side work," off-the-clock.

327.    Defendants suffered or permitted Espinal to work more than forty hours per week, including weeks during which he was not paid at all for some of his time.

328.    As Espinal typically worked four to six shifts per week, some of the above-mentioned off-the-clock work was in excess of forty hours per week.

329.    Some weeks, Espinal worked between forty and forty-five hours per week without being paid proper overtime compensation.

330.    During his employment, Espinal generally worked the following scheduled hours unless he missed time for vacation, sick days, or holidays:

- 4 to 6 shifts per week.  Morning shifts typically started at 10:30 a.m. and ended at approximately 5:00 p.m.  Dinner shifts typically started between 4:45 p.m. and ended between 1:30 a.m. and 1:00 a.m.

331.    Even when Defendants paid Espinal overtime premiums for some hours he worked in excess of forty per workweek, these premiums were not calculated at 1.5 times the full minimum wage rate.

332.    Defendants did not keep accurate records of wages or tips earned, or of hours worked by Espinal.

333.    Defendants failed to furnish Espinal with accurate statements of wages, hours worked, rates paid, gross wages, and the claimed tip allowance.

**Jose Fernandez**

334.    Defendants did not pay Fernandez proper wages for all of the time that he was suffered or permitted to work each workweek.

335.    Throughout the duration of his employment at T.G.I. Friday's, Fernandez received paychecks from Defendants that did not properly record or compensate him for all the hours that he worked.

336.    Defendants paid Fernandez at the New Jersey tipped minimum wage rate when he should have been paid at the full minimum wage rate.

337.    Defendants did not provide Fernandez with notification of the tipped minimum wage or tip credit provisions of the FLSA or the NJWL, or their intent to apply a tip credit to his wages.

338.    Defendants unlawfully required Fernandez to share tips with silverware rollers and/or expeditors, employees in non-wait staff positions that are not entitled to share tips under the FLSA and/or the NJWL.

339.    Defendants required Fernandez to perform non-tip producing "side work" including, but not limited to, setting up and breaking down the expediter's line, cutting lemons and limes, wiping down booths and chairs, dusting lids, sweeping the dining area, cleaning the bathrooms, setting up and breaking down the soda machine and coffee machine, restocking plates, cups, and to-go containers, cleaning windows, rolling silverware, and taking out the trash.

340.    As a result of this practice, there were days where NJWL spent in excess of 20% of his day engaged in non-tipped tasks.

341.    Although Fernandez should have been paid the full minimum wage, Defendants paid him an hourly rate that fell below the minimum wage.

342.    Defendants frequently required Fernandez to perform work off-the-clock without compensation.

343.    For instance, Defendants often instructed Fernandez to punch into the time clock when he started to serve his first table, rather than when he arrived and began to work. Defendants compensated Fernandez for only the time that he was punched in.

344.    Defendants often punched out or requested that Fernandez punch out when he finished serving tables, but required him to continue working, performing "side work," off-the-clock.

345.    Defendants suffered or permitted Fernandez to work more than forty hours per week, including weeks during which he was not paid at all for some of his time.

346.    As Fernandez typically worked three to five shifts per week, some of the above-mentioned off-the-clock work was in excess of forty hours per week.

347.    Some weeks, Fernandez worked between forty and forty-five hours per week without being paid proper overtime compensation.

348.    During his employment, Fernandez generally worked the following scheduled hours unless he missed time for vacation, sick days, or holidays:

- 3 to 5 shifts per week.  Morning shifts typically started at 10:15 a.m. and ended between 3:45 p.m. and 4:45 p.m.  Dinner shifts typically started between 3:45 p.m. and 4:45 p.m. and ended between 3:00 a.m. and 3:30 a.m.

349.    Even when Defendants paid Fernandez overtime premiums for some hours he worked in excess of forty per workweek, these premiums were not calculated at 1.5 times the full minimum wage rate.

350.    Defendants did not keep accurate records of wages or tips earned, or of hours worked by Fernandez.

351.    Defendants failed to furnish Fernandez with accurate statements of wages, hours worked, rates paid, gross wages, and the claimed tip allowance.

### FIRST CAUSE OF ACTION
**Fair Labor Standards Act – Minimum Wages**
**(Brought on behalf of Plaintiffs and the FLSA Collective)**

352.    Plaintiffs, on behalf of themselves and the FLSA Collective Members, reallege and incorporate by reference all allegations in all preceding paragraphs.

353.    Defendants have engaged in a widespread pattern, policy, and practice of violating the FLSA, as detailed in this Amended Class Action Complaint.

354.    At all relevant times, each of the Defendants has been, and continues to be, an employer engaged in interstate commerce and/or in the production of goods for commerce, within the meaning of FLSA, 29 U.S.C. § 203.  At all relevant times, each Defendant has employed "employee[s]," including Plaintiffs and the FLSA Collective Members.

355.    Defendants were required to pay directly to Plaintiffs and the FLSA Collective Members the applicable New York State minimum wage rate for all hours worked.

356.    Defendants failed to pay Plaintiffs and the FLSA Collective Members the minimum wages to which they are entitled under the FLSA.

357.    Defendants were not eligible to avail themselves of the federal tipped minimum wage rate under the FLSA, 29 U.S.C. §§ 201 *et seq.*, because Defendants failed to inform Plaintiffs and FLSA Collective Members of the provisions of subsection 203(m) of the FLSA, and distributed a portion of their tips to workers who do not "customarily and regularly" receive tips.

358.    Defendants also required Plaintiffs and the FLSA Collective Members to perform a substantial amount of non-tipped "side work" in excess of twenty percent of their work time. During these periods, Defendants compensated Plaintiffs and the FLSA Collective Members at the tipped minimum wage rate rather than at the full hourly minimum wage rate as required by 29 U.S.C. §§ 201 *et seq.*

359.    Defendants' unlawful conduct, as described in this Amended Class Action Complaint, has been willful and intentional.   Defendants were aware or should have been aware that the practices described in this Amended Class Action Complaint were unlawful.  Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiffs and the FLSA Collective Members.

360.    Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. §§ 201 *et seq.*

361.    As a result of Defendants' willful violations of the FLSA, Plaintiffs and the FLSA Collective Members have suffered damages by being denied minimum wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts,

liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq.*

## SECOND CAUSE OF ACTION
### Fair Labor Standards Act – Overtime Wages
### (Brought on behalf of Plaintiffs and the FLSA Collective)

362.    Plaintiffs, on behalf of themselves and the FLSA Collective Members, reallege and incorporate by reference all allegations in all preceding paragraphs.

363.    The overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq.,* and the supporting federal regulations, apply to Defendants and protect Plaintiffs and the FLSA Collective Members.

364.    Plaintiffs and the FLSA Collective Members worked in excess of forty hours during some workweeks in the relevant period.

365.    Defendants willfully failed to pay Plaintiffs and FLSA Collective Members one-and-one-half times the full minimum wage for all work in excess of forty hours per workweek. Defendants' unlawful conduct, as described in this Amended Class Action Complaint, has been willful and intentional.  Defendants were aware or should have been aware that the practices described in this Amended Class Action Complaint were unlawful.  Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiffs and the FLSA Collective Members.

366.    Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. §§ 201 *et seq.*

367.    As a result of Defendants' violations of the FLSA, Plaintiffs and the FLSA Collective Members have been deprived of overtime compensation in amounts to be determined

at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq.*

**THIRD CAUSE OF ACTION**
New York Labor Law – Minimum Wage
**(Brought on behalf of the New York Plaintiffs and the NY Rule 23 Class)**

368.    The New York Plaintiffs, on behalf of themselves and the NY Rule 23 Class Members, reallege and incorporate by reference all allegations in all preceding paragraphs.

369.    Defendants have engaged in a widespread pattern, policy, and practice of violating the NYLL, as detailed in this Amended Class Action Complaint.

370.    At all times relevant, Plaintiffs and the NY Rule 23 Class Members have been employees of Defendants, and Defendants have been employers of the New York Plaintiffs and the NY Rule 23 Class Members within the meaning of the NYLL §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

371.    At all times relevant, the New York Plaintiffs and the NY Rule 23 Class Members have been covered by the NYLL.

372.    The wage provisions of Article 19 of the NYLL and the supporting New York State Department of Labor Regulations apply to Defendants, and protect the New York Plaintiffs and the NY Rule 23 Class Members.

373.    Defendants failed to pay the New York Plaintiffs and the NY Rule 23 Class Members the minimum hourly wages to which they are entitled under the NYLL and the supporting New York State Department of Labor Regulations.

374.    Defendants required the New York Plaintiffs and the NY Rule 23 Class Members to perform a substantial amount of non-tipped "side work" in excess of two hours or more, or twenty percent of their work time.  During these periods, the New York Plaintiffs and the NY

Rule 23 Class Members were engaged in a non-tipped occupation, yet they were compensated by Defendants at the tipped minimum wage or lower rate, rather than the full hourly minimum wage rate as required by the NYLL and the supporting New York State Department of Labor Regulations.

375.     Defendants were required to pay the New York Plaintiffs and the NY Rule 23 Class Members the full minimum wage at a rate of; (a) $7.15 per hour for all hours worked from January 1, 2007 through July 23, 2009; (b) $7.25 per hour for all hours worked from July 24, 2009 through the December 30, 2013; and (c) $8.00 per hour for all hours worked from December 31, 2013 to the present  under the NYLL §§ 650 *et seq.* and the supporting New York State Department of Labor Regulations.

376.     Through their knowing or intentional failure to pay minimum hourly wages to the New York Plaintiffs and the NY Rule 23 Class Members, Defendants have willfully violated the NYLL,  Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

377.     Due to Defendants' willful violations of the NYLL, the New York Plaintiffs and NY Rule 23 Class Members are entitled to recover from Defendants their unpaid minimum wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

## FOURTH CAUSE OF ACTION
### New York Labor Law – Unpaid Overtime
### (Brought on behalf of the New York Plaintiffs and the NY Rule 23 Class)

378.     The New York Plaintiffs, on behalf of themselves and the NY Rule 23 Class Members, reallege and incorporate by reference all allegations in all preceding paragraphs.

379.     Defendants failed to pay the New York Plaintiffs and the NY Rule 23 Class Members the proper overtime wages to which they are entitled under the NYLL and the supporting New York State Department of Labor Regulations.

380.     Defendants failed to pay the New York Plaintiffs and the NY Rule 23 Class Members one-and-one-half times the full minimum wage for all work in excess of forty hours per workweek.

381.     Through their knowing or intentional failure to pay the New York Plaintiffs and the NY Rule 23 Class Members overtime wages for hours worked in excess of forty hours per workweek, Defendants have willfully violated the NYLL, Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

382.     Due to Defendants' willful violations of the NYLL, the New York Plaintiffs and the NY Rule 23 Class Members are entitled to recover from Defendants their unpaid overtime wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

## FIFTH CAUSE OF ACTION
### New York Labor Law – Spread-of-Hours Pay
**(Brought on behalf of the New York Plaintiffs and the NY Rule 23 Class)**

383.     The New York Plaintiffs, on behalf of themselves and the NY Rule 23 Class Members, reallege and incorporate by reference all allegations in all preceding paragraphs.

384.     At times, the New York Plaintiffs and the NY Rule 23 Class Members worked more than ten hours in a workday.

385.     Defendants willfully failed to compensate the New York Plaintiffs and the NY Rule 23 Class Members one hour's pay at the basic New York minimum hourly wage rate on

days in which the length of their workday was more than ten hours, as required by New York law.

386.    Through their knowing or intentional failure to pay the New York Plaintiffs and the NY Rule 23 Class Members spread-of-hours pay, Defendants have willfully violated the NYLL, Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

387.    Due to Defendants' willful violations of the NYLL, the New York Plaintiffs and the NY Rule 23 Class Members are entitled to recover from Defendants their unpaid spread-of-hours wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

### SIXTH CAUSE OF ACTION
New York Labor Law –Tip Misappropriation
**(Brought on behalf of the New York Plaintiffs and the NY Rule 23 Class Members)**

388.    The New York Plaintiffs, on behalf of themselves and the NY Rule 23 Class Members, reallege and incorporate by reference all allegations in all preceding paragraphs.

389.    Defendants unlawfully demanded or accepted, directly or indirectly, part of the gratuities received by the New York Plaintiffs and the NY Rule 23 Class Members in violation of NYLL, Article 6, § 196-d, and the supporting New York State Department of Labor Regulations.

390.    Defendants unlawfully retained part of the gratuities earned by the New York Plaintiffs and the NY Rule 23 Class Members in violation of NYLL, Article 6, § 196-d, and the supporting New York State Department of Labor Regulations.

391.    Defendants required the New York Plaintiffs and the NY Rule 23 Class Members to share a portion of the gratuities they received with employees other than waiters, servers,

bussers, or similar employees, in violation of NYLL, Article 6 § 196-d, and the supporting New York State Department of Labor Regulations.

392.    By Defendants' knowing or intentional demand for, acceptance of, and/or retention of a portion of the gratuities received by the New York Plaintiffs and the NY Rule 23 Class Members, Defendants have willfully violated the NYLL, Article 6, § 196-d, and the supporting New York State Department of Labor Regulations.

393.    Due to Defendants' willful violations of the NYLL, the New York Plaintiffs and the NY Rule 23 Class Members are entitled to recover from Defendants their unpaid gratuities, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

**SEVENTH CAUSE OF ACTION**
**New York Labor Law – Uniform Violations**
**(Brought on behalf of the New York Plaintiffs and the NY Rule 23 Class)**

394.    The New York Plaintiffs, on behalf of themselves and the NY Rule 23 Class Members, reallege and incorporate by reference all allegations in all preceding paragraphs.

395.    Defendants required the New York Plaintiffs and the NY Rule 23 Class Members to wear a uniform consisting of shirt with the T.G.I. Friday's logo, black slacks, black shoes, and black socks.

396.    Defendants failed to launder and/or maintain the required uniforms for the New York Plaintiffs and the NY Rule 23 Class Members, and failed to pay them the required weekly amount in addition to the required minimum wage.

397.    By failing to pay the New York Plaintiffs and the NY Rule 23 Class Members for the maintenance of required uniforms, Defendants have willfully violated the NYLL, and the supporting New York State Department of Labor Regulations.

398.    Due to Defendants' willful violations of the NYLL, the New York Plaintiffs and the NY Rule 23 Class Members are entitled to recover from Defendants the costs of maintaining their uniforms, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

**EIGHTH CAUSE OF ACTION**
**New York Labor Law – Unlawful Deductions From Wages**
**(Brought on behalf of the New York Plaintiffs and the NY Rule 23 Class)**

399.    The New York Plaintiffs, on behalf of themselves and the NY Rule 23 Class Members, reallege and incorporate by reference all allegations in all preceding paragraphs.

400.    Defendants made unlawful deductions from the wages of the New York Plaintiffs and the NY Rule 23 Class Members.  These deductions included, but were not limited to, customer walkouts.

401.    The deductions made from the wages of the New York Plaintiffs and the NY Rule 23 Class Members were not authorized or required by law.

402.    The deductions made from the wages of the New York Plaintiffs and the NY Rule 23 Class Members were not expressly authorized in writing by the New York Plaintiffs and the NY Rule 23 Class Members, and were not for the benefit of the New York Plaintiffs and the NY Rule 23 Class Members.

403.    Through their knowing or intentional efforts to permit unauthorized deductions from the wages of the New York Plaintiffs and the NY Rule 23 Class Members, Defendants have willfully violated NYLL, Article 6, §§ 190 *et seq.*, and the supporting New York State Department of Labor Regulations.

404.    Due to Defendants' willful violations of the NYLL, the New York Plaintiffs and NY Rule 23 Class Members are entitled to recover from Defendants the amounts of any unlawful

deductions, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

### NINTH CAUSE OF ACTION
**New York Labor Law – Failure to Provide Annual Wage Notices**
**(Brought on behalf of the New York Plaintiffs and the NY Rule 23 Class)**

405.    The New York Plaintiffs, on behalf of themselves and the NY Rule 23 Class Members, reallege and incorporate by reference all allegations in all preceding paragraphs.

406.    Defendants have willfully failed to supply the New York Plaintiffs and the NY Rule 23 Class Members with wage notices, as required by NYLL, Article 6, § 195(1), in English or in the language identified as their primary language, containing the New York Plaintiffs' and the NY Rule 23 Class Members' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the regular pay day designated by the employer in accordance with NYLL, Article 6, § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

407.    Through their knowing or intentional failure to provide  the New York Plaintiffs and the NY Rule 23 Class Members with the wage notices required by the NYLL, Defendants have willfully violated NYLL, Article 6, §§ 190 *et seq.*, and the supporting New York State Department of Labor Regulations.

408.    Due to Defendants' willful violations of NYLL, Article 6, § 195(1), the New York Plaintiffs and the NY Rule 23 Class Members are entitled to statutory penalties of fifty dollars for each workweek that Defendants failed to provide them with wage notices, or a total of

twenty-five hundred dollars, reasonable attorneys' fees, costs, and injunctive and declaratory

relief, as provided for by NYLL, Article 6, § 198(1-b).

### TENTH CAUSE OF ACTION
**New York Labor Law – Failure to Provide Accurate Wage Statements**
**(Brought on behalf of the New York Plaintiffs and the NY Rule 23 Class)**

409.    The New York Plaintiffs, on behalf of themselves and the NY Rule 23 Class

Members, reallege and incorporate by reference all allegations in all preceding paragraphs.

410.    Defendants have willfully failed to supply the New York Plaintiffs and the NY

Rule 23 Class Members with accurate statements of wages as required by NYLL, Article 6, §

195(3), containing the dates of work covered by that payment of wages; name of employee;

name of employer; address and phone number of employer; rate or rates of pay and basis thereof,

whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages;

hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours

worked, including overtime hours worked if applicable; deductions; and net wages.

411.    Through their knowing or intentional failure to provide the New York Plaintiffs and

the NY Rule 23 Class Members with the accurate wage statements required by the NYLL,

Defendants have willfully violated NYLL, Article 6, §§ 190 *et seq.*, and the supporting New York

State Department of Labor Regulations.

412.    Due to Defendants' willful violations of NYLL, Article 6, § 195(3), the New York

Plaintiffs and the NY Rule 23 Class Members are entitled to statutory penalties of one hundred

dollars for each workweek that Defendants failed to provide them with accurate wage statements,

or a total of twenty-five hundred dollars, reasonable attorneys' fees, costs, and injunctive and

declaratory relief, as provided for by NYLL, Article 6, § 198(1-d).

### ELEVENTH CAUSE OF ACTION
**Massachusetts Wage Laws – Minimum Wage**
**(Brought on behalf of the Massachusetts Plaintiffs and the MA Rule 23 Class)**

413.    The Massachusetts Plaintiffs on behalf of themselves and the MA Rule 23 Class Members, realleges and incorporates by reference all allegations in all preceding paragraphs.

414.    Defendants have engaged in a widespread pattern, policy, and practice of violating the MA Wage Laws, as detailed in this Amended Class Action Complaint.

415.    At all times relevant, the Massachusetts Plaintiffs and the MA Rule 23 Class Members have been employees of Defendants, and Defendants have been employers of the Massachusetts Plaintiffs and the Rule 23 Class Members within the meaning of the MA Wage Laws and the supporting Massachusetts Department of Labor Regulations.

416.    At all times relevant, the Massachusetts Plaintiffs and the MA Rule 23 Class Members have been covered by the MA Wage Laws.

417.    The minimum wage provisions of Chapter 151 of the Mass. General Laws and the supporting Massachusetts State Department of Labor Regulations apply to Defendants and protect the Massachusetts Plaintiffs and the MA Rule 23 Class Members.

418.    Defendants failed to pay the Massachusetts Plaintiffs and the MA Rule 23 Class Members the minimum hourly wages at the appropriate rate and for all hours worked to which they are entitled under the MA Wage Laws and the supporting Massachusetts State Department of Labor Regulations.

419.    Defendants failed to notify the Massachusetts Plaintiffs and the MA Rule 23 Class in writing of the tip credit minimum wage.

420.     Defendants made deductions from the Massachusetts Plaintiffs' and the MA Rule 23 Class Members' wages for uniforms that resulted in the Massachusetts Plaintiffs being paid less than the minimum wage. These deductions appear on the Massachusetts Plaintiffs' paystubs.

421.     Through their knowing and/or intentional failure to pay minimum hourly wages to the Massachusetts Plaintiffs and the MA Rule 23 Class Members, Defendants have violated the MA Wage Laws and the supporting Massachusetts State Department of Labor Regulations.

422.     Due to Defendants' violations of the MA Wage Laws, the Massachusetts Plaintiffs and MA Rule 23 Class Members are entitled to recover from Defendants their unpaid minimum wages, treble damages as provided for by the MA Wage Laws, and reasonable attorneys' fees and costs of the action.

### TWELFTH CAUSE OF ACTION
**Massachusetts Wage Laws –Tip Misappropriation**
**(Brought on behalf of the Massachusetts Plaintiffs and the MA Rule 23 Class Members)**

423.     The Massachusetts Plaintiffs, on behalf of herself and the MA Rule 23 Class Members, realleges and incorporates by reference all allegations in all preceding paragraphs.

424.     At all times relevant, the Massachusetts Plaintiffs and the MA Rule 23 Class Members have been service and/or wait staff employees within the meaning of Mass. Gen. L. c. 149 § 152A *et seq.*, and the supporting Massachusetts Department of Labor Regulations.

425.     At all times relevant, each Defendant has been an employer within the meaning of the Mass. Gen. L. c. 149 § 152A *et seq.*, and the supporting Massachusetts Department of Labor Regulations.

426.     The wage payment provisions of Chapter 149 of the Mass. General Laws and the supporting Massachusetts Department of Labor Regulations apply to Defendants and protect the Massachusetts Plaintiffs and the MA Rule 23 Class Members.

427.    Defendants unlawfully demanded or accepted, directly or indirectly, part of the gratuities received by the Massachusetts Plaintiffs and the MA Rule 23 Class Members in violation of Mass. Gen. L. c. 149 § 152A *et seq.*, and the supporting Massachusetts Department of Labor Regulations.

428.    Defendants unlawfully retained part of the gratuities earned by the Massachusetts Plaintiffs and the Rule 23 Class Members in violation of Mass. Gen. L. c. 149 § 152A *et seq.*, and the supporting Massachusetts Department of Labor Regulations.

429.    Defendants required the Massachusetts Plaintiffs and the MA Rule 23 Class Members to share part of the gratuities they received with non-wait staff employees other than waiters, servers, bussers, or similar employees, in violation of Mass. Gen. L. c. 149 § 152A *et seq.*, and the supporting Massachusetts Department of Labor Regulations.

430.    By Defendants' knowing and/or intentional demand for, acceptance of, and/or retention of part of the gratuities received by the Massachusetts Plaintiffs and the MA Rule 23 Class Members, Defendants have violated the Mass. Gen. L. c. 149 § 152A *et seq.*, and the supporting Massachusetts Department of Labor Regulations.

431.    Due to Defendants' violations of the MA Wage Laws, the Massachusetts Plaintiffs and the MA Rule 23 Class Members are entitled to recover from Defendants their unpaid gratuities, treble damages as provided for by the MA Wage Laws, and reasonable attorneys' fees, costs.

### THIRTEENTH CAUSE OF ACTION
**New Jersey Wage and Hour Law – Minimum Wage**
**(Brought on behalf of Plaintiff Jose Fernandez and the NJ Rule 23 Class)**

432.    Plaintiff Fernandez, on behalf of himself and the NJ Rule 23 Class Members, reallege and incorporate by reference all allegations in all preceding paragraphs.

433.    Defendants have engaged in a widespread pattern, policy, and practice of violating the NJWL, as detailed in this Amended Class Action Complaint.

434.    At all times relevant, Plaintiff Fernandez and the NJ Rule 23 Class Members have been employees of Defendants, and Defendants have been employers of Plaintiff Fernandez and the NJ Rule 23 Class Members within the meaning of the N.J.S.A § 34:11-56a *et seq.*, and the supporting New Jersey State Department of Labor Regulations.

435.    At all times relevant, Plaintiff Fernandez and the NJ Rule 23 Class Members have been covered by the NJWL.

436.    The minimum wage provisions of N.J.S.A § 34:11-56a *et seq.* and the supporting New Jersey State Department of Labor Regulations apply to Defendants, and protect Plaintiff Fernandez and the NJ Rule 23 Class Members.

437.    Defendants failed to pay Plaintiff Fernandez and the NJ Rule 23 Class Members the minimum hourly wages to which they are entitled under the NJWL and the supporting New Jersey State Department of Labor Regulations.

438.    Defendants required Plaintiff Fernandez and the NJ Rule 23 Class Members to perform a substantial amount of non-tipped "side work" in excess of two hours or more, or twenty percent of their work time.  During these periods, Plaintiff Fernandez and the NJ Rule 23 Class Members were engaged in a non-tipped occupation, yet they were compensated by Defendants at the tipped minimum wage or lower rate, rather than the full hourly minimum wage rate as required by the NJWL and the supporting New Jersey State Department of Labor Regulations.

439.    Defendants were required to pay Plaintiff Fernandez and the NY Rule 23 Class Members the full minimum wage at a rate of; (a) $7.25 per hour for all hours worked from

January 1, 2010 through December 31, 2013; (b) $8.25 per hour for all hours worked from January 1, 2014 through the December 31, 2014; (c) $8.38 per hour for all hours worked from January 1, 2015 to the present  under the N.J.S.A § 34:11-56a *et seq.* and the supporting New Jerseu State Department of Labor Regulations.

440.    Through their knowing or intentional failure to pay minimum hourly wages to Plaintiff Fernandez and the NJ Rule 23 Class Members, Defendants have willfully violated the N.J.S.A § 34:11-56a *et seq.*, and the supporting New Jersey State Department of Labor Regulations.

441.    Due to Defendants' willful violations of the NJWL, Plaintiff Fernandez and NJ Rule 23 Class Members are entitled to recover from Defendants their unpaid minimum wages, liquidated damages as provided for by the NJWL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

### FOURTEENTH CAUSE OF ACTION
**New Jersey Labor Law – Unpaid Overtime**
**(Brought on behalf of Plaintiff Fernandez and the NJY Rule 23 Class)**

442.    Plaintiff Fernandez, on behalf of himself and the NJ Rule 23 Class Members, reallege and incorporate by reference all allegations in all preceding paragraphs.

443.    Defendants failed to pay Plaintiff Fernandez and the NJ Rule 23 Class Members the proper overtime wages to which they are entitled under the NJWL and the supporting New Jersey State Department of Labor Regulations.

444.    Defendants failed to pay Plaintiff Fernandez and the NJ Rule 23 Class Members one-and-one-half times the full minimum wage for all work in excess of forty hours per workweek.

445.    Through their knowing or intentional failure to pay Plaintiff Fernandez and the NJ Rule 23 Class Members overtime wages for hours worked in excess of forty hours per workweek, Defendants have willfully violated the N.J.S.A § 34:11-56a *et seq.*, and the supporting New Jersey State Department of Labor Regulations.

446.    Due to Defendants' willful violations of the NJWL, Plaintiff Fernandez and the NJ Rule 23 Class Members are entitled to recover from Defendants their unpaid overtime wages, liquidated damages as provided for by the NJWL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually, and on behalf of all other similarly situated persons, respectfully requests that this Court grant the following relief:

A.    Designation of this action as a collective action on behalf of the FLSA Collective Members (asserting FLSA claims and state claims) and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b);

B.    Unpaid minimum wages, overtime pay, and an additional and equal amount as liquidated damages pursuant to the FLSA and the supporting United States Department of Labor Regulations;

C.    Certification of this case as a class action pursuant to Rule 23;

D.    Designation of Plaintiffs as representatives of the Rule 23 Classes and counsel of record as Class Counsel;

E.    Issuance of a declaratory judgment that the practices complained of in this Amended Class Action Complaint are unlawful under the NYLL, Article 6, §§ 190 *et seq.*,

NYLL, Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations;

F.    Issuance of a declaratory judgment that the practices complained of in this Amended Class Action Complaint are unlawful under the Mass. Gen. L. c. 149 §§ 148 and 152A and Mass. Gen. L. c. 151 §§ 1, 1A and 7;

G.    Issuance of a declaratory judgment that the practices complained of in this Amended Class Action Complaint are unlawful under the N.J.S.A § 34:11-56a et seq. and the supporting New Jersey Department of Labor Regulations and Workforce Development Regulations;

H.    Unpaid minimum wages, overtime pay, spread-of-hours pay, misappropriated tips, uniform related expenses, unlawful deductions, and other unpaid wages, and liquidated damages permitted by law pursuant to the NYLL and the supporting New York State Department of Labor Regulations;

I.    Unpaid minimum wages, misappropriated tips and other unpaid wages, and statutory trebling of all damages permitted by law pursuant to the MA Wage Laws and the supporting Massachusetts Department of Labor Regulations;

J.    Unpaid minimum wages, overtime pay, and other unpaid wages, and liquidated damages pursuant to the NJWL and the supporting New Jersey Department of Labor and Workforce Development Regulations;

K.    Statutory penalties of fifty dollars for each workweek that Defendants failed to provide the New York Plaintiffs and the NY Rule 23 Class Members with a wage notice, or a total of twenty-five hundred dollars, as provided for by NYLL, Article 6 § 198;

L.    Statutory penalties of one hundred dollars for each workweek that Defendants

failed to provide the New York Plaintiffs and the NY Rule 23 Class Members with accurate

wage statements, or a total of twenty-five hundred dollars, as provided for by NYLL, Article 6 §

198;

      M.     Prejudgment and post-judgment interest;

      N.     An injunction requiring Defendants to pay all statutorily required wages and cease

the unlawful activity described herein pursuant to the NYLL, MA Wage Laws, and NJWL;

      O.     Reasonable attorneys' fees and costs of the action;

      P.     Reasonable incentive awards for each named Plaintiff to compensate them for the

time they spent attempting to recover wages for Class and Collective Members and for the risks

they took in doing so; and

      Q.     Such other relief as this Court shall deem just and proper.

Dated:     New York, New York
            January 30, 2015

                             Respectfully submitted,

                             /s/ Justin M. Swartz
                             Justin M. Swartz

                           **OUTTEN & GOLDEN LLP**
                             Justin M. Swartz
                             Sally J. Abrahamson
                             3 Park Avenue, 29th Floor
                             New York, New York 10016
                             Telephone: (212) 245-1000

                           **FITAPELLI & SCHAFFER, LLP**
                             Joseph A. Fitapelli
                             Brian S. Schaffer
                             Frank J. Mazzaferro
                             475 Park Avenue South, 12th Floor
                             New York, NY 10016
                             Telephone: (212) 300-0375

                           *Attorneys for Plaintiffs and*
                           *the Putative Class*