# SEYFARTH SHAW

Seyfarth Shaw LLP
620 Eighth Avenue
New York, New York 10018
(212) 218-5500
fax (212) 218-5526
www.seyfarth.com

Writer's direct phone
(212) 218-3360

Writer's e-mail
gmaatman@seyfarth.com

March 28, 2016

**VIA ECF FILING**

The Honorable Analisa Torres
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

    Re:    *Flood, et al. v. Carlson Restaurants, Inc., et al.*
            Case No. 14-cv-2740 (S.D.N.Y.)

Dear Judge Torres:

    Defendants Carlson Restaurants, Inc., Carlson Restaurants Worldwide, Inc., and TGI Friday's Inc. ("Defendants") submit this letter in response to Plaintiffs' letter dated March 21, 2016 (Doc. No. 353), wherein Plaintiffs ask the Court to permit the late filing of 57 opt-in consent forms ("Late Opt-Ins.").[1] Defendants oppose Plaintiffs' request, and object to the proposed submission. Good cause does not exist for this delay, and Plaintiffs' counsel have not submitted any evidence that would enable the Court to even conduct a valid good cause analysis. Accordingly, their request should be denied.

    The opt-in period in this matter initially expired on October 20, 2015. The Late Opt-Ins *missed this first filing deadline*. Over Defendants' objection, the Court extended the opt-in period by 60 days on November 3, 2015 (Doc. No. 287), and set a new second extended deadline of December 19, 2015. The Late Opt-Ins also *missed this second filing deadline*. Now, Plaintiffs' counsel asks the Court for a *third bite at the apple* on behalf of these the Late Opt-Ins, despite their having already missed two separate filing deadlines, and without any evidence in support of 57 separate excuses for the delay.

    In similar circumstances, courts have taken care to ensure that plaintiffs' "well-worn efficiency argument[s]" do not become "*carte blanche* to file additional consent forms." *See Morangelli v. Chemed Corp.*, 275 F.R.D. 99, 122 (E.D.N.Y. 2011) (indicating that where an extension has previously been granted by the court, evidentiary standards require stricter examination); *Ruggles v. Wellpoint, Inc.*, 687 F.Supp. 2d 30, 38 (N.D.N.Y. 2009) (holding that where an extension for opt-ins has already been granted, in fairness to defendants the court will look unfavorably upon additional late opt-in requests).

---

[1]     We note that Plaintiffs' letter motion once again disregards Your Honor's Individual Rules of Practices. Rule III(A) requires that prior to filing a motion, the moving party must submit a letter to the court seeking a pre-motion conference, and set forth the basis of the anticipated motion. Plaintiffs' counsel did not do this, and simply filed a letter motion. While certain exceptions to this rule exist, Plaintiffs' request does not fall under any of those categories of motions that do not require a pre-motion conference letter.



Plaintiffs' request is deficient on several other fronts.  Plaintiffs' counsel did not submit any evidence in support of their motion, which prevents the Court from undertaking a legitimate good cause analysis.  Even accepting the Late Opt-Ins' "reasonable excuses" as true for the purposes of this motion, their purported reasons for delay still do not constitute good cause that would permit them to file untimely consent forms.  And while Plaintiffs' counsel claims that many of the late consents were returned "shortly after the deadline," nearly half were submitted over a *month* past the already extended second deadline.  (Doc. No. 353, page 4, Exhibit C.)  Finally, Defendants will be prejudiced by having an additional 57 opt-ins join the action, especially considering that Plaintiffs delayed filing this motion by over a month, during which time they received additional untimely consent forms.

## I.   Good Cause Does Not Exist For The Filing Of Untimely Consent Forms

### A.  The Late Opt-Ins Had Four Months To Timely Submit Their Consent Forms

In the parties' February 9, 2015 stipulation regarding the opt-in procedure, Plaintiffs agreed that opt-ins would have 60 days to submit their consent form to counsel.  (Doc. No. 136, ¶¶ 5-8.)  Plaintiffs also agreed that, in the event of an undeliverable notice, the Claims Administrator would run a skip trace and re-mail notice, and would, within five business days, send a duplicate notice and consent form to persons whose first notice and consent form was returned as undeliverable.  (*Id.* ¶ 6.)

Notice was issued on August 21, 2015, and the opt-in period was set to expire on October 20, 2015.  On October 8, 2015, Plaintiffs requested that the opt-in period be extended 45 days, from October 20, 2015 to December 4, 2015.  (Doc. No. 258.)  Over Defendants' objection (Doc. No. 267), the Court granted Plaintiffs' request and extended the opt-in period for a total of 60-days, with a deadline of December 19, 2015.  (Doc. No. 287.)  All applicable deadlines have long since passed.

### B.  Plaintiffs' Failure To Submit Any Evidence Is Fatal To Their Request

Plaintiffs' counsel did not include any affidavits from Late Opt-Ins attesting to their excuses for returning the consent forms late.  For this reason alone the Court should deny Plaintiffs' request.  *See, e.g.*, *Ayers v. SGS Control Servs.,* 2007 U.S. Dist. LEXIS 76539, *14 (S.D.N.Y. Oct. 9, 2007) (declining to find good cause without affidavits); *Morangelli*, 275 F.R.D. at 122 (requesting affidavits from late filers to "substantiate…counsel's proffer, explaining the reasons for their lateness.").  This is especially true in this situation given the numerous and varied excuses provided by the Late Opt-Ins.  Plaintiffs' threadbare motion simply provides no evidence that would allow the Court to evaluate the veracity of any Late Opt-Ins' purported justification for delay, or determine whether good cause exists for their delay.  *See Moya v. Pilgrim's Pride Corp.*, No. 06-1249, 2006 U.S. Dist. LEXIS 87150, *9-10 (E.D. Pa. Nov. 30, 2006) (finding that the failure to explain the reason for the untimely return of the notice precluded a finding of good cause); *Saleem v. Corporate Transp. Group, Ltd.*, 12-Civ.8450 (JMF), 2013 U.S. Dist. LEXIS 172104 (S.D.N.Y. Dec. 5, 2013) (examining seven affidavits provided by late opt-ins in order to evaluate good cause); *Ayers*, 2007 U.S. Dist. LEXIS 76539, at *14.

Additionally, the cases Plaintiffs cite to establish good cause each involved affidavits from the untimely opt-ins.  *See Coronado v. D N.W. Houston, Inc.*, H-13-2179, 2014 U.S. Dist. LEXIS 164151 (S.D. Tex. Nov. 24, 2014) (finding good cause only after reviewing declarations); *Moya* 2006 U.S. Dist. LEXIS 87150 at *7, 9-10 (analyzing letter from opt-in as evidence of good cause and refusing to find

Case 1:14-cv-02740-AT-GWG   Document 354   Filed 03/28/16   Page 3 of 5



good cause where no explanation existed for other opt-ins' delay); *Thompson v. Peak Energy Servs., USA*, 13-0266, 2014 U.S. Dist. LEXIS 24190, *4 (W.D. Pa. Feb. 26, 2014) (examining "numerous supporting affidavits and other documents" as part of the good cause analysis). Accordingly, Plaintiffs' reliance on these cases is misplaced because the primary evidence used to find good cause is not present in the instant case.

Plaintiffs' counsel also argue that the "majority" of the untimely consent forms were mailed to them "within a few weeks" of the December 19, 2015 deadline (Doc. No. 353, page 4), but their only proof of this is a one-page spreadsheet created by Plaintiffs' counsel that vaguely lists the purported excuse of each Late Opt-In. (Doc. No. 353, Exhibit C.) This is not evidence and cannot be used to manufacture good cause. *See e.g., Ayers,* 2007 U.S. Dist. LEXIS 76539, at *14 (declining to find good cause where plaintiffs' counsel submitted an affidavit because the individuals themselves failed to submit evidence demonstrating good cause for their untimely filings); *Saleem*, 2013 U.S. Dist. LEXIS at *12; *Morangelli*, 275 F.R.D. at 122. Even ignoring the insufficiency of the evidence, Plaintiffs gloss over the fact that nearly half of the Late Opt-Ins returned their consent forms over a *month* past the already extended second deadline. (Doc. No. 353, Exhibit C.)

Given Plaintiffs' failure to provide any evidence in support of their motion, the Court should reject their request out of hand and refuse to permit any of the 57 Late Opt-Ins from filing their untimely consent forms. However, even if the Court entertains their request, no good cause exists for their inclusion in the collective action for the many reasons explained below.

        C.        The Excuses Proffered By the Late Opt-Ins Do Not Establish Good Cause

Plaintiffs identify several categories of excuses that purport to establish good cause for the filing of the Late-Opt Ins' consents. None is sufficient. Defendants address them in turn.

First, Plaintiffs identify 23 Late Opt-Ins who purportedly received their notice late because "it was sent to the wrong address and had to be forwarded to their current address." (Doc. No. 353, page 3.) However, Plaintiffs' motion fails to explain how the mail forwarding took over four months, or establish when these notices were actually received. *Moya,* 2006 U.S. Dist. LEXIS at *10 (dismissing attempt to opt in as untimely where she explained that she had moved prior to the mailing of the notice because "we have no way of knowing whether the fault of the delay lies with [plaintiff], for failing to obtain the mail sent to her old address, or with the Postal Service, for failing to timely forward her mail. Without further explanation, we cannot determine whether good cause exists for the untimely return of the notice.").

Unless these notices were delivered after December 19, 2015, the Late Opt-Ins had sufficient time to return their consent. Without such evidence, however, the Court should not rely on the representation of Plaintiffs' counsel as proof that each of these 23 Late Opt-Ins received their notice after the deadline, and as such, good cause does not exist to allow the untimely filings.[2]

---

[2] Even if some of the Late Opt-Ins received their notice after December 19, 2015, this still does not warrant their inclusion. Plaintiffs had the benefit of a Claims Administrator working for an extra 60 days to locate as many addresses as possible, and certainly many of the opt-ins who timely joined the action between October 19, 2015 and December 19, 2015



Second, Plaintiffs identify 27 Late Opt-Ins who "did not receive their notice in a timely fashion because they were away from their home at the time of mailing, misplaced their mail, or experienced personal emergencies, such as medical or employment issues, that prevented them from receiving or reviewing their mail." (Doc. No. 353, page 3.) Defendants take issue with Plaintiffs' mischaracterization that these notices were not *received* in a timely fashion. This characterization is inaccurate, as these Late Opt-Ins *received* their notices in a timely fashion, but purported extraneous factors caused them to fail to timely *return* these consent forms.

Even ignoring the lack of evidence and relying solely on the assertions of Plaintiffs' counsel, no good cause exists. Courts have found unpersuasive the excuse that opt-ins "misplaced" the notice. *Saleem*, 2013 U.S. Dist. LEXIS at *11-12 (finding that opt-in whose wife misplaced the notice amounted to a "failure to keep track of [his] own affairs" and did not constitute good cause); *Moya*, 2006 U.S. Dist. LEXIS at *8-9 (finding no good cause where opt-in's notice "got mixed up with junk mail."). With respect to those consents that were not timely filed due to a medical emergency, Plaintiffs' failure to provide any evidence regarding when these Late Opt-Ins actually received their notice and when the medical emergency occurred should prohibit their filing. *Id.*; *Cf. Saleem*, 2013 U.S. Dist. LEXIS at *10 (allowing late consent form where opt-in's affidavit explained that he was caring for his mother during a medical emergency and filed the form as soon as her condition stabilized).

Plaintiffs also allege that a group of Late Opt-Ins did not receive their notice in a timely fashion because they were away from their home at the time of mailing. This excuse does not make sense, however, because notices were mailed in August of 2015, and Plaintiffs fail to explain why these Late Opt-Ins could not return their consent form in a timely fashion because they were away from their home for an unspecified period of time. Other Late Opt-Ins argue that emergencies related to employment issues prevented them from receiving or reviewing their mail and timely returning the consent form. Once again, however, the failure of Plaintiffs' counsel to provide any supporting evidence prevents a legitimate good cause analysis and the Court should accordingly deny these requests. *Saleem*, 2013 U.S. Dist. LEXIS at *12.

Third, Plaintiffs identify six Late-Opt Ins who received the notice but misunderstood its contents and did not mail the consent form until they re-read and received advice about the notice. Courts in this district have already found this excuse unpersuasive. *Id.* at 11 (finding no good cause where non-English speaker did not understand the notice, did not originally seek help to understand the notice, and waited several weeks to seek assistance after receiving a second notice). Plaintiffs admit in their motion that these six Late Opt-Ins, for no reason, delayed in re-reading the notice and in seeking advice, which should similarly preclude their filing of an untimely consent. And while Plaintiffs argue that these Late Opt-Ins returned the notice "as soon as any misunderstanding was cleared," they again fail to provide any evidence in support of this claim.[3]

---

did so based on the ability of the Claims Administrator to locate their address. Allowing Plaintiffs to file the Late Opt-Ins would create an indefinite opt-in period for those members of the collective whose addresses cannot be located. Presumably, whenever a consent form ultimately reached a potential opt-in, they would have the ability to join the action at that time.

[3]   Keith Wine filed a timely consent form on September 21, 2015, but "due to his misunderstandings of the case" withdrew his notice. After "[learning more] about the case" Wine now wishes to rejoin the action after the deadline. (Doc.



### II. Defendants Will Be Prejudiced By The Late Opt-Ins' Participation

The stated purpose of Plaintiffs' request to extend the initial opt-in period was to increase the opt-in return rate, which at the time was 2,753, or 6.7% of the putative class. (Doc. No. 258.) After the Court granted Plaintiffs' request, over Defendants' objection, an additional 1,844 people opted-in to the lawsuit, raising the total opt-in percentage to 11.23% of the putative class. This amounts to a 67% increase in the size of the collective action directly attributable to the extension of the opt-in period.

Plaintiffs now seek to add 57 additional opt-ins to the action. Defendants will be prejudiced by the additional discovery and costs that will arise from their inclusion, and Plaintiffs cite no law that overcomes the good cause requirement based on a "*de minimis* number of opt-ins." And as discussed *supra*, the fact that the Court has previously extended the opt-in period requires a much stricter examination of the record, and based on principles of fairness the Court should look unfavorably upon these additional late opt-in requests. *Morangelli v.* 275 F.R.D. at 122; *Ruggles,* 687 F.Supp. 2d at 38.

Finally, the unexplained delay by Plaintiffs' counsel in seeking to file the late opt-in consents prejudices Defendants. Plaintiffs' counsel emailed Defendants on February 7, 2016 seeking consent to file just 43 untimely consent forms. (Doc. No. 353, Exhibit A.) On February 12, 2016, Defendants objected to Plaintiffs' request and declined to consent. (*Id.*, Exhibit B.) Plaintiffs' counsel then did nothing for 38 days. Only on March 21, 2016 did Plaintiffs seek leave from the Court to file the late consent forms, which now had grown by 33%. The only apparent reason for this delay was to wait for additional untimely consent forms to arrive, which has the impermissible effect of unilaterally extending the opt-in period. Plaintiffs' unexplained delay in seeking to file the Late Opt-In consent forms prejudices Defendants by increasing the total number of opt-ins for no good reason. *See e.g.*, *Sweeney v. U.S. Postal Serv.*, No. CV 08–4417 (ARL), 2013 WL 5744490, *17 (E.D.N.Y. Oct. 23, 2013) (finding undue prejudice to defendants where nine consent forms were timely sent to plaintiffs' counsel's office but plaintiffs' counsel failed to file the forms with the court); *Stranky v. HealthONE of Denver, Inc.*, 2014 WL 1328585, *4 (D. Colo. Apr. 3, 2014) (holding that plaintiffs' counsel provided no reason to justify a three month delay to file 11 consent forms and that the delay "was caused either by Plaintiffs' counsel's own lack of diligence, or a lack of a good faith attempt to comply with the Court's Orders.").[4]

For the reasons stated above, Defendants request that the Court deny Plaintiffs' request to file the addition 57 untimely opt-in consent forms.

Respectfully submitted,

s/   Gerald L. Maatman, Jr.
Gerald L. Maatman, Jr.

cc:   Counsel Of Record (via ECF)

---

No. 353, page 3.) Plaintiffs fail to provide any support for Keith's purported "misunderstanding," or why he "learned more" about this case, which precludes the Court from undertaking a legitimate good cause analysis. *Saleem*, 2013 U.S. Dist. LEXIS at *12. Even accepting Plaintiffs' assertion, his "misunderstanding" does not amount to good cause. *Id.* at *11.

[4] Defendants also oppose Plaintiffs' request to toll the statute of limitations period for any of the 57 Late Opt-Ins, especially considering the unexplained delay by Plaintiffs' counsel in submitting this issue to the Court.