**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| JULIO ZORRILLA, TASHAUNA REID, MATTHEW MACKEY, JOSE FERNANDEZ, BENJAMIN KRAMER, AMANDA STEWART, AMBER SWAN, KRISTINE ZEFFIELD, SYDNI SMITH, NICHOLE MARINO, JOHN VERDIN, JANE BATEMAN and JOSEPH LOMBARD, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>CARLSON RESTAURANTS INC.,  CARLSON RESTAURANTS WORLDWIDE, INC., and T.G.I. FRIDAY'S INC.,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.:  14-CV-2740 (AT) |

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR <u>PARTIAL SUMMARY JUDGMENT</u>

Gerald L. Maatman, Jr.
Jennifer A. Riley
SEYFARTH SHAW LLP
131 S. Dearborn Street, Suite 2400
Chicago, Illinois  60603-5577
(312) 460-5000

Scott R. Rabe
Brendan Sweeney
SEYFARTH SHAW LLP
620 Eighth Avenue
New York, New York  10018-1595
(212) 218-5500

*Attorneys for Defendants*

21399126v.9

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

PROCEDURAL HISTORY................................................................................................. 5

FACTUAL BACKGROUND .............................................................................................. 8

I.      FRIDAY'S PROVIDED TIPPED EMPLOYEES NOTICE OF THEIR WAGES
        THROUGH MULTIPLE MECHANISMS................................................................ 9

        A.      Team Member Handbooks...................................................................... 10

        B.      Tip Credit And Wage Notifications ....................................................... 11

        C.      Additional Manager Training ................................................................. 16

        D.      Posted Notices........................................................................................ 17

II.     PLAINTIFFS WERE PAID AT LEAST MINIMUM WAGE AND RECEIVED
        REQUIRED NOTICES AND WAGE STATEMENTS................................................ 18

        A.      Plaintiff Reid.......................................................................................... 18

        B.      Plaintiff Mackey..................................................................................... 20

        C.      Plaintiff Zorilla....................................................................................... 21

III.    NON-PARTY PUTATIVE CLASS MEMBERS WERE PAID AT LEAST
        MINIMUM WAGE AND RECEIVED COMPLIANT NOTICES AND WAGE
        STATEMENTS........................................................................................................ 22

        A.      Non-Party Putative Class Member Pink ................................................ 22

        B.      Non-Party Putative Class Member Ellis ................................................ 23

STANDARD OF REVIEW ................................................................................................ 24

CHOICE OF LAW ............................................................................................................. 24

ARGUMENT ....................................................................................................................... 25

I.      PLAINTIFFS' MOTION SHOULD BE DENIED BECAUSE A RULING ON
        THE MERITS WOULD VIOLATE THE RULE AGAINST ONE-WAY
        INTERVENTION ................................................................................................... 25

II.     PLAINTIFFS DO NOT REPRESENT AND CANNOT PURSUE SUMMARY
        JUDGMENT ON BEHALF OF NON-PARTY PUTATIVE CLASS MEMBERS......... 28

III.    PLAINTIFFS HAVE NOT DEMONSTRATED THAT DEFENDANTS
        JOINTLY EMPLOYED PLAINTIFFS OR NON-PARTY PUTATIVE CLASS
        MEMBERS ............................................................................................... 31

IV.    PLAINTIFFS CANNOT OBTAIN SUMMARY JUDGMENT ON THEIR TWO
       CLAIMS THAT DEFENDANTS VIOLATED "TIP CREDIT NOTICE"
       REGULATIONS.......................................................................................... 33

       A.    The Undisputed Facts Demonstrate That Friday's Paid Plaintiffs All
             Wages To Which They Were Entitled Under The Law........................................ 33

       B.    Plaintiffs Have Not Invoked Any Statutory Authority For Their "Tip
             Credit Notice" Claims ...................................................................... 35

             1.    The Legislature Did Not Grant The DOL Specific Authority To
                   Condition Payment Of The Cash Wage On "Tip Credit Notice" ............. 36

             2.    Because A Regulatory Agency Cannot Create Or Extend Existing
                   Law, Plaintiffs' Interpretation Would Render The DOL's
                   Regulations Invalid ................................................................. 40

             3.    The New York Legislature Did Not Create Or Intend To Create A
                   Private Right Of Action For Failure To Provide "Tip Credit
                   Notice" ................................................................................. 45

V.     SUMMARY JUDGMENT IS NOT APPROPRIATE ON PLAINTIFFS' PRE-
       2011 TIP CREDIT NOTICE CLAIMS ........................................................... 47

       A.    Plaintiffs Cannot Assert Any Claim Of A Tip Credit Notice Violation For
             the Time Period Before July 24, 2009 ................................................. 48

       B.    Plaintiffs Cannot Assert A Tip Credit Notice Claim For The Time Period
             From July 24, 2009 Through December 31, 2010 Because The Regulation
             Did Not Require Any Such Notice ........................................................ 49

             1.    The Plain Language Of The Pre-2011 Regulation Does Not
                   Require Notice As A Prerequisite To Payment Of The Cash Wage......... 49

             2.    Plaintiffs' Citation To Federal Case Law Is Unavailing Because
                   Federal Courts Cannot Create or Expand State Common Law ............... 52

                   a.    The Court Should Not Follow The Line Of Authority
                         Stemming From *Padilla*................................................ 53

                   b.    A Ruling That Follows *Padilla* Would Expand State Law
                         Liability In Violation Of Principles Of Comity And
                         Federalism ...................................................................... 55

ii

    C.      Even If The DOL Imposed a Notice Pre-Requisite For Paying The Cash Wage, Friday's Complied With That Requirement ............................................... 57

VI.     SUMMARY JUDGMENT IS NOT APPROPRIATE ON PLAINTIFFS' POST-2011 TIP CREDIT NOTICE CLAIMS ......................................................................... 59

    A.      The Post-2011 Regulations Do Not Require Written Notice As A Pre-Condition For Paying The Cash Wage ................................................. 60

    B.      The Regulations Do Not Require That Employers Fulfill Their Notice Obligation In A Single Document ........................................................ 63

    C.      Friday's Provided Plaintiffs Ample And Sufficient Notice Of The Manner In Which It Utilized The Tip Credit ........................................................ 66

VII.    SUMMARY JUDGMENT SHOULD BE DENIED ON PLAINTIFFS' WAGE NOTICE CLAIMS PURSUANT TO NYLL SECTION 195.1 ....................................... 71

    A.      The NYLL Does Not Provide A Private Right Of Action For Failure To Provide Annual Notices ........................................................................ 72

    B.      Plaintiffs Fail To Demonstrate That Defendants Have Liability Under NYLL §§ 195(1)(a) And 198(1-b) For "Time Of Hire" Notices .......................... 74

         1.     Zorrilla And Mackey Were Both Hired Prior to April 9, 2011 And Therefore  Do Not Have A Wage Notice Claim Under NYLL ............... 75

         2.     Reid, Pink, and Ellis Were Provided Adequate Notice Upon Hire .......... 76

         3.     Reid Received Adequate Notice Upon Hire .............................................. 78

         4.     Pink Received Adequate Notice Upon Hire .............................................. 79

         5.     Ellis Received Adequate Notice Upon Hire .............................................. 81

    C.      Defendants Have No Liability Under § 195(1) Because They Paid Plaintiffs All Wages Owed .................................................................. 83

VIII.   SUMMARY JUDGMENT IS NOT APPROPRIATE ON PLAINTIFFS' WAGE STATEMENT CLAIMS ......................................................................... 84

CONCLUSION ...................................................................................................... 90

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abrahams v. MTA Long Island Bus,*
  644 F.3d 110 (2d Cir. 2011)....................................................................................45

*Abuzaid v. Mattox,*
  726 F.3d 311 (2d Cir. 2013)....................................................................................55

*Ahmed v. City of New York,*
  129 A.D.3d 435 (N.Y. App. Div. 2015) .................................................................43

*Ajayem Lumber Corp. v. Penn Cent. Transp. Co.,*
  487 F.2d 179, 183 (2d Cir. 1973), *supplemented*, 496 F.2d 21 (2d Cir. 1974)......65

*Alexander v. Sandoval,*
  532 U.S. 275 (2001)................................................................................................45

*Am. Pipe & Constr. Co. v. Utah,*
  414 U.S. 538 (1974)................................................................................................26

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242 (1986)................................................................................................24

*Angamarca v. Pita Grill 7 Inc.,*
  No. 11-CV-7777, 2012 WL 3578781 (S.D.N.Y. Aug. 2, 2012).............................44

*Aymes v. City of N.Y.,*
  27 A.D.3d 394 (N.Y. App. 2006) ...........................................................................40

*Barfield v. N.Y. City Health & Hosp. Corp.,*
  537 F.3d 132 (2d Cir. 2008)....................................................................................32

*Billet v. Reno,*
  2 F. Supp. 2d 368 (W.D.N.Y. 1998) .......................................................................48

*Bilski v. Kappos,*
  561 U.S. 593 (2010)...........................................................................................49, 50

*Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris, Inc.,*
  133 F. Supp. 2d 162 (E.D.N.Y. 2001) ....................................................................48

*Boelter v. Hearst Commc'ns, Inc.,*
  No. 15 Civ. 3934, 2016 WL 3369541 (S.D.N.Y. June 17, 2016)...........................25

iv

*Boreali v. Axelrod,*
    517 N.E.2d 1350 (N.Y. 1987)..........................................................................40, 53

*Bradford v. CVS Pharmacy, Inc.,*
    No. 1:12-CV-1159, 2013 WL 5587350 (N.D. Ga. Oct. 10, 2013) ..........................................29

*Callahan v. Countrywide Home Loans, Inc.,*
    No. 3:06-CV-105, 2006 WL 3913763 (N.D. Fla. July 26, 2006)............................................56

*Campagna v. Shaffer,*
    536 N.E.2d 368 (N.Y. 1989) ...................................................................................... *passim*

*Canelas v. A'Mangiare Inc.,*
    No. 13-CV-3630 (VB), 2015 WL 2330476 (S.D.N.Y. May 14, 2015) ...................................75

*Carrier v. Salvation Army,*
    667 N.E.2d 328 (N.Y. 1996)..................................................................................................47

*Carter v. Tuttnaeur U.S.A. Co.,*
    78 F. Supp. 3d 564 (E.D.N.Y. 2015) .............................................................................73, 74

*Carvente-Avila v. Chaya Mushkah Restaurant Corp.,*
    No. 12-CV-5359 (KBF), 2016 WL 3221141 (S.D.N.Y. Mar. 1, 2016)..................................62

*Chan v. Triple 8 Palace, Inc.,*
    No. 03 Civ. 6048, 2006 WL 851749 (S.D.N.Y. Mar. 30, 2006) ......................................48, 50

*Chevron USA Inc. v. School Bd. Vermilion Parish,*
    294 F.3d 716 (5th Cir. 2002) .................................................................................................30

*City of Phil. v. Beretta U.S.A. Corp.,*
    277 F.3d 415 (3d Cir. 2002)..................................................................................................56

*City of Phil. v. Lead Indus. Ass'n,*
    994 F.2d 112 (3d Cir. 1993)..................................................................................................56

*City of Tonawanda v. Tonawanda Theater Corp.,*
    29 A.D.2d 217 (N.Y. App. Div. 1968) .................................................................................38

*Clancy v. State of N.Y.,*
    126 Misc. 2d 292 (N.Y. Ct. Cl. 1984)..................................................................................47

*Combs v. Int'l Ins. Co.,*
    354 F.3d 568 (6th Cir. 2004) ...........................................................................................56, 57

*Conn. Nat'l Bank v. Germain,*
    503 U.S. 249 (1992)..........................................................................................................49, 50

v

*Cunningham v. Fleetwood Homes of Georgia, Inc.*,
253 F.3d 611 (11th Cir. 2001) ......................................................................65

*Darrington v. Assessment Recovery of Wash., LLC*,
No. 13-C-0286, 2014 WL 3858363 (W.D. Wash. Aug. 5, 2014)............................28

*Desmond-Americana v. Jorling*,
143 Misc. 2d 711 (N.Y. Sup. Ct. 1989), *aff'd*, 550 N.Y.S.2d 94 (N.Y. App.
Div. 1989) ...................................................................................................44

*DiBella v. Hopkins*,
403 F.3d 102 (2d Cir. 2005)...........................................................................25

*Dorsey v. TGT Consulting, LLC*,
888 F. Supp. 2d 670 (D. Md. 2012) ................................................................70

*Driver v. AppleIllinois, LLC*,
917 F. Supp. 2d 793 (N.D. Ill. 2013) ..............................................................70

*Dutchess/Putnam Rest. & Tavern Ass'n, Inc. v. Putnam Cty. Dep't of Health*,
178 F. Supp. 2d 396 (S.D.N.Y. 2001)..............................................................36

*Ebbert v. DaimlerChrysler Corp.*,
319 F.3d 103 (3d Cir. 2003)...........................................................................65

*U.S. ex rel. Eisenstein v. City of New York*,
556 U.S. 928 (2009).......................................................................................29

*Ellicott Grp., LLC v. State of N.Y. Exec. Dep't Office of Gen. Servs.*,
85 A.D.3d 48 (N.Y. App. Div. 2011) ...............................................................43

*Empire State Ass'n of Assisted Living, Inc. v. Daines*,
26 Misc. 3d 340 (N.Y. Sup. Ct. 2009) .........................................................37, 43

*Entergy Nuclear Indian Point 2, LLC v. New York State Dep't of State*,
130 A.D.3d 1190 (N.Y. App. Div. 2015) ..........................................................60

*In Re Fed. Tel. & Radio Corp.*,
92 N.E.2d 907 (N.Y. 1950)............................................................................37

*Fernandez v. State*,
No. M-84495, 2014 WL 1851175 (N.Y. Ct. Cl. Apr. 17, 2014) .............................46

*Fireside Bank v. Super. Ct.*,
155 P.3d 268 (Cal. 2007) ..............................................................................27

*Franco v. Jubilee First Avenue Corp.*,
No. 14-CV-07729 (SN), 2016 WL 4487788 (S.D.N.Y. Aug. 25, 2016)..............62, 75

*Garcia v. N.Y. City Dep't of Health & Mental Hygiene*,
    38 N.Y.S.3d 880 (N.Y. App. Div. 2016) ..............................................................43

*Gessele v. Jack-in-the-Box, Inc.*,
    No. 10-CV-960, 2012 WL 3686274 (D. Ore. Aug. 24, 2012) ...............................28

*Gomez v. Rossi Concrete, Inc.*,
    No. 08-CV-1442, 2011 WL 666888 (S.D. Cal. Feb. 17, 2011) ...............................27

*Gorzynski v. JetBlue Airways Corp.*,
    596 F.3d 93 (2d Cir. 2010) ......................................................................................24

*Great Am. Ins. Co. of New York v. TA Operating Corp.*,
    No. 06 Civ. 13230, 2008 WL 5335317 (S.D.N.Y. Dec. 8, 2008) ..........................24

*Guaman v. Krill Contracting Inc.*,
    No. 14-CV-4242 (FB) (RER), 2015 WL 3620364 (E.D.N.Y. June 9, 2015) .............73, 74, 75

*Guan Ming Lin v. Benihana N.Y. Corp.*,
    No. 10-CV-1335 (RA) (JCF), 2012 WL 7620734 (S.D.N.Y. Oct. 23, 2012),
    *report and recommendation adopted*, No. 10-CV-1335 (RA) (JCF), 2013 WL
    829098 (S.D.N.Y. Feb. 27, 2013) .....................................................................72, 74, 75, 84

*Hart v. Crab Addison, Inc.*,
    No. 13-CV-6458, 2016 WL 4010064 (W.D.N.Y. July 26, 2016) ..........................28

*Hart v. Rick's Cabaret Int'l, Inc.*,
    967 F. Supp. 2d 901 (S.D.N.Y. 2013) ...............................................................31, 32

*Hartley v. Suburban Radiologic Consultants, Ltd.*,
    295 F.R.D. 357 (D. Minn. 2013) ...........................................................................30

*Herrera v. Tri-State Kitchen & Bath, Inc.*,
    No. 14-CV-1695 (ARR)(MDG), 2015 WL 1529653 (E.D.N.Y. Mar. 31, 2015) .............73, 74

*Hinckley v. Seagate Hosp. Group, LLC*,
    No. 16-CV-6118 (CGS), 2016 WL 6524314 (W.D.N.Y. Nov. 3, 2016) ................72

*Holmes v. Countrywide Fin. Corp.*,
    No. 5:08-CV-00205-R, 2012 WL 2873892 (W.D. Ky. July 12, 2012) ..................56

*Hong Leong Fin. Ltd. (Singapore) v. Pinnacle Performance Ltd.*,
    No. 12-CV-6010, 2013 WL 5746126 (S.D.N.Y. Oct. 23, 2013) ...........................56

*Ileto v. Glock Inc.*,
    349 F.3d 1191 (9th Cir. 2003) ...............................................................................56

*Inclan v. N.Y. Hosp. Grp., Inc.*,
  95 F. Supp. 3d 490 (S.D.N.Y. 2015)..................................................................87

*J. v. Genuine Title, LLC*,
  No. CV RDB-14-0081, 2015 WL 8315704 (D. Md. Dec. 9, 2015), *certified
  question answered sub nom., Fangman v. Genuine Title, LLC*, 136 A.3d 772
  (Md. 2016) ........................................................................................................56

*Jin v. Pac. Buffet House, Inc.*,
  No. 06-CV-579, 2009 WL 2601995 (E.D.N.Y. Aug. 24, 2009)...........................53

*Kachalsky v. Cacace*,
  817 F. Supp. 2d 235 (S.D.N.Y. 2011), *aff'd sub nom., Kachalsky v. Cty. of
  Westchester*, 701 F.3d 81 (2d Cir. 2012) ..........................................................25

*Kahal Bnei Emunim & Talmud Torah Bnei Simon Israel v. Town of Fallsburg*,
  577 N.E.2d 34 (N.Y. 1991)............................................................................40, 42

*Karcher v. May*,
  484 U.S. 72 (1987)..............................................................................................29

*Kingman v. Dillard's, Inc.*,
  643 F.3d 607 (8th Cir. 2011) ..............................................................................56

*Kone v. Joy Constr. Corp*,
  No. 15-CV-1328 (LTS), 2016 WL 866349 (S.D.N.Y. Mar. 3, 2016) ...................75

*Larson v. Albany Med. Ctr.*,
  252 A.D.2d 936 (N.Y. App. 1998) ......................................................................47

*Levin v. Commerce Energy, In*c.,
  560 U.S. 413 (2010)............................................................................................55

*Lord v. Swire Pac. Holdings, Inc*.,
  203 F. Supp. 2d 1175 (D. Idaho 2002) ...............................................................56

*Lozano v. Rugfrit 1350 LLC*,
  No. 159570/2014, 2015 WL 1938754 (N.Y. Sup. Ct. Apr. 27, 2015)........... *passim*

*McCarthy v. Dun & Bradstreet Corp.*,
  482 F.3d 184 (2d Cir. 2007)................................................................................24

*Mendez v. Pizza on Stone, LLC*,
  No. 11 Civ. 6316, 2012 WL 3133547 (S.D.N.Y. Aug 1, 2012) ...........................55

*Mendez v. Radec Corp.*,
  260 F.R.D. 38 (W.D.N.Y. 2009)..........................................................................27

21399126v.9

*Metropolitan Association of Employment Agents of New York v. Gourdine*,
120 Misc. 2d 290 (N.Y. Sup. Ct. 1983), *aff'd*, 108 A.D.2d 633 (N.Y. App.
Div. 1985) ...................................................................................................41

*N.Y. Statewide Coalition of Hispanic Chambers of Commerce v. N.Y. City Dep't
of Health & Mental Hygiene*,
110 A.D.3d 1 (N.Y. App. 2013), *aff'd*, 16 N.E.3d 538 (N.Y. 2014) ......................................37

*Nat'l Advert. Co. v. Town of Niagara*,
942 F.2d 145 (2d Cir. 1991)........................................................................55

*O'Mara v. Town of Wappinger*,
485 F.3d 693 (2d Cir. 2007)........................................................................25

*Packer Collegiate Inst. v. Univ. of State of N.Y.*,
81 N.E.2d 80 (N.Y. 1948)............................................................................38

*Padilla v. Manlapaz*,
643 F. Supp. 2d 302 (E.D.N.Y. 2009) ...............................................53, 54, 55, 57

*Peritz v. Liberty Loan Corp.*,
523 F.2d 349 (7th Cir. 1975) ......................................................................2

*Premier Elec. Constr. Co. v. National Elec. Contractors Ass'n, Inc.*,
814 F.2d 358 (7th Cir. 1987) .....................................................................26

*Proctor & Gamble Co. v. Haugen*,
222 F.3d 1262 (10th Cir. 2000) ..................................................................56

*Redfield v. Melton*,
57 A.D.2d 491 (N.Y. App. 1977) ............................................................38, 40

*Retail Indus. Leaders Ass'n v. Suffolk Cty.*,
497 F. Supp. 2d 403 (E.D.N.Y. 2007) .........................................................55

*Reyes v. Erickson*,
238 F. Supp. 2d 632 (S.D.N.Y. 2003)..........................................................45

*Reyes v. Sofia Fabulous Pizza Corp.*,
No. 13-CV-7549 (LAK) (JCF), 2014 U.S. Dist. LEXIS 188734 (S.D.N.Y.
Apr. 7, 2014) .......................................................................................73, 74

*Ribas v. Mukasey*,
545 F.3d 922 (10th Cir. 2008) ....................................................................65

*Rosenbluth v. Finkelstein*,
91 N.E.2d 581 (N.Y. 1950).........................................................................41

*S. Ill. Riverboat Casino Cruises, Inc. v. Triangle Insulation & Sheet Metal Co.*,
302 F.3d 667 (7th Cir. 2002) ................................................................56

*Saleem v. Corp. Transp. Grp., Ltd.*,
No. 12 Civ. 8450, 2014 WL 7106442 (S.D.N.Y. Dec. 9, 2014), *appeal
docketed*, No. 15-88 (2d Cir. Jan. 7, 2015) ............................................29

*Salinas v. Starjem Rest. Corp.*,
123 F. Supp. 3d 442 (S.D.N.Y. 2015)............................................54, 62, 87

*Samiento v. World Yacht Inc.*,
883 N.E.2d 990 (N.Y. 2008)......................................................52, 60

*Sandoval v. Ali*,
34 F. Supp. 3d 1031 (N.D. Cal. 2014) ................................................30

*Schaefer v. Walker Bros. Enterprises*,
829 F.3d 551 (7th Cir. 2016) ..................................................64, 65

*Schiff v. United States*,
919 F.2d 830 (2d Cir. 1990)............................................................65

*Schwarzschild v. Tse*,
69 F.3d 293 (9th Cir. 1995) ............................................................27

*Seenaraine v. Securitas Sec. Servs. USA, Inc.*,
37 A.D.3d 700 (N.Y. App. Div. 2007) ................................................52

*Sexton v. Am. Golf Corp.*,
No. 13-CV-873 (RJD) (SMG), 2015 WL 5884825 (E.D.N.Y. Oct. 8, 2015)...................85, 86

*Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*,
559 U.S. 393 (2010)....................................................................25

*Smith v. Bayer Corp.*,
564 U.S. 299 (2011)................................................................29, 30

*Standard Fire Ins. Co. v. Knowles*,
133 S. Ct. 1345 (2013)................................................................30

*Thomka v. A. Z. Chevrolet, Inc.*,
619 F.2d 246 (3d Cir. 1980)............................................................65

*Tschudy v. J.C. Penney Corp., Inc.*,
No. 11-CV-1011, 2015 WL 5098446 (S.D. Cal. Aug. 28, 2015) ..........................28

*United States v. Ionia Mgmt., S.A.*,
537 F. Supp. 2d 324 (D. Conn. 2008)....................................................65

x

*Vumbaca v. Terminal One Grp. Ass'n L.P.*,
    859 F. Supp. 2d 343 (E.D.N.Y. 2012) ................................................................25

*Wei Yan Yan v. 520 Asian Rest. Corp.*,
    No. 13 Civ. 2417, 2014 WL 7177259 (S.D.N.Y. Dec. 17, 2014) ....................50, 53

*Werts v. Fed. Nat'l Mortgage Ass'n*,
    48 B.R. 980 (E.D. Pa. 1985) ............................................................................66

*Werwinski v. Ford Motor Co.*,
    286 F.3d 661 (3d Cir. 2002) ............................................................................56

*Wharram v. City of Utica*,
    106 Misc. 2d 204 (N.Y. Sup. Ct. 1979) ...............................................37, 38, 40

*While You Wait Photo Corp. v. Dep't of Consumer Affairs of City of New York*,
    87 A.D.2d 46 (N.Y. App. 1982) ......................................................................41

*Yong Kui Chen v. Wai Yin Chan*,
    No. 12-1845, 2015 WL 4032693 (2d Cir. July 2, 2015) ...................................55

*Yuquilema v. Manhattan's Hero Corp.*,
    No. 13-CV-461 (WHP) (JLC), 2014 WL 4207106 (S.D.N.Y. Aug. 20, 2014),
    *report and recommendation adopted*, No. 13-CV-461 (WHP) (JLC), 2014 WL
    5039428 (S.D.N.Y. Sep. 30, 2014) ...............................................................73, 74

*Zheng v. Liberty Apparel Co. Inc.*,
    355 F.3d 61 (2d Cir. 2003) ............................................................................32

*Zurita v. High Definition Fitness Ctr., Inc.*,
    No. 13- CV-4394 (CBA) (RML), 2016 WL 3619527 (E.D.N.Y. June 9, 2016),
    *report and recommendation adopted*, No. 13-CV-4394 (CBA) (RML), 2016
    WL 3636020 (E.D.N.Y. June 29, 2016) ..........................................................73, 74

**Statutes**

8 U.S.C. § 1158(d)(4)(A) ..............................................................................................65

18 U.S.C. § 3612(d) ......................................................................................................65

29 U.S.C. § 203(m) ......................................................................................................44

29 U.S.C. § 216(b) .................................................................................................6, 29

Fair Labor Standards Act (FLSA) .................................................................... *passim*

New York Labor Law (NYLL) ......................................................................... *passim*

NYLL § 195(1) ................................................................................................. *passim*

NYLL § 195(1)(a) ........................................................................... *passim*

NYLL § 195(3) ................................................................................ *passim*

NYLL § 198(1-b) .............................................................................72, 74, 83

NYLL § 653 .....................................................................................39

NYLL § 656 .....................................................................................39

NYLL § 663(1) .................................................................................45, 46

**Other Authorities**

12 C.F.R. § 226.8(a) .......................................................................66

16 C.F.R. § 701.3 ............................................................................65

29 C.F.R. § 791.2(a) ........................................................................31

29 C.F.R. § 791.2(b) ........................................................................31

12 N.Y.C.R.R. § 137 ........................................................................39, 48

12 N.Y.C.R.R. § 137-1.4 ...................................................................49, 50

12 N.Y.C.R.R. § 137-1.5 ...................................................................49, 50, 54

12 N.Y.C.R.R. § 137-2.1 ...................................................................49, 54, 76

12 N.Y.C.R.R. § 137-2.2 ................................................................... *passim*

12 N.Y.C.R.R. § 142-2.5(b) ..............................................................50

12 N.Y.C.R.R. § 146 ........................................................................39

12 N.Y.C.R.R. § 146-1.3 ................................................................... *passim*

12 N.Y.C.R.R. § 146-2.2 ................................................................... *passim*

12 N.Y.C.R.R. § 146-2.2(a) ..............................................................35

12 N.Y.C.R.R. § 146-2.3 ...................................................................59

Fed. R. Civ. P. 23(c) .......................................................................26

Fed. R. Civ. P. 23(b)(3) ...................................................................26

Fed. R. Civ. P. 23(c)(1) ...................................................................26

Fed. R. Civ. P. 23(c)(2) .................................................................................................26, 27

Fed. R. Civ. P. 23(c)(3) .......................................................................................................26

Fed. R. Civ. P. 56(a) ......................................................................................................24, 31

Fed. R. Civ. P. 56(c) ...........................................................................................................31

Fed. R. Civ. P. 56(d) .............................................................................................................7

N.Y. Dep't Of Labor Op. Letter (Mar. 4, 2015) .............................................................

N.Y. Dep't Of Labor Op. Letter, RO-08-0096 (Aug. 11, 2008).................................85

Order Of Commissioner Of Labor M. Patricia Smith On The Report &
   Recommendations Of The 2009 Wage Board .................................................51, 52

State Assembly Bill A03090..........................................................................................83

State Assembly Bill A08106C.......................................................................................83

*Tracy Bateman Farrell, et al.*,
   2 N.Y. Jur. 2d Admin. Law § 45 (2016) ...............................................................37

Defendants Carlson Restaurants, Inc. ("Carlson"), Carlson Restaurants Worldwide, Inc. ("Carlson Worldwide"), and T.G.I. Friday's Inc. ("Friday's"), collectively "Defendants," hereby submit their Response In Opposition to the Motion For Partial Summary Judgment filed by Plaintiffs Julio Zorrilla, Tashauna Reid, and Matthew Mackey (the "Plaintiffs") on behalf of themselves and on behalf of putative class members, Patrick Pink and Gene Ellis (the "Non-Party Putative Class Members").

## INTRODUCTION

Plaintiffs' motion for partial summary judgment should be denied because it is procedurally improper and substantively insufficient to show Plaintiffs' entitlement to relief as a matter of law. The Court need not go beyond the rule against one-way intervention to decide Plaintiffs' motion. Based on that principle, the motion should be denied. Even if procedurally proper, however, Plaintiffs are not entitled to summary judgment.

While attempting to cast Friday's as a company that engages in "wage theft" and denies "their low-wage hourly restaurant workers important rights" (ECF No. 413 at 1), Plaintiffs do not address such issues, let alone produce evidence of such tenuous allegations. Indeed, Friday's has a strong commitment to its employees and takes great lengths to timely pay its employees and ensure that they earn at least the minimum wage for all hours worked. Instead, Plaintiffs premise their motion on the faulty assumption that New York has created a "strict liability" scheme under which liability is automatic for any employer that does not follow any technical requirement conceived by Plaintiffs' counsel. Plaintiffs base their novel position on a selective reading of certain state regulations, federal case law, and wishful thinking – and not the law of New York. Plaintiffs' motion fails for myriad reasons, each of which provides sufficient grounds to deny summary judgment.

21399126v.9

First, because Plaintiffs brought their claims on a class basis, Rule 23 prohibits Plaintiffs from seeking summary judgment on their individual claims while putative class members – who would not be bound by any adverse ruling – sit on the sidelines.  Due to the fact-intensive nature of Plaintiffs' claims, rather than seek class certification under Rule 23, Plaintiffs moved for summary judgment for five so-called "Moving Plaintiffs."  But Plaintiffs do not limit their motion to Plaintiffs or to Moving Plaintiffs.  Rather, Plaintiffs contend that "Carlson did not provide written NYLL tip credit notice to *many of its tipped workers*" and "should have paid *its tipped workers*, including the Moving Plaintiffs, at least the minimum wage for each hour they worked."  (ECF No. 413 at 5, 17 (emphasis added); *see also* ECF No. 412 at 2.)  If Plaintiffs prevail on their motion, their counsel surely will assert that the Court's findings should apply to all of the "tipped workers" in their purported "NY Rule 23 Class."  Conversely, if Plaintiffs do not prevail, their counsel will contend that the thousands of individuals who are currently "sitting on the sidelines," are not bound by the ruling and free to try again in a different forum. Plaintiffs' strategy is known as "one-way intervention" and it is specifically prohibited by Rule 23.[1]  For this reason alone, Plaintiffs' motion for partial summary judgment must be denied.

Second, Plaintiffs cannot obtain a ruling on behalf of those individuals for whom they seek summary judgment, and Plaintiffs cannot obtain a ruling against the Defendants they have identified.  Plaintiffs overreach by bringing their motion on behalf of individuals who are not parties and against Defendants for which they have no theory of liability.  Because the Court has not certified any Rule 23 class, Plaintiffs do not have standing to pursue claims on behalf of "Moving Plaintiffs" who are not parties to their New York claims and such individuals would

---

[1] Indeed, a ruling on the merits at this stage would bar class counsel from later certifying their "NY Rule 23 Class."  *Peritz v. Liberty Loan Corp.*, 523 F.2d 349, 353-54 (7th Cir. 1975).

21399126v.9

not be bound by any judgment.  Plaintiffs similarly cannot pursue claims against Defendants against whom they have presented no evidence.

Third, Plaintiffs seek summary judgment for violations of supposed "tip credit notice" obligations that do not exist in the statutory scheme and for which Plaintiffs have no right of action.  The New York State Legislature (the "Legislature") set forth plain requirements for payment of food service workers who receive tips.  Specifically, since 2004, the Legislature has allowed employers to pay food service workers who receive tips a "cash wage" less than the minimum wage "provided that the tips of such an employee, when added to such cash wage, are equal to or exceed the minimum wage."  NYLL § 652(4).  The Legislature has not conditioned the payment of the cash wage on provision of any "tip credit notice" and has not created any private cause of action on which Plaintiffs can pursue their theory of "forfeiture."  To the extent that Plaintiffs seek to construe regulations created by an administrative agency – the New York State Department of Labor (the "DOL") – as adding "pre-conditions" to payment of the cash wage, Plaintiffs seek to render those regulations invalid.  To the extent Plaintiffs contend that the regulations impose additional prerequisites to payment of the cash wage, those regulations represent an improper exercise of legislative authority by the administrative branch of government that is invalid under New York law.

Fourth, even if Plaintiffs could assert claims based on regulations created by an administrative agency, those claims fail.  With regard to their pre-2011 tip notice claims, whereas Plaintiffs argue that 12 N.Y.C.R.R. § 137-2.2 imposes a notice requirement on employers that serves as a pre-condition to payment of the cash wage (ECF No. 413 at 20-21), the regulation contains no reference to any type of "tip credit notice" and no penalty provision.  Rather, it merely requires each employer to "furnish to each employee a statement with every

payment of wages listing hours worked, rates paid, gross wages, allowances, if any, claimed as part of the minimum wage, deductions and net wages."  12 N.Y.C.R.R. § 137-2.2.  Friday's indisputably complied with such requirements.  With regard to their post-2011 tip notice claims, Plaintiff base their claims on the faulty assumption that the DOL requires written notice on a single piece of paper.  Yet, the DOL and numerous courts have rejected this interpretation.  Indeed, the DOL has made clear that an employer in the food service industry can remain eligible to claim the tip credit pursuant to 12 N.Y.C.R.R. § 146-1.3 "*even when the notice of tip credit provided by the employer is not in writing*."  (Defs.' Resp. 56.1 ¶ 203 (emphasis added); Ex. 33, N.Y. Dep't Of Labor Op. Letter (Mar. 4, 2015).)  The DOL's interpretation of its own regulations is entitled to deference.

Fifth, Plaintiffs also are not entitled to summary judgment on their claims because Friday's has produced ample evidence that it provided notice to its tipped workers regarding their wages in myriad ways.  Friday's provided practical information to each employee through its Team Member Handbook which, among other things, explained that, "we promise that if you don't make minimum wage with your hourly rate of pay and tips combined, we'll make up the difference."  (Defs.' Resp. 56.1 ¶ 184; Ex. 6, 2011 Handbook; Ex. 7, 2012 Handbook; Ex. 8, April 2014 Handbook.)  Friday's trained its managers about the tip credit and completion of new hire forms before they started working in its restaurants and provided reminders that directed and enabled its managers to explain the tip credit to tipped Team Members including Plaintiffs.  Friday's ensured that various tipped employees received notice of their wages through new hire paperwork and dedicated notification forms.  Friday's prominently displayed up-to-date posters in well-traveled areas of the restaurants wherein Plaintiffs worked that, among other things, broadcasted information about the prevailing minimum wage and overtime rate.  In sum,

4

Defendants employed myriad methods to ensure that tipped workers received notice through a layering of sources.

Sixth, Plaintiffs likewise are not entitled to summary judgment on their wage notice or wage statement claims pursuant to NYLL § 195(1) and (3).  With respect to NYLL § 195(1), the statute does not create a private right of action for failure to provide annual notice.  With respect to time-of-hire notice, Friday's either hired Plaintiffs before the law went into effect or provided the requisite notice.  Similarly, Plaintiffs are not entitled to summary judgment on their wage statement claims under NYLL § 195(3) because Friday's provided compliant wage statements that, among other things, reflected all allowances, including the amount of tips that Friday's credited toward the minimum wage.  Finally, with respect to each of these claims, summary judgment is inappropriate because Friday's made complete and timely payment of all wages owed, a complete defense under the New York Labor Law ("NYLL").

As the parties' voluminous Rule 56.1 statements reflect, whether an individual received "notice" about his or her wages, in accordance with the NYLL, is a fact-intensive and individualized inquiry.  Whether Defendants provided notice of Plaintiffs' wage rates in an appropriate form, whether Plaintiffs received notice from any of a multitude of other sources, whether Plaintiffs understood how they were being paid, and whether Defendants properly paid Plaintiffs all wages owed are fact questions for which Defendants have produced substantial evidence.  At the very least, the record evidence manifests genuine issues of material fact on the elements of  the claims at issue in Plaintiffs' motion.  Accordingly, the Court should deny Plaintiffs' motion for partial summary judgment in its entirety.

## **PROCEDURAL HISTORY**

On April 17, 2014, Plaintiffs Jamel Flood, Ira Heaston, Isaac Heaston, and Josephine Diaz filed this lawsuit asserting two claims for alleged violation of the Fair Labor Standards Act

21399126v.9

("FLSA") and eight claims for alleged violations of New York state law.  (ECF No. 2.)  Plaintiffs

purportedly brought their New York claims on behalf of themselves and a class of "all similarly

situated current and former tipped workers employed at T.G.I. Friday's in New York owned

and/or operated by [Defendants]" after April 17, 2008.  (ECF No. 2 ¶ 116; ECF No. 175 ¶ 139.)

Nearly eight months later, on December 9, 2014, Plaintiffs filed a First Amended Complaint

adding Tashauna Reid as a Plaintiff.  (ECF No. 73.)  After another four months, on April 15,

2015, Plaintiffs filed a Second Amended Complaint adding Patrick Pink as a Plaintiff.  (ECF No.

175.)

     Although Plaintiffs purportedly assert claims on behalf of a putative "NY Rule 23 Class,"

Plaintiffs did not and have not sought to certify a class action under Rule 23 of the Federal Rules

of Civil Procedure.  Plaintiffs filed opt-in consent forms for Gene Ellis on May 7, 2015, for

Matthew Mackey on May 8, 2015, and for Julio Zorrilla on May 11, 2015.  (ECF Nos. 187, 188,

190.)  In the opt-in consent forms, Ellis, Mackey, and Zorrilla purported to join the litigation

solely for the purpose of pursuing claims under the FLSA.  The consent forms provided:  "I

consent to be a party plaintiff in this lawsuit in order to seek redress for violations of the Fair

Labor Standards Act, pursuant to 29 U.S.C. § 216(b)."  (*Id.*)

     On October 5, 2015, Plaintiffs filed a Motion For Partial Summary Judgment (the

"October 2015 Motion") as to two New York claims asserted in their Second Amended

Complaint – *i.e.*, their claims that Defendants failed to provide "wage notices required by the

NYLL" and failed to provide "accurate wage statements required by the NYLL" – and two

purported claims that Plaintiffs failed to assert in their Second Amended Complaint.  That is,

although neither Plaintiff worked for Defendants before 2011, Plaintiffs devoted the bulk of their

October 2015 Motion to asserting that Defendants failed to provide "proper written notice of the

tip credit" under 12 N.Y.C.R.R. § 137-2.2 or 12 N.Y.C.R.R. § 146-2.2.  (ECF No. 270 at 15-22.)
Plaintiffs filed their October 2015 Motion on behalf of two Plaintiffs – Tashauna Reid and
Patrick Pink – who they named in their Second Amended Complaint, as well as purportedly on
behalf of three putative class members – Matthew Mackey, Julio Zorrilla, and Gene Ellis – who
Plaintiffs did not identify in their Second Amended Complaint.  (ECF No. 269, 270.)

On October 19, 2015, the Court stayed briefing on the October 2015 Motion while it
considered Defendants' motion to continue or deny Plaintiffs' October 2015 Motion under Rule
56(d).  (ECF Nos. 276 & 284.)  On January 19, 2016, more than 21 months after initiating this
action, and more than three months after filing their Motion, Plaintiffs moved for leave to file a
Third Amended Complaint.  (ECF No. 345.)  In Plaintiffs' proposed Third Amended Complaint,
they requested leave to add two Plaintiffs on whose behalf they already purportedly filed their
motion for partial summary judgment, and they sought leave to add two claims on which they
already purportedly filed their motion for summary judgment.  (*See* ECF No. 348-1, Redline
Comparison Of ECF No. 175, Second Am. Compl. & ECF No. 347-1, Proposed Third Am.
Compl.)  In particular, Plaintiffs proposed adding Mackey and Zorrilla (but dropping Pink) as
Plaintiffs, and Plaintiffs sought leave to assert that Defendants violated the minimum wage law
of New York by failing to provide Plaintiffs "with the statutorily required language that they
would be paying the New York Plaintiffs and the NY Rule 23 Class Members the tipped
minimum wage rate."  (*Id.* ¶¶ 636, 638.)

On June 17, 2016, the Court issued an Order that, among other things, granted
Defendants' motion to continue Plaintiffs' October 2015 Motion and granted Plaintiffs leave to
file their proposed Third Amended Complaint.  (ECF No. 361.)

7

On August 12, 2016, Plaintiffs filed a Fourth Amended Complaint.  (ECF No. 389.)

Plaintiffs asserted that Defendants violated New York law in eight ways.  (ECF No. 389 ¶¶ 598-

644.)  In particular, Plaintiffs claimed that Defendants:  (1) "failed to pay the New York

Plaintiffs and the NY Rule 23 Class Members the minimum hourly wages to which they are

entitled under the NYLL and the supporting New York State Department of Labor Regulations"

and "failed to provide the New York Plaintiffs and the NY Rule 23 Class Members with

statutorily required language that they would be paying the New York Plaintiffs and the NY Rule

23 Class members the tipped minimum wage rate"; (2) failed "to provide the New York

Plaintiffs and the NY Rule 23 Class Members with the wage notices as required by the NYLL";

and (3) failed "to supply the New York Plaintiffs and the NY Rule 23 Class Members with the

accurate statements of wages as required by the NYLL."  (*See* ECF No. 388 ¶¶ 604, 612, 617,

623, 628, 632, 638, 642.)

In September 2016, Plaintiffs again requested leave to file a Motion for Partial Summary

Judgment on their NYLL claims and Defendants again opposed the filing of such a motion

before the close of discovery.  (ECF No. 396.)  The Court granted Plaintiffs' request to file the

instant Motion.  (ECF No. 402.)

## FACTUAL BACKGROUND

Friday's owns and operates casual dining restaurants in various places in New York, and

many other states.  Plaintiff Reid worked as a host in Valley Stream, New York for less than one

month, from December 26, 2012, to January 20, 2013.  (Defs.' Rule 56.1 Resp. ¶¶ 4-5.)  Plaintiff

Mackey worked as a host, server, bartender, and coach at Friday's in Forrest Hills, New York

and Walkill, New York from August 2009 to present.  (Defs.' Rule 56.1 Resp. ¶¶ 54-55.)

Plaintiff Zorrilla worked as a bartender at Friday's in Woodbury Township, New York and

Wallkill, New York from September 2008 through October 2015.  (Defs.' Rule 56.1 Resp. ¶¶ 27-28.)

None of the Plaintiffs has sought to certify a class in this action.  Indeed, Plaintiffs concede that they lack personal knowledge regarding the experiences of other individuals.  (Pls.' Ex. 3, Reid Dep. at 42:3-17; Pl.'s Ex. 18, Mackey Dep at 76:2-21, 123:11-16; Pl.'s Ex. 12, Zorrilla Dep at 219:6-12.)

Non-Party Putative Class Member Patrick Pink worked as a server in Westbury, New York, from April 2012 to December 2014.  (Defs.' 56.1 Resp. ¶¶ 123-124.)  Although previously a Plaintiff, he withdrew after testifying that he does not feel qualified to represent individuals who worked other than in the server position at the Westbury location during his employment.  (Pls.' Ex. 37, Pink Dep. at 39:12-40:21; 41:16-42:25.)  Non-Party Putative Class Member Ellis worked as a server, expeditor, and food runner at Friday's in Wallkill, New York from June 2014 to present.  (Defs.' Rule 56.1 Resp. ¶¶ 95-96.)

## I.   FRIDAY'S PROVIDED TIPPED EMPLOYEES NOTICE OF THEIR WAGES THROUGH MULTIPLE MECHANISMS

Friday's provided tipped employees who worked in the State of New York, including Plaintiffs and Non-Party Putative Class Members, with various forms of notice regarding their method and rates of pay that met the requirements of the NYLL.  Friday's provided notice through:  (1) its Team Member Handbooks; (2) various notification forms; (3) its managers; (4) pay stubs or wage statements; and (5) notices conspicuously posted in its restaurants.  Through this robust, multi-faceted approach, Friday's ensured that Plaintiffs, and other employees, received notice of their wages in various ways.

9

A.        **Team Member Handbooks**

Friday's requires (and has always required) new employees to review the Team Member Handbook during orientation.  (Defs.' Resp. 56.1 ¶ 182; Ex. 1, Cunningham Decl. ¶ 8; Ex. 46, Kim Decl. ¶ 19; Ex. 47, McHenry Decl. ¶ 17; Ex. 49, Morrison Decl. ¶¶ 21-22; Ex. 51, Jensen Decl. ¶ 19-20; Ex. 53, Pepicelli Decl. ¶ 15; Ex. 40, Walsh Decl. ¶ 21; Ex. 54, Rivera Decl. ¶ 13; Ex. 43, Rosenthal Decl. ¶¶ 12-13..)  Friday's uses the Handbook to provide practical information to its employees, including information regarding their wages.  For example, beginning in 2004, the "Employee Handbook:  Hourly Employee" notified employees that:  "Your wages will be equal to or greater than the prevailing area minimum wage rate. . . . If you receive tips, your wage is determined by combining the minimum wage, tips, and the tip credit allowed for the state in which you work."  (Defs.' Resp. 56.1 ¶ 183; Ex. 1, Cunningham Decl. ¶ 7; Ex. 5, 2004 Handbook at CR00003256.)

Beginning on January 1, 2011, and through Plaintiffs' employment, Friday's utilized its Team Member Handbooks to provide information regarding pay rates and pay dates, along with information regarding Friday's use of the tip credit.  Friday's ensured tipped employees that Friday's would "make up" any difference between their tips and the minimum wage.  In particular, Team Member Handbooks in effect from January 1, 2011, through March 30, 2014, contained "starter questions" for each new employee to review with his or her supervisor and complete by hand, including:

- When do I get paid? _____

- Am I in a tip credit state?  How much will I be paid by Friday's per hour?_____.

(Defs.' Resp. 56.1 ¶ 184.)  Friday's utilized such Team Member Handbooks to notify workers that:  "In some states, you may make less than minimum wage before tips. . . However, we

promise that if you don't make minimum wage with your hourly rate of pay and tips combined, we'll make up the difference."  (Defs.' Resp. 56.1 ¶ 184; Ex. 1, Cunningham Decl. ¶ 8; Ex. 6, 2011 Handbook; Ex. 7, 2012 Handbook; Ex. 8, April 2014 Handbook.)

Friday's required each new employee to review the Handbook upon hire and to complete a written statement acknowledging that he or she received the Handbook and understood its contents.  Friday's "Receipt of Handbook" acknowledgement provided:  "I acknowledge by my signature that I have received and read a copy of the Team Member Handbook, and that I fully understand all of its contents."  (Defs.' Resp. 56.1 ¶ 185; Ex. 1, Cunningham Decl. ¶ 9; Plaintiffs' Ex. 24, Sample Handbook Acknowledgement.)

Friday's required its managers to review the contents of the Team Member Handbook with employees.  (Defs.' Resp. 56.1 ¶ 182; Ex. 46, Kim Decl. ¶ 19; Ex. 47, McHenry Decl. ¶ 17; Ex. 49, Morrison Decl. ¶¶ 21-22; Ex. 51, Jensen Decl. ¶¶ 19-20; Ex. 53, Pepicelli Decl. ¶ 15; Ex. 40, Walsh Decl. ¶ 21; Ex. 54, Rivera Decl. ¶ 13; Ex. 43, Rosenthal Decl. ¶¶ 12-13.)  Managers used the "starter questions" to ensure that employees received and understood information about policies applicable to tipped employees.  (Defs.' Resp. 56.1 ¶ 184; Ex. 1, Cunningham Decl. ¶ 9.)

**B.      Tip Credit And Wage Notifications**

In addition to its Team Member Handbooks and Receipt of Handbook acknowledgements, Friday's ensured that various tipped employees received notice of their wages through dedicated notification forms.

Beginning in or around 2009, Friday's added to its hiring packet a "Tip Credit Notification" that reflected the amount of the cash wage to be paid per hour and the amount of the tip credit.  (Defs.' 56.1 Resp. ¶ 177; Ex. 1, Cunningham Decl. ¶ 4; Ex. 2, 2009 Tip Credit Notification.)  Friday's required all new hires to complete the forms in the hiring packet,

11

including the Tip Credit Notification, as part of their orientation.  (*Id.*)  The form provided, among other things:

> Below is important information regarding your pay.  Please read the information below and if you have any question regarding this notice, speak to your manager.
> - The amount of cash wages to be paid to you per hour will be $_____.
> - The amount of your tips per hour to be credited as wages, i.e., the tip credit amount, will be $_____.
> - You have the right to retain all the tips you receive, except for the Friday's tip pooling arrangement which is limited to employees who customarily and regularly receive tips.
> - The tip credit shall not apply unless you are informed of these requirements.
> Please sign and date this notice indicating that you understand it, and return it to your manager.

(*Id.*)  Managers distributed this notice during new hire orientation.  (Defs.' 56.1 Resp. ¶ 177; Ex. 1, Cunningham Decl. ¶ 4; Ex. 46, Kim Decl. ¶¶ 15-18; Ex. 47 McHenry Decl. ¶ 7; Ex. 52, Martelucci Decl. ¶¶ 11-13.)

Similarly, beginning on November 13, 2009, Friday's implemented use of a form promulgated by the DOL entitled "Notice and Acknowledgement of Wage Rate and Designated Payday" at its New York restaurants.  (Defs.' 56.1 Resp. ¶ 178; Ex. 1, Cunningham Decl. ¶ 5; Ex. 3, 2009 New York Notice.)  The form reflected the rate of pay, overtime rate, and designated payday.  (Defs.' 56.1 Resp. ¶ 179)  Friday's directed New York store managers to  make the "Notice and Acknowledgement of Wage Rate and Designated Payday" part of their new hire paperwork, and to provide the "Notice and Acknowledgement of Wage Rate and Designated Payday," along with an explanatory flyer issued by the DOL, to all new hires.  It directed general managers to  "[m]ake copies of the form to keep as part of your new hire paperwork" and "[c]omplete the form and provide to all new hires effective immediately - before they do any work."  (Defs.' 56.1 Resp. ¶ 180; Ex. 1, Cunningham Decl. ¶ 5; Ex. 3, 2009 New York Notice.)

12

Managers utilized this form, including in locations where Plaintiffs worked.  (Defs.' 56.1 Resp.
¶¶ 60, 64; Ex. 46, Kim Decl. ¶ 12; Ex. 47, McHenry Decl. ¶ 9.)

In May 2011, Friday's amended its "Tip Credit Notification" to reiterate what it stated in
its Team Member Handbook, *i.e.*, that Friday's would take a tip credit only to the extent that
tipped team members earned enough tips to cover the tip credit.  The updated form stated, among
other things, "assuming you have received a sufficient amount of tips to cover the tip credit, the
amount of your tips per hour to be credited as wages, i.e., the tip credit amount will be
$_____."  (Defs.' 56.1 Resp. ¶ 187; Ex. 1, Cunningham Decl. ¶ 12; Ex. 9, 2011 Tip Credit
Memorandum & Attachments.)

Friday's circulated the new form to its managers, along with a state-by-state list of tip
credit and cash wage amounts, and directed its managers to utilize the materials to notify all
tipped team members of their cash wage rate of pay, tip credit amount, and tip pool contribution.
(Defs.' 56.1 Resp. ¶ 188; Ex. 1, Cunningham Decl. ¶ 13; Ex. 9, 2011 Tip Credit Memorandum &
Attachments; Ex. 40, Walsh Decl. ¶¶ 12-20; Ex. 46, Kim Decl. ¶¶ 6, 11-12, 14-19; Ex. 49,
Morrison Decl. ¶¶ 14-20; Ex. 50, Maldonado Decl. ¶¶ 15-16, 21-22; Ex. 52, Martellucci Decl. ¶¶
8, 11; Ex. 53, Pepicelli Decl. ¶¶ 14-24; Ex. 54, Rivera Decl. ¶¶ 8-10, 14-18; Ex. 42, Hofknecht
Decl. ¶¶ 6, 8, 10; Ex. 43, Rosenthal Decl. ¶¶ 9, 11, 15, 17-20.)  It instructed, among other things:

> Action Required
>
> 1.      Complete the information required (bullets 1-3) for all current and new
> hire tipped team members using the attached list of tip credit and cash wage
> amounts for your state. . . .
>
> 2.      Ensure all tipped employees receive the notification and acknowledge
> their understanding by signing the attached form. . . .
>
> The notification will be part of the new hire packet beginning May 13.

13

(Defs.' 56.1 Resp. ¶ 169; Ex. 1, Cunningham Decl. ¶ 13; Ex. 9, 2011 Tip Credit Memorandum & Attachments.)  Again, managers followed these directions, including at stores where the Plaintiffs were employed.  (Defs.' 56.1 Resp. ¶ 188; Ex. 40, Walsh Decl. ¶¶ 12-20; Ex. 42, Hofknecht Decl. ¶¶ 6, 8, 10; Ex. 43, Rosenthal Decl. ¶¶ 9, 11, 15, 17-20; Ex. 46, Kim Decl. ¶¶ 6, 11-12, 14-19; Ex. 49, Morrison Decl. ¶¶ 14-20; Ex. 50, Maldonado Decl. ¶¶ 15-16, 21-22; Ex. 52, Martellucci Decl. ¶¶ 8, 11; Ex. 53, Pepicelli Decl. ¶¶ 14-24; Ex. 54, Rivera Decl. ¶¶ 8-10, 14-18.)

Friday's provided its managers additional reminders that directed them to complete the "Tip Credit Notification" and to notify their tipped team members of various items, including their cash wage rate of pay, tip credit amount, and tip pool contribution.  For instance, in 2011, Friday's "Hot News" advised managers that:  "All tipped employees must receive their Tip Credit Notification, acknowledge their understanding by signing the form and the form must be placed in the Team Members' personnel files by May 16."  (Defs.' 56.1 Resp. ¶ 189.)  In 2013, Friday's "Just the Facts, Fridays" bulletin reminded managers that: "This is a reminder to ensure all tipped team members have acknowledged the notification form.  . . . Complete the information required (bullets 1-2) for all current and new hire tipped team members using the attached list of tip credit and cash wages amounts for your state . . . Ensure all tipped employees receive the notification and acknowledge their understanding by signing the attached form." (Defs.' 56.1 Resp. ¶ 193; Ex. 1, Cunningham Decl. ¶ 16; Ex. 14, 2013 Just The Facts.)   These reminders were effective in ensuring that tipped employees, including Plaintiffs, were repeatedly informed about Friday's pay practices.  (Defs.' 56.1 Resp. ¶ 193; Ex. 40, Walsh Decl. ¶ 9; Ex. 46, Kim Decl. ¶¶ 11-12; Ex. 49, Morrison Decl. ¶¶ 8, 11; Ex. 50, Maldonado Decl. ¶¶ 17-18; Ex. 51, Jensen Decl. ¶ 11; Ex. 52, Martellucci Decl. ¶ 6; Ex. 53, Pepicelli Decl. ¶ 11.)

Beginning on February 2, 2012, Friday's implemented use of another form promulgated by the DOL entitled "Notice and Acknowledgement of Pay Rate and Payday."  (Defs.' 56.1 Resp. ¶ 191; Ex. 1, Cunningham Decl. ¶ 15; Ex. 11, 2012 195(1) Notice.)  Friday's advised its managers that "it is now required for employers to give a written notice of wages to each new hire and to all employees, including managers, by February 1 of each year" and provided the "Frequently Asked Questions (FAQ)" guide promulgated by the DOL that explained the notice requirements of the new Wage Theft Prevention Act.  (*Id.*)  Friday's directed New York managers to "begin completing and issuing the notice as soon as possible."  (*Id.*)  For new hires, in particular, Friday's instructed managers to "[i]nclude this notification in the new hire packet" and "[d]uring the new hire paperwork process, complete the required information and obtain the new hire's signature."  (Defs.' 56.1 Resp. ¶ 191; Ex. 1, Cunningham Decl. ¶ 15; Ex. 11, 2012 195(1) Notice.)  Friday's sent reminders to managers that directed them to "provide team members with a written notification of their wages upon hire and annually by February 1" on January 15, 2013, and on January 13, 2014.  (Defs.' 56.1 Resp. ¶ 191; Ex. 1, Cunningham Decl. ¶ 15; Ex. 12, 2013 195(1) Notice; *see* Ex. 13, 2014 195(1) Notice.)  Again, managers followed this direction and provided the notices to current employees and as part of their new hire orientation process, including at stores where Plaintiffs were employed.  (Defs.' 56.1 Resp. ¶ 191; Ex. 49, Morrison Decl. ¶ 11; Ex. 50, Maldonado Decl. ¶¶ 17, 27; Ex. 51, Jensen Decl. ¶ 15; Ex. 52, Martellucci Decl. ¶¶ 20-21; Ex. 53, Pepicelli Decl. ¶ 11.)

Beginning on January 20, 2015, Friday's implemented yet another form entitled "NYS Pay/Tip Notice" for New York employees, which included many items of which tipped team members already were receiving notice, such as the cash wage, overtime rate, and tip credit amount, along with the new minimum wage rates effective in New York.  Fridays directed

managers to complete the form for all tipped employees:  "As pay rates change in various places across the country, it is important that all Team Members be provided notice by TGI Friday's Inc. regarding the state and federal minimum wage, cash wage, and tip credit amount. . . . Please have all existing Team Members, including all managers, complete, sign and date the applicable Notice no later than February 1, 2015.  In addition, as new Team Members are hired at your restaurant, they must complete, sign and date the appropriate notice on or before their first day of employment."  (Defs.' 56.1 Resp. ¶ 196; Ex. 1, Cunningham Decl. ¶ 20; Ex. 17, NYS Pay/Tip Notice.)  It is undisputed that managers followed this direction and provided the form to employees, including Plaintiffs. (Defs.' 56.1 Resp. ¶¶ 31, 62, 107)

### C.   Additional Manager Training

Friday's trained (and continues to train) its managers about the tip credit and completion of new hire forms before they started working in its restaurants.  Starting in 2010, Friday's required new managers to complete "Restaurant Management Essentials" training that included instruction on "Wage And Hour Practices."  (Defs.' Resp. 56.1 ¶ 181; Ex. 1, Cunningham Decl. ¶ 6; Ex. 4, Restaurant Management Essentials.)  As part of Restaurant Management Essentials training, Friday's instructs managers, among other things, that the law "permits restaurants in many states to use the gratuities earned by tipped employees to offset a portion of the minimum wage."  It explained that, "[i]f a tipped Team Member does not declare enough tips to bring their wage rate of pay to minimum wage, the deficit will be added to the Team Member's wage rate to ensure the Team Member is paid minimum wage.  This is an automated process and does not require input by managers."  (*Id.*; Defs.' 56.1 Resp. ¶ 181; Ex. 1, Cunningham Decl. ¶ 16; Ex. 4, Restaurant Management Essentials.)

Friday's also provided (and continues to provide) special training and instruction that reminds managers to complete required new hire paperwork for each new employee during

16

orientation.  (Defs.' Resp. 56.1 ¶ 190.)  The June 2011 "Orientation Facilitator's Guide"
instructed managers, among other things, that "before the Trainee arrives at Orientation, there's
some planning that's gonna have to happen . . . Assemble all paperwork, brochures, something to
write with and on for the Trainee: . . . Tip Credit Acknowledgment . . . Tip-Share Agreement
Form (if applicable) New Team Member Orientation Handout."  (Defs.' Resp. 56.1 ¶ 190; Ex. 1,
Cunningham Decl. ¶ 14; Ex. 10, Orientation Facilitator's Guide.)  The August 2014 Orientation
Facilitator's Guide continued to stress the importance of planning for and ensuring completion of
all new hire paperwork:  "So before the Trainee arrives at Orientation, there's some planning that
needs to happen. . . . Be aware and knowledgeable with each of these items . . . Tip Credit
Acknowledgement, Team Member Handbook Review & Acknowledgement . . . Tip Pool
Agreement Form (if applicable) . . . It's time to make the Trainee official.  Ensure that you have
all of these items complete before celebrating the completion of Orientation."  (Defs.' Resp. 56.1
¶ 195.)  Managers used this training to explain Friday's pay policies to tipped team members,
including Plaintiffs.  (Defs.' Resp. 56.1 ¶¶ 6, 29-33, 60-63, 99-102, 125, 150; Ex. 40, Walsh
Decl. ¶¶ 11-12, 16-20; Ex. 42, Hofknecht Decl. ¶ 5-6, 9-12;  Ex. 43, Rosenthal Decl. ¶¶ 12, 15-
20; Ex. 46, Kim Decl. ¶¶ 5-8, 10-18; Ex. 47, McHenry Decl. ¶¶ 4-22; Ex. 49, Morrison Decl. ¶¶
8-9, 14-23; Ex. 50, Maldonado Decl. ¶¶ 7, 9-12, 14, 19-29; Ex. 51, Jensen Decl. ¶¶ 5-9, 11-14,
17-22; Ex. 52, Martellucci Decl. ¶¶ 4, 8, 11-22; Ex. 53, Pepicelli Decl. ¶¶ 7-23.)

>        **D.      Posted Notices**

Friday's also prominently displayed up-to-date posters approved by the U.S. Department
of Labor ("US DOL") and the New York DOL in well-traveled areas of the restaurants wherein
Plaintiffs and Non-Party Putative Class Members worked.  Through the posters, Friday's
informed employees of the prevailing minimum wage and overtime rates.  Friday's also advised
its employees that "[a] specified allowance may be credited toward the minimum wage for tips

17

earned" and "[i]f an employee's tips combined with the employer's cash wage . . . do not equal the minimum hourly wage, the employer must make up the difference."  (Defs.' 56.1 Resp. ¶ 199; Ex. 1, Cunningham Decl. ¶ 22; Ex. 19, Posters; Ex. 42, Hofknecht Decl. ¶¶ 12-13.)  Managers ensured that these posters were prominently displayed in the restaurants where Plaintiffs worked.  (*Id.*; Ex. 40, Walsh Decl. ¶¶ 23-24; Ex. 42, Hofknecht Decl. ¶¶ 12-13; Ex. 43, Rosenthal Decl. ¶¶ 23-24; Ex. 46, Kim Decl. ¶ 20; Ex. 47, McHenry Decl. ¶ 21; Ex. 49, Morrison Decl. ¶ 23; Ex. 50, Maldonado Decl. ¶ 29; Ex. 51, Jensen Decl. ¶ 26; Ex. 52, Martellucci Decl. ¶ 22; Ex. 53, Pepicelli Decl. ¶ 25; Ex. 54, Rivera Decl. ¶¶ 19-20.)

## II.   PLAINTIFFS WERE PAID AT LEAST MINIMUM WAGE AND RECEIVED REQUIRED NOTICES AND WAGE STATEMENTS

### A.   Plaintiff Reid

Reid was paid at least minimum wage for all hours that she worked.  (Defs.' Resp. 56.1 ¶¶ 8-9, 154-155; Ex. 20, Colson Decl. ¶¶ 8, 12; Ex. 22, Payroll Records; Ex. 23, Reid Wage Statements.)  During her short tenure with Defendants, Reid received notice of her hourly rate, tip credit amount, regular payday, and other information in a number of ways.  (Defs.' Resp. 56.1 ¶¶ 6-10).  Upon hire, Reid signed a Tip Credit Notification wherein, among other things, Friday's informed her that it would pay her a cash wage of $5.00 per hour and credit a portion of her tips per hour as wages, *i.e.*, that it would take a "tip credit."  (Defs.' Resp. 56.1 ¶ 6).  Friday's provided Reid wage statements that reflected the hourly rate that Friday's paid her and the "tip credit" amount, or the amount of tips that Reid received from customers that Friday's credited toward minimum wage for each pay period.  (Defs.' Resp. 56.1 ¶ 6; Ex. 20, Colson Decl. ¶¶ 10, 12; Ex. 23, Reid Wage Statements.)

Friday's provided Reid a copy of Friday's Team Member Handbook.  Friday's informed Reid that she might make less than minimum wage before tips and that:  "If you don't make

minimum wage with your hourly rate of pay and tips combined, we'll make up the difference."
(Defs.' Resp. 56.1 ¶ 7.)  Reid certified in writing that she "received and read" the Handbook and
fully understood all of its contents, which also included "starter questions for you to go over with
your supervisor," including "Am I in a tip credit state?  How much will I be paid by Friday's per
hour?"  (Defs.' Resp. 56.1 ¶ 6.)  Friday's provided conspicuous notice of the minimum wage
applicable during Reid's employment on posters displayed in well-traveled areas of the Valley
Stream restaurant where Reid worked.  In addition to broadcasting the applicable minimum
wage, and reminding Reid of the overtime rate, Friday's informed Reid that "[a] specified
allowance may be credited toward the minimum wage for tips earned."  (*Id.*; Ex. 1, Cunningham
Decl. ¶ 22; Ex. 19, Posters; Ex. 42, Hofknecht Decl. ¶¶ 12-13.)

Friday's also trained its managers, including Reid's manager, Nicholas Hofknecht,
regarding use of the "tip credit."  (Defs' Resp. 56.1 ¶ 8; Ex. 42, Hofknecht Decl. ¶¶ 3-9.)
Through this training, as well as ongoing reminders, Hofknecht understood that Friday's used
gratuities earned by tipped Team Members to offset a portion of the minimum wage and that,
"[i]f tipped Team Members did not declare enough tips to bring their rates of pay to minimum
wage, Friday's added the deficit to the Team Member's wage rate to ensure the Team Member
received minimum wage."  (*Id.*)  Friday's provided Hofknecht, among other things, a schedule of
the minimum wage, tip credit, and minimum cash wage per hour, by state, and made such a
schedule available on MENU, a portion of Friday's intranet, accessible by all managers so that
he could provide notice of wages and explain the "tip credit" to each new hire.  (*Id.*)  Because of
the training that Friday's provided, Hofknecht, in fact, was able to provide such notice to each
new hire such as Reid.  (*Id.*)

### B.      Plaintiff Mackey

Mackey was paid at least minimum wage for all hours that he worked.  (Defs.' Resp. 56.1 ¶¶ 58, 160-162; Ex. 22, Payroll Records; Ex. 26, Mackey Wage Statements.)  Friday's provided wage information and pay policies to Plaintiff Mackey in a number of ways.  (Defs.' Resp. 56.1 ¶¶ 56-60).

Mackey's wage statements reflect the hourly rate that Friday's paid Mackey, the amount of any tips that Friday's applied toward the minimum wage, and his regular overtime rate when he worked more than 40 hours per week.  (Defs.' Resp. 56.1 ¶ 60.)  Mackey also received a copy of Friday's Team Member Handbook which informed him:  "If you don't make minimum wage with your hourly rate of pay and tips combined, we'll make up the difference."  (Defs.' Resp. 56.1 ¶ 58.)  Friday's provided conspicuous notice of the minimum wage applicable during Mackey's employment on posters displayed in well-traveled areas of the Forrest Hills and Walkill restaurants where Mackey worked.  In addition to broadcasting the applicable minimum wage, and reminding Mackey of the overtime rate, Friday's informed Mackey that "[a] specified allowance may be credited toward the minimum wage for tips earned."   (Defs.' Resp. 56.1 ¶ 56.)

Mackey's managers ensured that they conveyed information about tipped Team Members' cash wage rates of pay and tip credit amounts, and they obtained written acknowledgments from Team Members to show that they understood these issues.  (Defs.' Resp. 56.1 ¶ 57; Ex. 51, Jensen Decl. ¶ 12; Ex. 49, Morrison Decl. ¶¶ 9, 16; Ex. 53, Pepicelli Decl. ¶¶ 7, 16; Ex. 47, McHenry Decl. ¶¶ 9, 11, 14.)  Mackey acknowledges that he was aware of the New York State minimum wage and that he was aware that his direct wage from Friday's was less than the minimum wage.  (Defs.' Resp. 56.1 ¶ 57, Plaintiffs' Ex. 18, Mackey Dep. at 147:6-20.)

### C.      Plaintiff Zorrilla

Zorrilla was paid at least minimum wage for all hours that he worked.  (Defs.' Resp. 56.1 ¶¶ 57, 156-159; Ex. 22, Payroll Records; Ex. 25, Zorrilla Wage Statements.)  Plaintiff Zorrilla was also provided with notices about his wages and Friday's pay policies in a number of ways.  (Defs.' Resp. 56.1 ¶¶ 29-32).  Friday's provided Zorrilla wage statements throughout his employment that state his regular hourly rate, his overtime rate, the amount of the tip credit (if any) that Friday's applied, his regular payday, and any extra payment needed to ensure that Zorrilla made at least minimum wage.  (Def.'s Resp. 56.1 ¶ 32; Ex. 20, Colson Decl. ¶ 14; Ex. 25, Zorrilla Wage Statements.)

Zorrilla's manager explained the use of the tip credit to him during orientation and had Zorrilla sign a copy of the Tip Credit Notification form.  (Defs.' Resp. 56.1 ¶ 32; Ex. 46, Kim Decl. ¶¶ 10, 14, 17-18; *see also* Ex. 47, McHenry Decl. ¶¶ 9, 11, 14.)  On February 2, 2013 and January 16, 2014, Zorrilla also received and signed notices entitled "Notice and Acknowledgment of Pay Rate and Payday"  that informed him of his regular rate of pay per hour.  (Defs.' Resp. 56.1 ¶ 29; Plaintiffs' Exs. 15 and 16, Annual Notices; Ex. 46, Kim Decl. ¶¶ 3, 12, 14; Ex. 47, McHenry Decl. ¶ 9.)

Zorrilla also received a copy of Friday's Team Member Handbook which informed him: "if you don't make minimum wage with your hourly rate of pay and tips combined, we'll make up the difference."  Zorrilla's managers informed tipped Team Members of their hourly wage, the tip credit, and that Friday's would make up the difference if they did not receive enough tips to bring them up to the minimum wage.  (Defs.' Resp. 56.1 ¶ 30; Ex. 47, McHenry Decl. ¶¶ 9, 11, 14, 15.)  Information about minimum wages and the use of tip credit was also available on posters at the restaurants where Zorrilla worked.  (Defs.' Resp. 56.1 ¶ 29.)  Zorrilla

21

acknowledges that he knew his regular hourly rate and understood that Friday's applied a tip credit.  (Defs.' Resp. 56.1 ¶¶ 30, 33, Plaintiffs' Ex. 12, Zorrilla Dep. at 222:4-225:3.)

## III.  NON-PARTY PUTATIVE CLASS MEMBERS WERE PAID AT LEAST MINIMUM WAGE AND RECEIVED COMPLIANT NOTICES AND WAGE STATEMENTS

### A.  Non-Party Putative Class Member Pink

Pink was paid at least minimum wage for all hours that he worked.  (Defs.' Resp. 56.1 ¶¶ 165-166; Ex. 20, Colson Decl. ¶¶ 6-8; Plaintiffs' Ex. 41, Pink Wage Statements; Ex. 22, Payroll Records.)  Pink received notice of his wages and Friday's pay policies in a number of ways. (Defs.' Resp. 56.1 ¶ 125).  Pink received written notice of his regular hourly rate of pay and the amount of the tip credit in Tip Credit Notification forms that he signed on April 24, 2012, April 27, 2012, January 13, 2013 and March 15, 2014.  (*Id.*; Ex. 40, Walsh Decl. ¶ 5, Ex. 41, Pink Personnel File at 11, 16, 22, Plaintiffs' Ex. 40)  Pink was also provided notice of his hourly rate of pay, tip credit amount, and overtime hourly rate of pay through his bi-weekly pay stubs. (Defs.' Resp. 56.1 ¶ 125; Plaintiffs' Ex. 41, Pink Wage Statements.)  Pink's managers provided information to new hires during orientation regarding their regular hourly rate of pay, overtime hourly rate of pay, the amount of tip credit Friday's claimed against the minimum wage, and the fact that if employees did not earn enough in tips to bring them to the minimum wage, Friday's would make up the difference.  (Defs.' Resp. 56.1 ¶ 125; Ex. 40, Walsh Decl. ¶¶ 11-22; Ex. 52, Martellucci Decl. ¶¶ 2, 8, 14-18; Ex. 51, Jensen Decl. ¶ 17-18, 22; see Ex. 50, Maldonado Decl. ¶¶ 7, 23-24; Ex. 54, Rivera Decl. ¶ 18.)  Pink also received copies of Friday's Team Member Handbook which informed him:  "[I]f you don't make minimum wage with your hourly rate of pay and tips combined, we'll make up the difference."  (Defs.' Resp. 56.1 ¶ 125; Ex. 40, Walsh Decl. ¶ 5; Ex. 41, Pink Personnel File at 10; Ex. 51, Jensen Decl. ¶ 19.)  Notices about minimum wages and the use of tip credits was also available on posters at the restaurant where Pink

22

worked.  (Defs.' Resp. 56.1 ¶ 125; Ex. 1, Cunningham Decl. ¶ 20; Ex. 19, Posters; Ex. 40, Walsh

Decl. ¶¶ 23-24; Ex. 51, Jensen Decl. ¶ 26.)  Pink may have evidence that shows that he received

notice in additional forms, but he chose not to search for such documents.  (Defs.' Resp. 56.1 ¶

125; Ex. 37, Pink Dep. at 51:6-14, 53:4-9.)

### B.      Non-Party Putative Class Member Ellis

Ellis was paid at least minimum wage for all hours that he worked.  (Defs.' Resp. 56.1 ¶¶

163-164; Ex. 20, Colson Decl. ¶¶ 6-8, 16; Ex. 27, Ellis Wage Statements; Ex. 22, Payroll

Records.)  Ellis received notice of his wages and Friday's pay policies in a number of ways.

(Defs.' Resp. 56.1 ¶ 97).  The manager who interviewed Ellis explained Friday's pay practices.

(Defs.' Resp. 56.1 ¶ 97; Ex. 43, Rosenthal Decl. ¶ 5.)  During onboarding, the same manager

explained the tip credit to Ellis and required him to complete a Tip Credit Notification and

Notice and Acknowledgment of Pay Rate and Payday.  (Defs.' Resp. 56.1 ¶ 97; Ex. 43,

Rosenthal Decl. ¶¶ 12, 15-17, 19-20.)

At the time of hire, Friday's provided Ellis a copy of the 2014 Team Member Handbook,

through which it notified him that "[y]our pay statement . . . lets you know your . . . rate of pay"

and "[i]n some states, you may make less than minimum wage before tips. . . However, we

promise that if you don't make minimum wage with your hourly rate of pay and tips combined,

we'll make up the difference."  (Defs.' Resp. 56.1 ¶ 97; Pls.' Ex. 31, Ellis Dep. at 99:14-100:9;

Ex. 28, Rabe Decl. ¶ 9; Ex. 34, Sample Receipt of Handbook; Ex. 1, Cunningham Decl. ¶¶ 4, 8-

9; Ex. 8, April 2014 Handbook at CR00001508.)  Ellis also completed a Tip Credit Notification

form as part of Friday's onboarding process.  (Defs.' Resp. 56.1 ¶ 97; Ex. 1, Cunningham Decl. ¶

16; Ex. 55, Ellis Stripes U Transcript.)

Ellis admits that he received and signed Friday's Tip Credit Notification.  (Defs.' Resp.

56.1 ¶¶ 97, 98; Plaintiffs' Ex. 31, Ellis Dep. at 101:6-23; Ex. 28, Rabe Decl. ¶ 10; Ex. 35, "Dear

Tipped Team Member" Letter).  Information about minimum wages and the use of tip credits

was also available on posters at the restaurant where Pink worked.  (Defs.' Resp. 56.1 ¶¶ 97).

Ellis received wage statements that listed his regular hourly rate and tip credit.  (*Id.*)  Ellis admits

that he was notified of the hourly rates that he was paid as a server and as an expeditor.  (Defs.'

Resp. 56.1 ¶¶ 109, 112; Plaintiffs' Ex. 31, Ellis Dep. at 101:6-103:25; 288:21-289:8.)

## STANDARD OF REVIEW

Summary judgment is appropriate when there are no genuine issues of material fact and

the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).  In this context,

"[a] fact is 'material' when it might affect the outcome of the suit under governing law," and

"[a]n issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict

for the nonmoving party."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir.

2007).  "In assessing the record to determine whether there is [such] a genuine issue to be tried,

[the court is] required to resolve all ambiguities and draw all permissible factual inferences in

favor of the party against whom summary judgment is sought."  *Gorzynski v. JetBlue Airways

Corp.*, 596 F.3d 93, 101 (2d Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

255 (1986)).  Here, resolving all ambiguities and drawing all permissible factual inferences in

favor of Defendants, there are genuine issues of material fact on multiple aspects of the elements

of Plaintiffs' claims that require the Court to deny Plaintiffs' Motion For Partial Summary

Judgment.

## CHOICE OF LAW

"A federal court hearing state law claims under its supplemental jurisdiction applies the

conflict of law rules of the state in which it sits."  *Great Am. Ins. Co. of New York v. TA

Operating Corp.*, No. 06 Civ. 13230, 2008 WL 5335317, at *4 (S.D.N.Y. Dec. 8, 2008).  New

York law, as defined and interpreted by New York state courts, governs substantive questions

24

before the Court. A federal court considering application of New York law must "apply New York state law as defined and interpreted by New York state courts." *Vumbaca v. Terminal One Grp. Ass'n L.P.*, 859 F. Supp. 2d 343, 375 (E.D.N.Y. 2012); *see also Kachalsky v. Cacace*, 817 F. Supp. 2d 235, 252-53 (S.D.N.Y. 2011), *aff'd sub nom., Kachalsky v. Cty. of Westchester*, 701 F.3d 81 (2d Cir. 2012). Where the New York state courts have not addressed the precise issue in dispute, "it is [the federal court's] responsibility to predict how the [New York]'s highest court would rule." *O'Mara v. Town of Wappinger*, 485 F.3d 693, 698 (2d Cir. 2007) (citing *DiBella v. Hopkins*, 403 F.3d 102, 111 (2d Cir. 2005). Federal law governs procedural issues before the Court. "A rule is procedural if it governs only the manner and the means by which the litigants' rights are enforced, not the rules of decision by which the court will adjudicate those rights." *Boelter v. Hearst Commc'ns, Inc*., No. 15 Civ. 3934, 2016 WL 3369541, at *7 (S.D.N.Y. June 17, 2016). Federal Rule of Civil Procedure 23 is procedural, and controls when a class action lawsuit can be filed in federal court, even when such a case in federal court will be decided based on state law. *See Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398-99 (2010).

## ARGUMENT

**I.      PLAINTIFFS' MOTION SHOULD BE DENIED BECAUSE A RULING ON THE MERITS WOULD VIOLATE THE RULE AGAINST ONE-WAY INTERVENTION**

Any ruling on Plaintiffs' premature motion for summary judgment would violate the rule against one-way intervention. Through their motion for summary judgment, Plaintiffs seek a preemptive ruling on the merits of the claims of five individuals which, if successful, they will seek to parlay into class-wide findings but, if unsuccessful, they will ignore as not binding on absent class members. The Rules expressly prohibit such gamesmanship.

Rule 23 requires the Court to determine whether class certification is appropriate before rendering a decision on the merits.  *See* Fed. R. Civ. P. 23(c); *Premier Elec. Constr. Co. v. National Elec. Contractors Ass'n, Inc*., 814 F.2d 358, 363 (7th Cir. 1987) ("Rules 23(c)(1) and (2) together force class members to choose the binding effect of the judgment in advance of decision on the merits.").  Indeed, in 1966, the drafters amended Rule 23 for the specific purpose of prohibiting "one-way intervention."  *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 545-49 (1974).  In other words, the drafters amended the Rule because they found it "unfair to allow members of a class to benefit from a favorable judgment without subjecting themselves to the binding effect of an unfavorable one."  *Id.* at 547.

As the Seventh Circuit aptly has explained, "[o]ne of the complaints about the old Rule 23 was that it allowed courts to entertain what were called 'spurious class actions' – actions for damages in which a decision for or against one member of the class did not inevitably entail the same result for all. . . . A victory by the plaintiff would be followed by an opportunity for other members of the class to intervene and claim the spoils; a loss by the plaintiff would not bind the other members of the class."  *Premier Elec. Constr. Co.,* 814 F.2d at 362.  A principal purpose of the 1966 revision of Rule 23 was to end "one-way intervention."  *Id.*  The drafters of new Rule 23 assumed that only parties could take advantage of a favorable judgment.  Given that assumption, it was a "simple matter" to end one-way intervention:

> First, new Rule 23(b)(3) eliminated the "spurious" class suit and allowed the prosecution of damages actions as class suits with preclusive effects.  Second, new Rule 23(c)(3) required the judgment in a Rule 23(b)(3) class action to define all members of the class.  These members of the class were to be treated as full-fledged parties to the case, with full advantage of a favorable judgment and the full detriments of an unfavorable judgment.  Third, new Rule 23(c)(1) required the district courts to decide whether a case could proceed as a class action "as soon as practicable" after it was filed.  The prompt decision on certification would both fix the identities of the parties to the suit and prevent the absent class members from waiting to see how things turned out before deciding what to do.

> Finally, new Rule 23(c)(2) allowed members of a 23(b)(3) class action to opt out immediately after the certification in accordance with 23(c)(1). So a person's decision whether to be bound by the judgment – like the court's decision whether to certify the class – would come well in advance of the decision on the merits.

*Id.* Under the scheme of the revised Rule 23, a member of the class must "cast his lot" at the beginning of the suit and all parties are bound, for good or ill, by the results.  *Id.*  As the Advisory Committee put it: "Under proposed subdivision (c)(3), one-way intervention is excluded; the action will have been early determined to be a class or a nonclass action, and in the former case the judgment, whether or not favorable, will include the class."  Fed R. Civ. P. 23 Advisory Committee's Note To 1966 Amendment.

Numerous courts have confirmed that Rule 23 grants a defendant the right to insist that the court address class certification issues before ruling on the merits.  *See, e.g., Schwarzschild v. Tse*, 69 F.3d 293, 295 (9th Cir. 1995) ("[D]istrict courts generally do not grant summary judgment on the merits of a class action until the class has been properly certified and notified."); *Gomez v. Rossi Concrete, Inc.*, No. 08-CV-1442, 2011 WL 666888, at *1 (S.D. Cal. Feb. 17, 2011) ("Absent extraordinary circumstances, it is appropriate to postpone ruling on a plaintiff's motion for summary judgment until after class definition issues are settled, notice has been given, and the period for class members to exclude themselves has expired."); *Mendez v. Radec Corp.*, 260 F.R.D. 38, 48 (W.D.N.Y. 2009) ("[D]efendants have the right – should they choose to exercise it – to have class certification issues decided first, before any decision on the merits of the plaintiffs' claims.").  The virtue of this sequence is that it promotes judicial efficiency, by postponing merits rulings until such time as all parties may be bound, and fairness, by ensuring that parties bear equally the benefits and burdens of favorable and unfavorable merits rulings. As one court colorfully stated, the Rule protects defendants from "being pecked to death by ducks."  *Fireside Bank v. Super. Ct.*, 155 P.3d 268, 274 (Cal. 2007).

Whereas Defendants have strong arguments in opposition to Plaintiffs' Motion – and Plaintiffs' Motion fails as a matter of law – Defendants in no way consent or have consented to a ruling on the merits of these claims prior to a ruling on class certification.  *Gessele v. Jack-in-the-Box, Inc.,* No. 10-CV-960, 2012 WL 3686274, at *3 (D. Ore. Aug. 24, 2012) (holding that "plaintiffs cannot seek summary judgment prior to class certification if defendant has not waived the one-way intervention doctrine, and defendant has not waived that right by simply agreeing to the initial briefing schedule."); *Darrington v. Assessment Recovery of Wash.*, *LLC*, No. 13-C-0286, 2014 WL 3858363, at *3-4 (W.D. Wash. Aug. 5, 2014) (finding that defendant did not waive one-way intervention argument by threatening to cross-motion for summary judgment); *Tschudy v. J.C. Penney Corp., Inc.*, No. 11-CV-1011, 2015 WL 5098446, at *6-7 (S.D. Cal. Aug. 28, 2015) (rejecting argument that defendant waived right to invoke rule against one-way intervention despite defendant cross-moving for partial summary judgment).  To the contrary, Defendants have not sought any rulings on the merits and continue to maintain that Plaintiffs' attempt to obtain an early, piecemeal ruling on their NYLL claims is premature.  *See* ECF No. 284.[2]  Accordingly, Plaintiffs' Motion for Partial Summary Judgment should be denied on this ground alone.

## II.     PLAINTIFFS DO NOT REPRESENT AND CANNOT PURSUE SUMMARY JUDGMENT ON BEHALF OF NON-PARTY PUTATIVE CLASS MEMBERS

Plaintiffs Zorrilla, Mackey, and Reid cannot obtain partial summary judgment for the Non-Party Putative Class Members on whose behalf they purport to bring their motion.  Because the Court has not granted class certification, the Non-Party Putative Class Members are not

---

[2] The rule against one way intervention bars an early ruling on the merits of claims brought under Rule 23 even in cases where conditional certification has been granted under the FLSA.  *See, e.g., Hart v. Crab Addison, Inc.*, No. 13-CV-6458, 2016 WL 4010064, at *1-2 (W.D.N.Y. July 26, 2016) (recognizing that rule against one way intervention likely would apply but allowing plaintiff to withdraw partial motion for summary judgment on other grounds); *Gessele*, 2012 WL 3686274, at *1-2.

parties to the claims on which Plaintiffs seek partial summary judgment, and Plaintiffs do not have standing to represent them.

First, the Non-Party Putative Class Members – Pink and Ellis – are not parties to the state law claims on which Plaintiffs seek partial summary judgment.  "A 'party' to litigation is '[o]ne by or against whom a lawsuit is brought,' or one who 'become[s] a party by intervention, substitution, or third-party practice.'"  *See U.S. ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 933 (2009) (citation omitted); *Karcher v. May*, 484 U.S. 72, 77 (1987).  Unnamed individuals are mere putative class members, and are not parties to Plaintiffs' claims, unless and until the Court certifies a class.  *Smith v. Bayer Corp.*, 564 U.S. 299, 313-14 (2011).  Pink and Ellis, accordingly, are not parties to Plaintiffs' state law claims.

Although the Non-Party Putative Class Members returned "opt-in" consent forms, they elected to join the suit for the sole purpose of pursuing claims under the Fair Labor Standards Act ("FLSA").  The consent forms provide:  "I consent to be a party plaintiff in this lawsuit in order to seek redress for violations of the Fair Labor Standards Act, pursuant to 29 U.S.C. § 216(b)."  *See, e.g.*, ECF No. 340.  As the "plain language" of the consent forms makes clear, the individuals opted-in only for purposes of such claims and did not thereby become parties to Plaintiffs' state law claims.  *See Saleem v. Corp. Transp. Grp., Ltd.*, No. 12 Civ. 8450, 2014 WL 7106442, at *1 (S.D.N.Y. Dec. 9, 2014), *appeal docketed*, No. 15-88 (2d Cir. Jan. 7, 2015) (finding "no basis to conclude that the Opt-In Plaintiffs joined the named Plaintiffs in bringing claims under the NYLL" and, accordingly, holding that it "had no basis to rule on the NYLL claims of anyone other than the named Plaintiffs") (citations omitted); *see Bradford v. CVS Pharmacy, Inc.*, No. 1:12-CV-1159, 2013 WL 5587350, at *3 (N.D. Ga. Oct. 10, 2013) (holding

that "opt-in plaintiffs" only opted into "the unpaid overtime FLSA claim," not the named

plaintiff's declaratory judgment claim).

Second, because the Court has not certified a class, Plaintiffs lack standing to represent

the Non-Party Putative Class Members in connection with any state law claims.  "[A] plaintiff

who files a proposed class action cannot legally bind members of the proposed class before the

class is certified."  *Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1349 (2013) (citing

*Smith,* 564 U.S. at 318); *see also Hartley v. Suburban Radiologic Consultants, Ltd.*, 295 F.R.D.

357, 367-69 (D. Minn. 2013) (holding that a plaintiff who files a proposed class action cannot

legally bind members of the proposed class before the class is certified) (citing *Standard Fire

Ins. Co.*, 133 S.Ct. at 1349).

In *Smith*, 564 U.S. at 313, for instance, defendant argued that Smith – an unnamed

member of a proposed but uncertified class – qualified as a party to the litigation or,

alternatively, that the district court's judgment had a binding impact on Smith.  Because the

district court had not certified a class action, the Supreme Court rejected both contentions.  *Id.*

The Supreme Court held that the first claim "ill-comports with any proper understanding of what

a 'party' is," and the second contention ignored binding precedent that, in the absence of class

certification, "the precondition for binding Smith was not met.  Neither a proposed class action

nor a rejected class action may bind nonparties."  *Id.* at 313-15; *see Chevron USA Inc. v. School

Bd. Vermilion Parish*, 294 F.3d 716, 720 (5th Cir. 2002) (noting that the district court's order did

not affect the rights of any putative class member because no class action was certified and,

therefore, no member of any putative class was before the district court); *Sandoval v. Ali*, 34 F.

Supp. 3d 1031, 1041 (N.D. Cal. 2014) ("[A]lthough Plaintiffs point out that a number of

individuals have filed opt-in notices under the FLSA, these individuals are not parties to Plaintiffs' state law claims and cannot confer standing on Plaintiffs.").

Similarly, here, this Court has not certified this case as a class action pursuant to Rule 23. Thus, Plaintiffs do not have standing to represent Pink and Ellis, or any putative class member pursuing state law claims.  Accordingly, Plaintiffs cannot pursue partial summary judgment on any state law claims of Pink or Ellis or obtain any binding ruling on their behalf.

## III.   PLAINTIFFS HAVE NOT DEMONSTRATED THAT DEFENDANTS JOINTLY EMPLOYED PLAINTIFFS OR NON-PARTY PUTATIVE CLASS MEMBERS

Plaintiffs cannot obtain partial summary judgment on their claims against Carlson Restaurants Inc. and Carlson Restaurants Worldwide, Inc. (collectively, "Carlson") because Plaintiffs have not offered any evidence that Carlson was their employer within the meaning of the NYLL.  *See* Fed. R. Civ. P. 56(a) and (c).  Plaintiffs' motion for partial summary judgment against Carlson, therefore, must be denied.

The definitions of an employer under the FLSA and NYLL are generally co-extensive, and courts regularly apply the same test to determine whether entities are joint employers.  *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 940 (S.D.N.Y. 2013).  Two or more entities may be deemed joint employers only where they "are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer."  29 C.F.R. § 791.2(b). "[D]etermination of whether the employment by the employers is to be considered joint employment or separate and distinct employment for purposes of the act depends upon all the facts in the particular case."  29 C.F.R. § 791.2(a).

Courts in the Second Circuit apply the "economic reality" test to determine whether two or more entities are joint employers.[3]  Under this test, courts examine whether the putative employer exerts formal or functional control over the employee.  *See Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 72 (2d Cir. 2003).  To determine formal control, courts evaluate whether the alleged employer:  "(1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records."  *Barfield v. N.Y. City Health & Hosp. Corp.*, 537 F.3d 132, 142 (2d Cir. 2008).  To determine whether the alleged employer exercised functional control over the employee, courts evaluate:  (1) whether the alleged employer's premises and equipment were used for the Plaintiffs' work; (2) whether Plaintiffs shifted from one putative joint employer's premises to that of another; (3) the extent to which the work performed by Plaintiffs was integral to the overall business operation; (4) whether Plaintiffs' work responsibilities remained the same regardless of where they worked; (5) the degree to which the alleged employer or its agents supervised Plaintiffs' work; and (6) whether Plaintiffs worked exclusively or predominantly for one Defendant.  *Zheng v. Liberty Apparel Co. Inc.,* 355 F.3d 61, 71 (2d Cir. 2003).  However, "[n]o one factor is dispositive; a court is 'free to consider any other factors it deems relevant.'"  *Id.* at 71-72.

Here, Plaintiffs have not submitted any facts establishing that Carlson exerted direct or indirect control over Plaintiffs or Non-Party Putative Class Members.  Plaintiffs have not

---

[3] Courts in the Second Circuit generally do not utilize the single integrated enterprise test to evaluate joint employer claims in FLSA or NYLL cases.  *See, e.g., Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 940 n.16 (S.D.N.Y. 2013) ("Plaintiffs ask the Court to apply a different test – the "integrated enterprise test" . . . – to the issue of joint employer liability. . . . The Court declines to do so. . . . in this Circuit, the economic reality test, consisting of the formal and functional inquiries, is instead used.").  Even if this test applied, there is no evidence in the record to support a finding that Carlson was the joint employer of the Plaintiffs.

introduced any evidence that Carlson had the authority to hire or fire Plaintiffs, supervised, or controlled Plaintiffs' schedules or conditions of employment, determined or set Plaintiffs' method of payment, or maintained Plaintiffs' employment records.  Similarly, Plaintiffs have not demonstrated that Carlson exercised any functional control over Plaintiffs.  Indeed, Plaintiffs have not introduced any evidence that Plaintiffs worked at any time on the premises of Carlson, utilized at any time equipment provided by Carlson, performed work integral to Carlson's business operation, were supervised at any time by Carlson or its agents, or worked at any time exclusively or predominantly for Carlson.

Plaintiffs have not offered any evidence to demonstrate that Carlson qualified as their employer under the economic reality test.  Accordingly, Plaintiffs' motion for partial summary judgment against Carlson fails.

## IV.   PLAINTIFFS CANNOT OBTAIN SUMMARY JUDGMENT ON THEIR TWO CLAIMS THAT DEFENDANTS VIOLATED "TIP CREDIT NOTICE" REGULATIONS

Plaintiffs cannot obtain summary judgment on their "tip credit notice" claims because they have not identified any statutory authority that creates the obligations they seek to impose or the cause of action they seek to pursue.  Friday's fulfilled the plain requirements of the NYLL by ensuring that Plaintiffs received at least minimum wage for all hours worked.  To the extent that Plaintiffs seek to interpret regulations as adding notice requirements that do not exist in the clear statutory scheme, Plaintiffs seek to render those regulations invalid.

### A.   The Undisputed Facts Demonstrate That Friday's Paid Plaintiffs All Wages To Which They Were Entitled Under The Law

Plaintiffs' claims that Defendants somehow forfeited a "tip credit" have no basis in law. Contrary to Plaintiffs' assertion, New York Labor Law does not address a "tip credit" and, rather, requires employers to pay tipped workers a set "cash wage."  It is undisputed that Friday's

paid Plaintiffs and Non-Party Putative Class Members the required cash wage throughout their employment.

The New York State Legislature (the "Legislature") has set forth plain requirements for payment of food service workers who receive tips.  Specifically, since 2004, the Legislature has allowed employers to pay food service workers who receive tips a "cash wage" less than the minimum wage "provided that the tips of such an employee, when added to such cash wage, are equal to or exceed the minimum wage."  NYLL § 652(4).  The statute provides:

> Notwithstanding subdivisions one and two of this section, the wage for an employee who is a food service worker receiving tips shall be a cash wage of at least [$3.30] per hour on or after March [31, 2000]; [$3.85] on or after January [1, 2005]; at least [$4.35] on or after January [1, 2006]; and at least [$4.60] on or after January [1, 2007], provided that the tips of such an employee, when added to such cash wage, are equal to or exceed the minimum wage in effect pursuant to subdivision one of this section.

NYLL § 652(4).  Employers may pay food service workers the cash wage, so long as tips, when added to the cash wage, equal or exceed the minimum wage.

The Legislature has never incorporated a "tip credit" concept in the statutory scheme and has never conditioned the payment of the aforementioned "cash wage" on provision of any "tip credit notice."  *Id.*  Indeed, the Legislature enacted separate legislation that governs the notice that employers must provide their employees regarding their wages.  *See* NYLL § 195(1); NYLL § 195(3).

It is undisputed that Friday's paid Plaintiffs and Non-Party Putative Class Members all such wages.  That is, it is undisputed that Friday's paid each Plaintiff and Non-Party Putative Class Member at least the cash wage, and it is undisputed that, with tips, Plaintiffs and Non-Party Putative Class Members received at least the minimum wage.  Plaintiffs' claims that Defendants somehow "forfeited" the "tip credit," therefore, fail as a matter of New York law.

34

21399126v.9

**B.      Plaintiffs Have Not Invoked Any Statutory Authority For Their "Tip Credit Notice" Claims**

Plaintiffs base their motion on the fundamentally false premise that a "legislature" enacted the regulations on which they base their claims.  (ECF No. 413 at 22.)  Such a proposition is false.  Rather than New York law, Plaintiffs base their "tip credit notice" claims on regulations issued by the New York DOL, an administrative agency.  As the product of an administrative agency, such regulations are not the work of the Legislature and do not create the legal obligations that Plaintiffs seek to enforce.

Plaintiffs move for partial summary judgment claiming that Defendants forfeited the "tip credit" by failing to comply with "tip credit notice" requirements set forth in two Minimum Wage Orders issued by the New York Department of Labor, including 12 N.Y.C.R.R. § 137-2.2 (repealed eff. Jan. 1, 2011) and 12 N.Y.C.R.R. § 146-2.2(a).  (ECF No. 270 at 15.)  Plaintiffs claim, prior to January 1, 2011, Defendants violated N.Y.C.R.R. § 137-2.2 (repealed eff. Jan. 1, 2011), which provided:

> Every employer covered by this Part shall furnish to each employee a statement with every payment of wages listing hours worked, rates paid, gross wages, allowances, if any, claimed as part of the minimum wage, deductions and net wages.

12 N.Y.C.R.R. § 137-2.2 (repealed eff. Jan. 1, 2011).  Plaintiffs claim that, after January 1, 2011, Defendants violated 12 N.Y.C.R.R. §§ 146-1.3 and 146-2.2, which provided:

> An employer may take a credit toward[] the basic minimum hourly rate if a service employee or food service worker receives enough tips and if the employee has been notified of the tip credit as required in section 146-2.2 of this Part.
>
> ***
> (a) Prior to the start of employment, an employer shall give each employee written notice of the employee's regular hourly pay rate, overtime hourly pay rate, the amount of tip credit, if any, to be taken from the basic minimum hourly rate, and the regular payday.  The notice shall also state that extra pay is required if tips are insufficient to bring the employee up to the basic minimum hourly rate.

<div align="center">35</div>

12 N.Y.C.R.R. §§ 146-1.3, 146-2.2.

Plaintiffs cannot claim that either regulation provides a basis on which individual Plaintiffs can assert causes of action premised on an alleged forfeiture of the "tip credit"; indeed, such an interpretation would render the regulations invalid.  First, the Legislature did not confer authority on the DOL to create prerequisites to payment of the cash wage.  Second, interpreting either regulation to create a prerequisite to payment of the cash wage would impose a requirement that does not exist in the statute and, therefore, would render the regulation invalid.  Third, the Legislature vested the DOL with enforcement of its own regulations and did not purport to create a private cause of action for purported regulatory violations.  Therefore, Plaintiffs' attempt to hold Defendants liable for asserted violations of "tip credit notice" regulations are meritless.

### 1. The Legislature Did Not Grant The DOL Specific Authority To Condition Payment Of The Cash Wage On "Tip Credit Notice"

The Legislature did not give the DOL authority to set conditions for payment of the cash wage or the authority to legislate notice to tipped workers.  To the extent that Plaintiffs construe any broad grant of authority as providing such discretion, such grant would be invalid.  Accordingly, Plaintiffs' claims that the DOL imposed such notice requirements through 12 N.Y.C.R.R. § 137-2.2 and 12 N.Y.C.R.R. § 146-2.2 fail as a matter of New York law. [4]

"Agencies, as creatures of the Legislature, act pursuant to specific grants of authority conferred by their creator."  *Campagna v. Shaffer*, 536 N.E.2d 368, 370 (N.Y. 1989).  As a result, "administrative agencies may only effect policy mandated by statute and cannot exercise

---

[4] The legality of the notice regulations upon which Plaintiffs rely, 12 N.Y.C.R.R. § 137-2.2 and 12 N.Y.C.R.R. § 146-2.2, is determined by New York state law.  *See Dutchess/Putnam Rest. & Tavern Ass'n, Inc. v. Putnam Cty. Dep't of Health*, 178 F. Supp. 2d 396, 402 (S.D.N.Y. 2001) (striking down regulation as beyond authority of county department of health under New York law).

sweeping power to create whatever rule they deem necessary." *N.Y. Statewide Coalition of Hispanic Chambers of Commerce v. N.Y. City Dep't of Health & Mental Hygiene*, 110 A.D.3d 1, 7 (N.Y. App. 2013), *aff'd*, 16 N.E.3d 538 (N.Y. 2014).  Put another way, "[w]hile the *legislature* may choose among conflicting considerations and mold the law according to its own will, subject to constitutional restrictions, it *cannot delegate* the same freedom of choice to an administrative officer but must erect guideposts which will enable the officer to carry out the legislature's will." *Tracy Bateman Farrell, et al.*, 2 N.Y. Jur. 2d Admin. Law § 45 (2016) (emphasis added) (citing cases).  "A legislative body cannot grant to any administrative body the power to make substantive rules, unlimited and unrestricted by statutory qualification." *Id.* § 42 (citing cases).

Accordingly, administrative officers may exercise discretion only in accordance with "specific standards." *Wharram v. City of Utica*, 106 Misc. 2d 204, 205 (N.Y. Sup. Ct. 1979). Where an agency issues regulations that go beyond its authority, such regulations are invalid and null.  *Campagna*, 536 N.E.2d at 372; *In Re Fed. Tel. & Radio Corp.*, 92 N.E.2d 907, 909 (N.Y. 1950) (declaring that actions of agency in "setting up substantive standards . . . which are found neither expressly nor by necessary implication in [a] statute" were "on familiar principles, invalid"); *Empire State Ass'n of Assisted Living, Inc. v. Daines*, 26 Misc. 3d 340, 349 (N.Y. Sup. Ct. 2009) ("The structural and environmental standards found in [the regulation] go beyond that legislative mandate and should be nullified.").

In *Wharram*, 106 Misc.2d at 204-05, for instance, the Legislature delegated the city authority to "regulate and license occupations and businesses" and authority to "regulate the use of streets and sidewalks," and it gave the commissioner of public safety authority to "adopt and enforce such reasonable rules, orders and regulations, not inconsistent with law, as may be

reasonably necessary to effect a prompt and efficient exercise of all powers conferred." The Utica Police Department created a "rotation list" to establish the order of calling tow trucks to the scene of automobile accidents or to remove illegally parked vehicles. *Id.* at 204. Despite the purported broad grant of discretion to adopt "reasonable rules," the court held none of the ordinances or statutes created any authority in the commissioner to establish a rotation list. *Id.* at 205. In establishing the ordered list of tow truck companies, the court held that the commissioner "assumed legislative authority, which he does not have"; "The Legislature is free to choose among conflicting considerations, and mold the law according to its own will subject only to constitutional restrictions. It cannot delegate the same freedom of choice to an administrative officer." *Id.* at 205.

Similarly, in *Redfield v. Melton*, 57 A.D.2d 491, 493-95 (N.Y. App. 1977), a statute gave the Commissioner of the Department of Motor Vehicles a naked grant of authority "merely direct[ing] that the Commissioner establish fees." The Commission thereafter, in fact, set fees for drivers' licenses. The court found that the statute provided an unconstitutional delegation of legislative authority because of "the absence of legislative direction in the form of standards" which "left [the Commissioner] unaided in determining who should be required to pay the fees and how much each individual should be required to pay." *Id.*; *see also Packer Collegiate Inst. v. Univ. of State of N.Y.*, 81 N.E.2d 80 (N.Y. 1948) (holding statute that gave licensing authority over schools without established standards was an unconstitutional delegation of authority); *City of Tonawanda v. Tonawanda Theater Corp.*, 29 A.D.2d 217 (N.Y. App. Div. 1968) (holding ordinance that gave mayor licensing authority over drive-in theaters without establishing licensing standards was unconstitutional delegation of authority).

Plaintiffs have not identified any delegation of authority to the DOL.  The Legislature did not give the DOL authority to set conditions for payment of the cash wage or vest the DOL with authority to legislate notice to tipped workers.  In issuing 12 N.Y.C.R.R. § 137, the DOL cited two statutes – NYLL § 21(11) and NYLL § 652.  Neither of these statutes provided the DOL authority to impose conditions or prerequisites on employers paying the cash wage.  In the former, the Legislature set forth "general powers and duties of commissioner" to include "such regulations governing any provision of this chapter as he finds necessary and proper."  NYLL § 21(11).  In the latter, the Legislature directed the commissioner to modify minimum wage orders "to increase all monetary amounts specified therein in the same proportion as the increase in the hourly minimum wage."  NYLL § 652.

Similarly, in issuing 12 N.Y.C.R.R. § 146, the DOL also cited NYLL § 199 and NYLL §§ 653, 656.  These sections are similarly off point.  NYLL § 199 merely provides that "[t]he commissioner may issue such rules and regulations as he determines necessary for the purposes of  carrying out the provisions of this article."  NYLL § 653 authorizes the commissioner to "cause an investigation to be made of the wages being paid" to ascertain whether the minimum wage is sufficient to provide adequate maintenance and health and directs the commissioner to "appoint a wage board" to inquire, report, and to provide recommendations.  And, NYLL § 656 directs the commissioner to accept or reject the board's report and recommendations and authorizes the commission to modify the regulations recommended by the board, confer with the board, or remand matters to the wage board "for such further proceeding as he may direct." None of these sections provides the DOL specific authority to create notice prerequisites to payment of the cash wage.

To the extent that Plaintiffs seek to interpret NYLL § 21(11) or NYLL § 199 – which allow the Commission to issue such regulations as he "determines necessary" or "as he finds necessary and proper" – as providing authority to impose prerequisites to payment of the cash wage, they are void on their face.  As the New York courts held in both *Wharram* and *Redfield,* to the extent that the Legislature purported to vest any such power in the DOL, such freedom of choice unconstrained by guide posts, is the type of grant that must be invalidated.  Because the Legislature did not specifically authorize the DOL to issue notice requirements, to the extent Plaintiffs seek to interpret the regulations on which Plaintiffs rely as doing just that, those regulations are invalid on their face.

### 2.     Because A Regulatory Agency Cannot Create Or Extend Existing Law, Plaintiffs' Interpretation Would Render The DOL's Regulations Invalid

Even if the Legislature had granted the DOL authority (which it did not), Plaintiffs' claims fail as a matter of law for another, independent reason.  The DOL cannot use such authority to legislate.  Even where the Legislature has conferred broad authority on an agency, the agency may not engage in lawmaking by creating requirements that do not exist in the statute.  Plaintiffs' proffered interpretation of the regulations would impose additional requirements for payment of the cash wage that the Legislature did not set forth in the statutory scheme and, therefore, would render the DOL's regulations invalid.

Under well-established New York law, "an administrative agency may not promulgate a regulation that adds a requirement that does not exist under the statute."  *Kahal Bnei Emunim & Talmud Torah Bnei Simon Israel v. Town of Fallsburg*, 577 N.E.2d 34, 39 (N.Y. 1991).  "Even under the broadest and most open-ended of statutory mandates, an administrative agency may not use its authority as a license to correct whatever societal evils it perceives." *Boreali v. Axelrod*, 517 N.E.2d 1350, 1353 (N.Y. 1987); *see Aymes v. City of N.Y.*, 27 A.D.3d 394, 397

40

(N.Y. App. 2006) (holding regulation imposing additional service of process requirements invalid); *see also Rosenbluth v. Finkelstein*, 91 N.E.2d 581, 582 (N.Y. 1950) (holding that agency acted beyond its authority when it added a "good faith" requirement to the issuance of a certificate where no such requirement existed in the statute); *While You Wait Photo Corp. v. Dep't of Consumer Affairs of City of New York*, 87 A.D.2d 46, 52 (N.Y. App. 1982) (holding that agency with licensing authority could not impose insurance requirement for a business license when no such requirement existed in ordinance).

For instance, in *Metropolitan Association of Employment Agents of New York v. Gourdine*, 120 Misc. 2d 290 (N.Y. Sup. Ct. 1983), *aff'd*, 108 A.D.2d 633 (N.Y. App. Div. 1985), the Legislature gave the New York City Department of Consumer Affairs authority to "make reasonable administrative rules" regarding, among other things, the notice provisions of the statute. *Id*. at 290. The statute required "employment agencies to furnish applicants with certain information." *Id*. at 291.  The agency issued a regulation that required employment agencies to furnish the required information *in writing*. *Id*.  The court pointed out that "[a]dministrative agencies may not impose additional requirements that have not been mandated by the legislature," and that "[w]ithout express authority from the legislature, an administrative agency may not require the submission of information in written form."  *Id*. at 291-92.  The court thus held that, in imposing a written notice requirement, the New York City Department of Consumer Affairs had "exceed[ed] the grant of authority to the [New York City Department of Consumer Affairs] because it require[d] employment agencies to perform tasks in a manner not sanctioned by law."  *Id*. at 292.  Thus, even assuming the grant of authority to make "reasonable rules" was valid, the court held that the agency could not impose requirements that the legislature did not mandate.

Similarly, in *Kahal Bnei Emunim*, 577 N.E.2d at 36, for example, plaintiff filed suit seeking to vacate tax assessments claiming that, as a religious and educational non-profit institution, it was exempt from property taxes under New York law.  Defendants argued that, pursuant to authority provided by the Legislature, the State Board of Equalization and Assessment (SBEA) promulgated regulations that required plaintiff to complete and file an application for exemption on forms prescribed by the SBEA.  *Id*.  The Court of Appeals disagreed.  It held that, "[t]here is no requirement in [the statute] that in order for the property of such a corporation to be exempted from real property taxes the corporation must complete and file any prescribed application forms."  *Id*. at 37-39.  To the extent that the SBEA regulation purported to require the execution and filing of such forms as a condition to entitlement to an exemption, "it constitutes an illegal addendum to the statute. . . . Indeed, an administrative agency may not promulgate a regulation that adds a requirement that does not exist under the statute."  *Id.* at 39.  Thus, because the Legislature did not create an application requirement, the Court of Appeals found the regulation requiring non-profit institutions to file an application to obtain an exemption invalid.

Likewise, in *Campagna v. Shaffer*, 536 N.E.2d 368, 369 (N.Y. 1989), the Legislature made it unlawful for "for any real estate broker . . . to represent that a change has occurred or will or may occur in the composition [of a neighborhood or block] with respect to race, creed, color [or] national origin . . . and to represent, directly or indirectly, that this change will or may result in undesirable consequences."  Residents of certain neighborhoods in the Bronx complained to the New York Secretary of State that, despite the law, certain real estate brokers aggressively were trying to convince owners to sell their property.  *Id*.  In response, pursuant to its authority to "set standards of conduct for the real estate industry and to promulgate

42

regulations pertaining to the licensing and disciplining of real estate brokers," the New York Secretary of State issued a regulation banning real estate agents from soliciting sales in those Bronx neighborhoods. *Id.* The Court of Appeals found the regulation invalid. It held that, in promulgating the regulation, the New York Secretary of State had "gone beyond administering the written law" and, under color of regulatory authority, had actually rewritten and extended the law: "The agency cannot make unlawful what the Legislature still has on the books as lawful." *Id.* at 371.

New York courts routinely have found that similar agency efforts to legislate ran afoul of the separation of powers doctrine. *See Empire State Ass'n of Assisted Living*, 26 Misc. 3d 340, 352-53 (N.Y. Sup. Ct. 2001) (holding that, even where the agency was given broad authority to promulgate regulations, regulations that imposed additional "notice conditions" on a change in services were invalid); *see also Garcia v. N.Y. City Dep't of Health & Mental Hygiene,* 38 N.Y.S.3d 880, 885 (N.Y. App. Div. 2016) (finding that the agency exceeded its authority where it "improperly made value judgments by creating a regulatory scheme with exceptions"); *Ahmed v. City of New York*, 129 A.D.3d 435, 440 (N.Y. App. Div. 2015) (finding that the Taxi and Limousine Commission exceeded its authority when it "manufactured a 'comprehensive set of rules without benefit of legislative guidance.'"); *Ellicott Grp., LLC v. State of N.Y. Exec. Dep't Office of Gen. Servs*., 85 A.D.3d 48, 53 (N.Y. App. Div. 2011) (holding that the Office of General Services "usurped the role of the legislative body by adopting a policy mandating the inclusion of the prevailing wage clause in all leases.").

Here, Plaintiffs argue that Defendants improperly paid the cash wage because they failed to provide notice in accordance with two regulations, namely 12 N.Y.C.R.R. § 137-2.2 and 12 N.Y.C.R.R. § 146-2.2, that require "tip credit notice." As set forth above, the Legislature

43

expressly allows employers to pay food service workers a cash wage subject to one explicit condition.  Specifically, since December 6, 2004, the Legislature has permitted employers to pay food service workers a cash wage – if "the tips of such an employee, when added to such cash wage, are equal to or exceed the minimum wage."  NYLL § 652(4).[5]  The Legislature has not imposed any "notice" condition on an employer's right to pay the cash wage, and the Agency, therefore, cannot add or create such a requirement.  Because the Legislature did not impose any notice requirement as a condition of paying the cash wage, the DOL does not have authority to condition the payment of the cash wage on a notice requirement.

Plaintiffs' interpretation of 12 N.Y.C.R.R. § 137-2.2 or 12 N.Y.C.R.R. § 146-2.2, therefore, would render these regulations void.  *See Campagna*, 73 N.Y.2d at 243; *see also Desmond-Americana v. Jorling*, 143 Misc. 2d 711, 714-17 (N.Y. Sup. Ct. 1989), *aff'd*, 550 N.Y.S.2d 94 (N.Y. App. Div. 1989) (holding that, where a statute provided "clear and explicit direction as to the issue of notification," the New York Department of Environmental Conservation's regulation requiring additional posting of notices was invalid;  "the Commissioner . . . ha[d] under color of regulatory authority, actually rewritten and extended the law").

The cases cited by Plaintiffs, in which courts revoked the tip credit based on a lack of notice, do not affect this conclusion because none of the courts considered the authority of the DOL to condition payment of the cash wage on tip credit notice.  *See, e.g., Angamarca v. Pita Grill 7 Inc.,* No. 11-CV-7777, 2012 WL 3578781 (S.D.N.Y. Aug. 2, 2012).  Accordingly, the Court should reject Plaintiffs' claim that Defendants supposedly forfeited the "tip credit" by

---

[5] This stands in stark contrast with the FLSA, which explicitly provides that employers cannot take a tip credit for a tipped employee "unless such employee has been informed by the employer of the provisions of this subsection." 29 U.S.C. § 203(m).

failing to meet "notice" requirements set forth in DOL regulations and deny Plaintiffs' motion for partial summary judgment on this ground.

> **3.      The New York Legislature Did Not Create Or Intend To Create A Private Right Of Action For Failure To Provide "Tip Credit Notice"**

Even if the DOL had issued valid regulations conditioning payment of the cash wage on certain types of notice (which it did not), Plaintiffs' claims fail as a matter of law for a third, independent reason.  Plaintiffs cannot assert any private right of action to enforce the DOL's notice requirements because the Legislature did not create a private right of action and, instead, gave exclusive enforcement authority to the DOL.

An agency cannot invent a private right of action.  Indeed, as the Supreme Court has explained, "it is most certainly incorrect to say that language in a regulation can conjure up a private cause of action that has not been authorized by Congress.  Agencies may play the sorcerer's apprentice but not the sorcerer himself."  *Alexander v. Sandoval*, 532 U.S. 275, 291 (2001)*; see Reyes v. Erickson*, 238 F. Supp. 2d 632, 637 (S.D.N.Y. 2003) ("In short, an implementing regulation cannot create a private right of action where the statutory provision it implements does not do so."); *Abrahams v. MTA Long Island Bus*, 644 F.3d 110, 119-20 (2d Cir. 2011) (finding that the regulation did not "simply apply the express mandate of the statute" but impermissibly created a private right of action for conduct that the statute did not prohibit) (quotation omitted).

The Legislature created a private cause of action only for food service workers who receive less than the cash wage or, with tips, less than the minimum wage.  That is, in § 663(1), the Legislature provided that, "[i]f any employee is paid by his or  her employer less than the wage to which he or she is entitled under the provisions of this article, he or she shall recover in a civil action the amount of any such underpayments."  NYLL § 663(1) .  Because the

Legislature requires employers to pay food service workers the cash wage, so long as the tips of such an employee equal or exceed the minimum wage, it created a cause of action only for those who are paid less than the cash wage or, with tips, less than the minimum wage. *Id.*; NYLL § 652(4); *see also* NYLL § 198 (1-b) (creating a private right of action for "any employee is not provided within ten business days of his or her first day of employment a notice as required by [§ 195(1)], he or she may recover in a civil action"); NYLL § 198 (1-d) (creating a private right of action "[i]f any employee is not provided a statement or statements as required by [§ 195(3)], he or she shall recover in a civil action").

No statute provides any private right of action for violation of the DOL's notice regulations. To the contrary, beginning in July 2007, the Legislature gave the DOL authority to direct enforcement of its own pronouncements. NYLL § 218 provides that, "[i]f the commissioner determines that an employer has violated a provision of article six (payment of wages), article nineteen (minimum wage act), . . . *or a rule or regulation promulgated thereunder*, the commissioner shall issue to the employer an order directing compliance therewith, which shall describe particularly the nature of the alleged violation. . . ." (emphasis added). The statute also empowers the DOL to direct payment of wages and liquidated damages and penalties. *Id.* In other words, the Legislature left enforcement of the DOL regulations to the DOL.

"[W]here a statute provides for no private right of action, and sets forth a specific alternative enforcement mechanism – courts have repeatedly declined to allow private suits to redress a violation." *Fernandez v. State,* No. M-84495, 2014 WL 1851175, at *3 (N.Y. Ct. Cl. Apr. 17, 2014) (holding that creation of a private right of action against municipal defendants under the Lead Poisoning Prevention Act would not comport with the legislative scheme that

<div align="center">46</div>

Case 1:14-cv-02740-AT-GWG   Document 417   Filed 12/07/16   Page 61 of 105

provides a tort remedy against the property owner); *see also Carrier v. Salvation Army*, 667 N.E.2d 328, 330 (N.Y. 1996) (finding no private right of action where the legislature expressly vested statutory enforcement authority under Social Services Law § 460-d "only in the Department, with additional equitable enforcement remedies available upon the request of the [D]epartment through the Attorney-General"); *Clancy v. State of N.Y.*, 126 Misc. 2d 292, 293 (N.Y. Ct. Cl. 1984) (holding that violation of Workers Compensation Law § 120 did not provide "a substantive cause of action" because the Workers Compensation Board could award civil penalties and order the restoration of an employee to former employment).[6]

Although the Legislature created a private right of action for certain statutory violations, it did not create any private right of action for violation of the regulations identified by Plaintiffs and, instead, conferred authority on the DOL to enforce its own regulations. *See* NYLL § 218. Accordingly, even if the DOL had issued valid regulations conditioning the "tip credit" on certain types of notice, Plaintiffs do not have a private right of action for alleged violations of the DOL's regulations. The Court, accordingly, should decline to enter summary judgment against Defendants on Plaintiffs' tip credit notice claims.

## V.     SUMMARY JUDGMENT IS NOT APPROPRIATE ON PLAINTIFFS' PRE-2011 TIP CREDIT NOTICE CLAIMS

Even if Plaintiffs could assert a cause of action based on a purported regulatory violation, Plaintiffs have not demonstrated that summary judgment is appropriate on their claim. Plaintiffs argue that, "[p]rior to January 2011, Carlson did not comply with its obligation to furnish the tipped workers with a statement with every payment of wages listing allowances claimed as part of the minimum wage" and that, therefore, Defendants cannot "avail themselves of the tip credit

---

[6] *See also Larson v. Albany Med. Ctr.*, 252 A.D.2d 936 (N.Y. App. 1998) (finding no private right of action for violation of Civil Rights Law § 79-i because the statute provided for prosecution of a misdemeanor).

21399126v.9

for that time period."  (ECF No. 413 at 1, 15, 20-22.)  Plaintiffs' argument fails for numerous

reasons.

> ### A.   Plaintiffs Cannot Assert Any Claim Of A Tip Credit Notice Violation For the Time Period Before July 24, 2009

Plaintiff cannot assert any claim for violation of the alleged tip credit notice regulations

prior to July 24, 2009.  In their Motion, Plaintiffs claim that Defendants cannot "avail themselves

of the tip credit" because, prior to 2011, "Carlson did not comply with its obligation to furnish

the tipped workers with a statement with every payment of wages listing allowances claimed as

part of the minimum wage in violation of N.Y. Comp. Codes R. & Regs. tit. 12, § 137-2.2

(repealed eff. Jan. 1, 2011)."  (ECF No. 412 at 2; *see* ECF No. 413 at 16.)  The regulations to

which Plaintiffs refer went into effect as of July 24, 2009.  *See* 12 N.Y.C.R.R. § 137.  Thus, even

if Plaintiffs could demonstrate that a cause of action existed for failure to provide notice of the

"tip credit" prior to January 1, 2011 (which they cannot), Plaintiffs cannot demonstrate that any

cause of action existed prior to July 24, 2009.  *See Chan v. Triple 8 Palace, Inc.*, No. 03 Civ.

6048, 2006 WL 851749, at *20 (S.D.N.Y. Mar. 30, 2006); *see also Blue Cross & Blue Shield of

N.J., Inc. v. Philip Morris, Inc.*, 133 F. Supp. 2d 162, 166 (E.D.N.Y. 2001) ("Generally, New

York statutes are applied prospectively, unless there is a clear legislative indication to the

contrary.") (citation omitted); *Billet v. Reno*, 2 F. Supp. 2d 368, 373 (W.D.N.Y. 1998) ("In the

absence of clear congressional intent that the statute be applied retroactively, a presumption

against retroactivity controls and the statute will be considered to apply prospectively.").

**B.      Plaintiffs Cannot Assert A Tip Credit Notice Claim For The Time Period From July 24, 2009 Through December 31, 2010 Because The Regulation Did Not Require Any Such Notice**

The plain language of the regulation on which Plaintiffs base their claim does not impose a "notice" requirement as a pre-condition for payment of the cash wage.  Plaintiffs base their argument on a faulty interpretation of the regulation that has no basis in the text.

**1.      The Plain Language Of The Pre-2011 Regulation Does Not Require Notice As A Prerequisite To Payment Of The Cash Wage**

Plaintiffs' claim for alleged failure to provide notice pre-2011 fails because the regulation upon which Plaintiffs rely does not impose any notice prerequisite to payment of the cash wage. Basic principles of statutory construction bear this out.

The plain language of the pre-2011 regulation on which Plaintiffs rely is unambiguous. The Court, accordingly, should interpret the regulation in accordance with its plain language. *See Bilski v. Kappos*, 561 U.S. 593, 603 (2010) ("[I]n all statutory construction, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning.") (citation omitted); *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 254 (1992) ("When the words of a statute are unambiguous . . . this first canon [of statutory construction] is also the last: judicial inquiry is complete.") (citation omitted).

The regulation contains, at most, four sections relevant to Plaintiffs' motion, including:

- 12 N.Y.C.R.R. § 137-1.4: "Allowances for tips shall not exceed . . . (5) on and after July 24, 2009, $1.60 per hour for an employee whose average of tips received is between $1.60 and $2.35 per hour; $2.35 per hour for an employee whose average of tips received is $2.35 per hour or more."

- 12 N.Y.C.R.R. § 137-1.5:  "On or after July 24, 2009, a food service worker shall receive a cash wage of at least $4.65 per hour, provided that the tips of such worker, when added to such cash wage, are equal to or exceed $7.25 per hour."

- 12 N.Y.C.R.R. § 137-2.1:  "Every employer shall establish, maintain and preserve for not less than six years weekly payroll records which shall show for each employee: . . . allowances, if any, claimed as part of the minimum wage."

- 12 N.Y.C.R.R. § 137-2.2:  "Every employer covered by this Part shall furnish to each employee a statement with every payment of wages listing hours worked, rates paid, gross wages, allowances, if any, claimed as part of the minimum wage, deductions and net wages."

The only section that specifies any type of pre-requisite for paying the cash wage is § 137-1.5, which allows an employer to pay a food service worker a cash wage of $4.65 per hour provided that the employer meets one requirement:  the "food service worker" must earn tips that "when added to the cash wage, are equal to or exceed $7.25 per hour."  12 N.Y.C.R.R. § 137-1.5.

Plaintiffs argue that 12 N.Y.C.R.R. § 137-2.2 imposes a notice requirement on employers that serves as a pre-condition to payment of the cash wage.  (Pls.' Mem. at 23-25.)  However, nothing in the regulation suggests such a requirement.  Other than the language set forth in 12 N.Y.C.R.R. § 137-1.5, the regulation contains no reference to any requirement or pre-condition to paying the cash wage.  It contains no reference to any type of "tip credit notice" pre-requisite, no cross-references to other sections of the regulations, and no penalty provision.  That should be the end of the inquiry.  *Bilski*, 561 U.S. at 603; *Conn. Nat'l Bank*, 503 U.S. at 254 (1992); *see Wei Yan Yan v. 520 Asian Rest. Corp.*, No. 13 Civ. 2417, 2014 WL 7177259, at *10 (S.D.N.Y. Dec. 17, 2014) (dismissing state tip credit notice claim and holding that, unlike FLSA, regulation did not require an employer to give an employee notice, as a condition for taking a tip credit) (citing 12 N.Y.C.R.R. § 137-1.4); *see also Chan*, 2006 WL 851749, at *20 (dismissing plaintiffs' claim for invalidation of tip credit and finding that where statute was silent, plaintiff had no redressable claim for employer's violation of posting requirement under NYLL).[7]

---

[7] If the DOL had wanted to condition payment of the cash wage on a "notice" requirement or other pre-requisite, it would have done so explicitly, as it did in other regulations.  *See, e.g.*, 12 N.Y.C.R.R. § 142-2.5(b) ("Tips, or gratuities, may be considered a part of the minimum wage, subject to the following conditions: … (iii) the allowance claimed by the employer is recorded

50

If there were any doubt that the Minimum Wage Order did not impose a notice requirement as a pre-condition to claiming the tip credit, the 2009 Restaurant and Hotel Industry Wage Board ("Wage Board") made abundantly clear that there was no such notice pre-requisite in its September 18, 2009 Report and Recommendation ("R&R").  (*See* R&R available at https://www.labor.state.ny.us/workerprotection/laborstandards/PDFs/Wage_Board_Report&Rec ommendations_9-18-09.pdf.)   As part of their responsibility of examining and reviewing the Minimum Wage Order that had gone into effect a few months earlier, the Wage Board issued the R&R.  (*Id.* at 1.)  As set forth in the R&R, the Commissioner of Labor tasked the Wage Board with addressing the following question:

> Under federal law, in order to receive a tip allowance, employers must inform tipped employees that they are getting a lower rate based on receipt of gratuities . . . [e]mployers who do not do so may not receive an allowance.  Should the Wage Orders be amended to conform with federal law in this respect?

(R&R at 3.)  In other words, the Commission asked the Wage Board whether it should amend its regulations to add an information requirement similar to federal law.  In response, the Wage Board recommended that the "Commissioner adopt a requirement that when employees receive the [tip allowance], employers be allowed to receive such a tip allowance only if they notify the employee of the tip credit system."  (*Id.* at 8.)  The only inference that can be drawn from these statements is that the Commissioner and the Wage Board both interpreted the Minimum Wage Order not to impose any notice requirement as a pre-condition to payment of the cash wage.

The Commissioner confirmed that same interpretation in its adoption of the Wage Board's recommendations on November 5, 2009.  (*See* Order of Commissioner of Labor M. Patricia Smith on the Report and Recommendations of the 2009 Wage Board, available at

---

on a weekly basis as a separate item in the wage record"); *see also* 12 N.Y.C.R.R. §§ 146-1.3; 146-2.2.

https://www.labor.state.ny.us/workerprotection/laborstandards/PDFs/Order_of_Commissioner_i

n_response_to_Wage_Board_11-5-09.pdf.)  Specifically, the Commissioner stated:  "I accept the

recommendation to require employers to notify tipped employees of any tip allowances that will

be taken and to disallow the tip allowance if such notice is not given."  (*Id.* at 2.)

The only inference that can be drawn from these statements is that the Commissioner

interpreted the Minimum Wage Order not to impose any notice pre-condition to payment of the

cash wage.  Because such statements reflect the DOL's interpretation of its own regulations, the

statements by the Commissioner and Wage Board of the Minimum Wage Order as set forth in

the R&R are entitled to deference.  *See Samiento v. World Yacht Inc.*, 883 N.E.2d 990 (N.Y.

2008) ("[I]f not irrational or unreasonable," the agency's construction of its regulations "should

be upheld.") (citation omitted); *Seenaraine v. Securitas Sec. Servs. USA, Inc.*, 37 A.D.3d 700

(N.Y. App. Div. 2007).

### 2.     Plaintiffs' Citation To Federal Case Law Is Unavailing Because Federal Courts Cannot Create or Expand State Common Law

Plaintiffs' citation to federal case law is unavailing because, even if a New York state

agency could create state law, a federal court cannot.  Plaintiffs base their Motion on a line of

federal court decisions holding – incorrectly – that the Minimum Wage Order quoted above

requires an employer to provide notice before claiming a tip credit.  (ECF No. 413 at 23-24

n.12.)  Plaintiffs' footing is hollow for at least two reasons.  First, such decisions are inconsistent

with the plain regulatory language.  Second, because there is no controlling New York case law

on point, such decisions represent an impermissible expansion of New York state law.  Such an

intrusion into state law violates well-established principles of comity and federalism.

a.   The Court Should Not Follow The Line Of Authority Stemming
From *Padilla*

This Court should not follow the line of federal authority that Plaintiffs invoke.  Multiple

courts have found no "notice" prerequisite to payment of the cash wage.  *See Jin v. Pac. Buffet*

*House, Inc*., No. 06-CV-579, 2009 WL 2601995, at *4 (E.D.N.Y. Aug. 24, 2009) ("The

defendants are entitled to the tip credit afforded by New York law because the plaintiff's cash

wage was $4.50 per hour . . . and the plaintiff received tips averaging at least $60 per day,

resulting in a total wage well exceeding the $5.15 per hour minimum wage."); *Yan v. 520 Asian*

*Rest. Corp*., No. 13 Civ. 2417, 2014 WL 7177259, at *10 (S.D.N.Y. Dec. 17, 2014) (holding that

"New York's Minimum Wage Order in effect prior to January 1, 2011, did not require an

employer to give an employee notice, as a condition for taking a tip credit.").

If confronted with the issue, New York courts likely would rule consistent with *Jin* and

*Yan.*  Such a ruling would be consistent with the plain language of the regulation and align the

regulations with the NYLL thereby preserving the regulations' validity.  *See supra* at 39-44

(explaining that, to the extent the regulation seeks to impose additional prerequisites to payment

of the cash wage, they represent an invalid exercise of legislative authority by the administrative

branch); *Boreali v. Axelrod*, 517 N.E.2d 1350, 1353 (N.Y. 1987) (noting that, "[h]owever

facially broad, a legislative grant of authority must be construed, whenever possible, so that it is

no broader than that which the separation of powers doctrine permits").

The cases upon which Plaintiffs rely all stem from the same faulty opinion in *Padilla v.*

*Manlapaz,* 643 F. Supp. 2d 302 (E.D.N.Y. 2009).  In that case, the district court held that, before

an employer could credit a portion of an employee's tips against the minimum wage, the

employer must furnish the employee a "statement" with every payment of wages listing

"allowances," among other things.  *Id.* at 309-10.  The Magistrate Judge stated:

53

> [U]nder certain circumstances, New York state law allows employers to credit a portion of an employee's tips and the costs of meals as allowances against the minimum wage requirement when certain preconditions are met. . . . First, the employer is required to "furnish to each employee a statement with every payment of wages listing . . . allowances . . . claimed as part of the minimum wage. . . ."  N.Y. Comp. Codes R. & Regs. tit. 12, § 137-2.2.  Second, the employer must "maintain and preserve for not less than six years weekly payroll records which shall show for each employee . . . allowances . . . claimed as part of the minimum wage. . . . "  N.Y. Comp. Codes R. & Regs. tit. 12, § 137-2.1.

*Id.*  The plain language of the Minimum Wage Order does not support such a conclusion.  The Magistrate Judge cited three sections in support of the statement that "New York state law allows employers to credit a portion of an employee's tips and the costs of meals as allowances against the minimum wage requirement when certain preconditions are met."  *Id.* at 309 (citing NYLL § 652(4); 12 N.Y.C.R.R.§ 137-1.5, 1.9.)  Of these sections, only one discusses any "pre-condition" for taking a tip credit – 12 N.Y.C.R.R. § 137-1.5 – and it merely notes "a food service worker shall receive a cash wage of at least $4.65 per hour, provided that the tips of such worker, when added to such cash wage, are equal to or exceed $7.25 per hour."  12 N.Y.C.R.R. § 137-1.5.  Without explanation, the Magistrate Judge thereafter identified 12 N.Y.C.R.R. §§ 137-2.1 and 137-2.2 as supposedly setting "preconditions" for "credit[ing] a portion of an employee's tips . . . against the minimum wage requirement."  *Padilla*, 643 F. Supp. 2d at 309-10.  But those sections appear in a separate section of the Minimum Wage Order, do not mention the cash wage, and do not have any connection to 12 N.Y.C.R.R. § 137-1.5.  Likewise, neither 12 N.Y.C.R.R. §§ 137-2.1 nor 2.2 contains any "penalty" provision, let alone any reference to "forfeiture of the tip credit," a subject about which they do not pertain.  12 N.Y.C.R.R. §§ 137-2.1, 137-2.2.

Since *Padilla*, a handful of courts, including this Court in *Salinas*, have assumed that notice is a prerequisite to payment of the cash wage in circumstances in which they were not

asked to evaluate *Padilla's* basis or reasoning.  *See, e.g., Salina*s *v. Starjem Rest. Corp.*, 123 F. Supp. 3d 442, 465-67 (S.D.N.Y. 2015); *Mendez v. Pizza on Stone, LLC*, No. 11 Civ. 6316, 2012 WL 3133547 (S.D.N.Y. Aug 1, 2012).   Because the underlying analysis in *Padilla* is faulty, the line of cases stemming from *Padilla*, including those cases cited by Plaintiffs (ECF No. 413 at 24-25 n.12), is likewise faulty.  This Court, however, is not bound by these decisions because none of them emanates from the Second Circuit or the Supreme Court.  *See Retail Indus. Leaders Ass'n v. Suffolk Cty.*, 497 F. Supp. 2d 403, 416 (E.D.N.Y. 2007).  Indeed, neither the Second Circuit nor the Supreme Court (nor the courts of New York) have held that an employer must meet a notice requirement before paying the cash wage to a food service worker prior to January 2011.  *Yong Kui Chen v. Wai Yin Chan*, No. 12-1845, 2015 WL 4032693, at *3 (2d Cir. July 2, 2015) (acknowledging a split of authority on this issue).

> **b.**     A Ruling That Follows *Padilla* Would Expand State Law Liability
> In Violation Of Principles Of Comity And Federalism

New York courts have not interpreted the Minimum Wage Order in a way that requires notice as a precondition to payment of the cash wage.  Instead, this requirement is traceable to *Padilla,* which represents an impermissible expansion of state law.  This Court, accordingly, should not follow *Padilla*.

Federal courts consistently have adopted a restrictive approach to interpreting and expanding state law in observance of principles of comity and federalism.  *Nat'l Advert. Co. v. Town of Niagara*, 942 F.2d 145, 151 (2d Cir. 1991) ("The interests of federalism and comity dictate conservatism in imposing our interpretive views on state statutes.").  "Comity demonstrates 'a proper respect for state functions' and 'a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform

their separate functions in separate ways.'" *Abuzaid v. Mattox,* 726 F.3d 311, 315 (2d Cir. 2013)

(citing *Levin v. Commerce Energy, In*c., 560 U.S. 413, 421 (2010)).

In following these principles, where state courts have not ruled on an issue of state law,

federal courts "generally choose the narrower interpretation which restricts liability, rather than

the more expansive interpretation which creates substantially more liability."  *S. Ill. Riverboat*

*Casino Cruises, Inc. v. Triangle Insulation & Sheet Metal Co*., 302 F.3d 667, 676 (7th Cir. 2002)

(citation omitted); *see also Kingman v. Dillard's, Inc.*, 643 F.3d 607, 617 (8th Cir. 2011) (same);

*Combs v. Int'l Ins. Co.,* 354 F.3d 568, 577 (6th Cir. 2004) (same); *Werwinski v. Ford Motor Co.*,

286 F.3d 661, 680 (3d Cir. 2002) (same).  Indeed, it is ultimately up to state courts to decide

whether and to what extent to expand state common law, and federal courts should respect this

role.  *Lord v. Swire Pac. Holdings, Inc*., 203 F. Supp. 2d 1175, 1180 n.2 (D. Idaho 2002) (citing

*City of Phil. v. Lead Indus. Ass'n*, 994 F.2d 112, 123 (3d Cir. 1993)).[8]

---

[8] *See, e.g*.,  *Ileto v. Glock Inc*., 349 F.3d 1191, 1224 (9th Cir. 2003) ("As a federal court, we may
not expand the authoritative pronouncements of a state's law in search of ways to reach what we
view as a just result."); *City of Phil. v. Beretta U.S.A. Corp.*, 277 F.3d 415, 421 (3d Cir. 2002)
("[P]ublic nuisance is a matter of state law, and it is not the role of a federal court to expand state
law in ways not foreshadowed by state precedent.");  *Proctor & Gamble Co. v. Haugen*, 222
F.3d 1262, 1280 (10th Cir. 2000) ("[I]t is not our place to expand Utah state law beyond the
bounds set by the Utah Supreme Court."); *J. v. Genuine Title, LLC*, No. CV RDB-14-0081, 2015
WL 8315704, at *11 (D. Md. Dec. 9, 2015), *certified question answered sub nom., Fangman v.
Genuine Title, LLC*, 136 A.3d 772 (Md. 2016) ("This Court will not expand the MCPA, a state
law, beyond the scope of existing Maryland state precedent."); *Hong Leong Fin. Ltd.
(Singapore) v. Pinnacle Performance Ltd.*, No. 12-CV-6010, 2013 WL 5746126, at *6 (S.D.N.Y.
Oct. 23, 2013) (explaining that a needless decision of state law is to be avoided as a matter of
comity, by procuring a surer-footed reading of applicable law); *Holmes v. Countrywide Fin.
Corp.*, No. 5:08-CV-00205-R, 2012 WL 2873892, at *9 (W.D. Ky. July 12, 2012) (applying
principles of federalism and comity; "In the name of judicial restraint, the Court will not expand
the reach of either state's law to include an action for credit monitoring."); *Callahan v.
Countrywide Home Loans, Inc.*, No. 3:06-CV-105, 2006 WL 3913763, at *2 (N.D. Fla. July 26,
2006) (dismissing plaintiff's state-law claims based on federalism concerns where the Florida
Supreme Court had yet to rule that the statute provided a private right of action).

In the absence of controlling New York state law, the Court should interpret the Minimum Wage Order in a way that "restricts liability, rather than the more expansive interpretation which creates substantially more liability." *S. Ill. Riverboat Casino Cruises, Inc.*, 302 F.3d at 676 (citation omitted); *Combs*, 354 F.3d at 577 (same). The *Padilla* line of cases is inconsistent with this mandate.  The Court therefore should decline to follow *Padilla* and its progeny.

### C.   Even If The DOL Imposed a Notice Pre-Requisite For Paying The Cash Wage, Friday's Complied With That Requirement

In all events, Plaintiffs are not entitled to summary judgment with respect to their pre-2011 tip credit notice claims because the evidence shows that Defendants complied with the alleged notice requirements by providing Plaintiffs "a statement with every payment of wages listing . . . allowances . . . claimed as part of the minimum wage."  N.Y.C.R.R. § 137-2.2.

Plaintiffs do not dispute that Plaintiffs' wage statements for the time period July 24, 2009 through December 31, 2010, show the tip credit that Friday's claimed toward the minimum wage.  (ECF No. 413 at 24.)  Indeed, Plaintiff's exhibits confirm that Friday's provided Plaintiffs who worked during this period wage statements that reflect the tip credit that Friday's claimed toward minimum wage.  (*See* Swartz Decl. Exs. 11, 41-43, 39.)[9]

Despite the plain reference to "tip credit" on the face of Plaintiffs' wage statements, Plaintiffs vaguely argue that Defendants "never furnished either of them with a wage statement that noted that Carlson was taking an 'allowance' of the tip credit or that tips were claimed as part of the minimum wage."  (ECF No. 413 at 24.)  Plaintiffs do not explain their mysterious reasoning.  Along with their repeated quotation and italicization of the word "allowance,"

---

[9] For instance, for training, Friday's paid Reid $7.25 per hour (Pls.' Ex. 11 at CR00000950) and, for her work as a host, Friday's paid Reid $5.00 per hour and credited tips of $2.25 per hour toward her earnings (Pls.' Ex. 11 at CR00000951-52).

21399126v.9

Plaintiffs provide a suggestion buried in their Rule 56.1 Statement that perhaps they mean to argue that Defendants improperly listed the tip credit in the "wrong place" on the wage statements – *i.e.*, under "earnings" rather than in some separate section called "allowances." (ECF No. 413 at 24; ECF No. 414 ¶¶ 24-26, 151-153.)  Basically, Plaintiffs seek a windfall with respect to this claim.  They ask the Court to order that they should be paid – $2.25 for every hour they worked over a nearly 18-month period plus liquidated damages plus interest – based entirely on their un-asserted suggestion that Defendants listed the tip credit in the "wrong place" on their wage statements.

Any such argument is specious.  First, Plaintiffs do not point to any requirement in the regulation or elsewhere in the Minimum Wage Order that governs the placement of the tip credit on Friday's wage statements, and they do not point to any requirement that Defendants failed to complete.  Second, Plaintiffs' hyper-technical attempt to engraft some additional requirement onto 12 N.Y.C.R.R. § 137-2.2 regarding the placement of the tip credit finds no support in either the case law or the regulations, and Plaintiffs do not attempt to identify any.  Third, by clearly listing the tip credit on Plaintiffs' wage statements, Defendants fulfilled the requirements of  12 N.Y.C.R.R. § 137-2.2 ("Every employer covered by this Part shall furnish to each employee a statement with every payment of wages listing . . . allowances, if any, claimed as part of the minimum wage.").  Indeed, as a fundamental matter, the tip credit represents earnings that Plaintiffs received in the form of tips, and Plaintiffs do not demonstrate otherwise.

Plaintiffs do not claim – and cannot seriously contend – that Defendants failed to act in accordance with the plain language of 12 N.Y.C.R.R. § 137-2.2.  Accordingly, Plaintiffs claims related to a pre-2011 tip credit notice requirement should be dismissed.

**VI.    SUMMARY JUDGMENT IS NOT APPROPRIATE ON PLAINTIFFS' POST-2011 TIP CREDIT NOTICE CLAIMS**

Plaintiffs cannot demonstrate that Friday's failed to provide Plaintiffs notice of the tip credit as a matter of law.  In fact, the evidence shows that Defendants provided Plaintiffs notice of their regular hourly pay rate, overtime hourly pay rate, tip credit, and regular payday through multiple sources.  Friday's also informed Plaintiffs that it would "make up" the difference if Plaintiffs did not earn enough tips to bring them up to the basic minimum hourly rate.  Plaintiffs' conclusory allegations to the contrary are insufficient to support summary judgment on their claims.

Assuming Plaintiffs can pursue a cause of action for violation of the 2011 Minimum Wage Order (which they cannot), the regulation contains two relevant sections.  Under 12 N.Y.C.R.R. § 146-1.3:   "An employer may take a credit toward[] the basic minimum hourly rate if a service employee or food service worker receives enough tips and if the employee has been notified of the tip credit as required in section 146-2.2 of this Part."  And, 12 N.Y.C.R.R. § 146-2.2 provides:

> (a) Prior to the start of employment, an employer shall give each employee written notice of the employee's regular hourly pay rate, overtime hourly pay rate, the amount of tip credit, if any, to be taken from the basic minimum hourly rate, and the regular payday.  The notice shall also state that extra pay is required if tips are insufficient to bring the employee up to the basic minimum hourly rate. . . . (c) An acknowledgment of receipt signed by the employee shall be kept on file for six years.  (d)  The employer has the burden of proving compliance with the notification provisions of this section.[10]

12 N.Y.C.R.R. § 146-2.2.  The regulations do not require notice in writing, certainly do not require notice in a "single document," and, in any event, Friday's provided notice to Plaintiffs in

---

[10] Notably, 12 N.Y.C.R.R. § 146-2.3 requires that "[e]very employer shall provide to each employee a statement, commonly referred to as a pay stub, with every payment of wages.  The pay stub must list hours worked, rates paid, gross wages, credits claimed (for tips, meals and lodging) if any, deductions and net wages."  However, Plaintiffs do not claim that any failure to provide such a statement results in forfeiture of the tip credit in the post-2011 period.

multiple ways such that disputed issues of material fact preclude summary judgment on their claims.

A.    The Post-2011 Regulations Do Not Require Written Notice As A Pre-Condition For Paying The Cash Wage

Contrary to Plaintiffs' allegations, the plain language of the regulations does not require employers to provide written notice as a pre-condition of paying the cash wage.  Section 146-1.3 requires an employer to notify a service employee or food service worker "of the tip credit" as required in section 146-2.2, but does not state that an employer must provide such notice in writing.  (Defs.' Resp. 56.1 ¶ 200; Ex. 28, Rabe Decl. ¶ 8; Ex. 33, N.Y. Dep't Of Labor Op. Letter (Mar. 4, 2015).)  If the New York DOL had intended to require "written" notice as a condition of the tip credit, it would have included a specific reference in § 146-1.3 as it did in other sections.  For instance, in § 146-2.2, the DOL referred to "written notice" in its title and opening paragraph.  (*Id.*)

In any event, the DOL has made clear that its regulations do not incorporate a written notice requirement as a precondition for taking the tip credit.  The New York DOL's interpretation of its own regulations, including 12 N.Y.C.R.R. §§ 146-1.3 and 146-2.2, is entitled to deference.  *Samiento,* 883 N.E.2d at 995; *see Entergy Nuclear Indian Point 2, LLC v. New York State Dep't of State*, 130 A.D.3d 1190, 1192 (N.Y. App. Div. 2015) (noting that the promulgating agency's interpretation may not be adjudged irrational "simply because other rational constructions of the regulatory provision in question exist, nor because the promulgating agency's reading of the relevant regulatory language either broadens its plain-language scope or amounts to a 'strict[ly] literal interpretation'") (internal citations omitted).

On March 4, 2015, Pico Ben-Amotz, General Counsel of the New York DOL, wrote an Opinion Letter addressed to Rep. Joseph Morelle, Majority Leader, New York State Assembly,

60

regarding "12 N.Y.C.R.R. §§ 146-1.3 and 146-2.2." (Defs.' Resp. 56.1 ¶ 201; Ex. 28, Rabe

Decl. ¶ 8; Ex. 33, N.Y. Dep't Of Labor Op. Letter (Mar. 4, 2015).)  Mr. Ben-Amotz wrote his

letter in the regular course of business of the New York DOL.  (Defs.' Resp. 56.1 ¶ 202; Ex. 28,

Rabe Decl. ¶ 8; Ex. 33, Certification.)  The regular course of business of the New York DOL

included making such records.  (*Id.*)  The purpose of the Opinion Letter was to "summarize the

Department of Labor's (DOL) interpretation of the intersection of the tip credit and notice of pay

rules in 12 N.Y.C.R.R. §§ 146-1.3 and 146-2.2 . . . [and to] explain[] why an employer in the

food service industry can remain eligible to claim the tip credit pursuant to 12 N.Y.C.R.R. § 146-

1.3 *even when the notice of tip credit provided by the employer is not in writing*." (Defs.' Resp.

56.1 ¶ 204 (emphasis added).)  It stated:  "[F]ood service employer[s are] eligible to claim the tip

credit even when they fail to provide written notice of the tip credit rules provided that the

employer can demonstrate compliance with all of the other minimum wage requirements and that

their employees understood the manner in which the employer took the tip credit." (Defs.' Resp.

56.1 ¶ 204; Ex. 28, Rabe Decl. ¶ 8; Ex. 33, N.Y. Dep't Of Labor Op. Letter (Mar. 4, 2015).)

   The DOL explained that the plain language of its regulations, as well as the policy

concerns it intended the sections to address, compelled such an interpretation of its regulations:

"DOL's interpretation of 12 N.Y.C.R.R. § 146-1.3 is compelled both by the plain language of the

regulation and the need to prevent unintended consequences, such as loss of eligibility for the tip

credit for otherwise compliant employers and an unjustified windfall for employees that have

actual notice of their employer's tip credit practices." (*Id.*)  Indeed, the DOL conceded that

public policy does not support an overly-technical "written" notice requirement where

employees understand the tip credit rules:

> If an employer can demonstrate compliance with [] all of the other minimum
> wage requirements and that their employees understood the manner in which the

61

employer took the tip credit, there is no policy rationale to preclude the employer from claiming the tip credit simply because the employer did not provide written notice of the tip credit rules.  Alternatively stated, written notice is not necessary to protect employees that have actual knowledge of the tip credit rules.

(Defs.' Resp. 56.1 ¶ 201; Ex. 28, Rabe Decl. ¶ 8; Ex. 33, N.Y. Dep't Of Labor Op. Letter (Mar. 4, 2015).)

Courts have provided the requisite deference to the DOL's Opinion Letter.  In *Carvente-Avila v. Chaya Mushkah Restaurant Corp.,* No. 12-CV-5359 (KBF), 2016 WL 3221141, at *1 (S.D.N.Y. Mar. 1, 2016), for example, the court rejected a claim that an employer forfeited the tip credit where the plaintiffs had "actual notice – but not written notice that complied with all requirements – of tip credit and other wage related information" and were otherwise paid above minimum wage.  The court noted that "New York courts have also consistently held that the NYDOL's 'interpretation of a statute it is charged with enforcing is entitled to deference.'"  *Id.* at *2.  The court held that the DOL's Opinion Letter was entitled to deference because the DOL provided "clear, rational bases for its interpretation of its own regulations, which does not contravene the 'regulatory and statutory scheme.'"  *Id.* The court rejected contrary district court opinions, including the *Fermin* and *Salinas* decisions relied upon by Plaintiffs that did not address the DOL's letter.  *Id.* at *3; *see Franco v. Jubilee First Avenue Corp.*, No. 14-CV-07729 (SN), 2016 WL 4487788 (S.D.N.Y. Aug. 25, 2016) (noting that "the New York Department of Labor (NYDOL), as well as at least one other court in this district, has interpreted 12 N.Y.C.R.R. §§ 146-1.3 and 2.2 to permit employers lawfully to claim the tip credit if they can prove that their employees understood that they were being paid pursuant to the tip credit minimum wage").

Accordingly, to show a violation of the regulations, Plaintiffs must show more than some technical violation.  Summary judgment is not appropriate on Plaintiffs' claims because ample evidence demonstrates that Friday's supplied notice of the tip credit, that Plaintiffs understood

62

the manner in which Friday's took the tip credit, and that Friday's otherwise complied with its minimum wage obligations.  (*See supra* at 9-25 and *infra* at 67-71.)

### B.   The Regulations Do Not Require That Employers Fulfill Their Notice Obligation In A Single Document

The Court should reject Plaintiffs' argument that Defendants "cannot establish proper notice through a combination of documents" because such an argument contravenes the DOL's interpretation of its own regulations and finds no support in the law.  (ECF No. 413 at 20.)

As an initial matter, the DOL has made clear that an employer in the food service industry can remain eligible to claim the tip credit pursuant to 12 N.Y.C.R.R. § 146-1.3 "*even when the notice of tip credit provided by the employer is not in writing*."  (Defs.' Resp. 56.1 ¶ 203 (emphasis added).)  It stated:  "[F]ood service employer[s are] eligible to claim the tip credit even when they fail to provide written notice of the tip credit rules provided that the employer can demonstrate compliance with all of the other minimum wage requirements and that their employees understood the manner in which the employer took the tip credit."  (Defs.' Resp. 56.1 ¶ 200; Ex. 28, Rabe Decl. ¶ 8; Ex. 33, N.Y. Dep't Of Labor Op. Letter (Mar. 4, 2015).)  Accordingly, it is illogical to assert that an employer must provide notice on a single piece of paper. [11]

Moreover, no court has held that 12 N.Y.C.R.R. §§ 146-1.3 or 146-2.2 requires an employer to provide notice in a single document.  To the contrary, courts have found that employers satisfied the notice requirements by conveying information in a series of communications.  In *Lozano v. Rugfrit 1350 LLC*, No. 159570/2014, 2015 WL 1938754, at *1

---

[11] Whereas the DOL provided a sample wage notice form under NYLL § 195(1)(a) for the convenience of employers, it did not require that employers use that specific form; rather, employers needed simply to provide the information required under NYLL § 195(1)(a) in writing within a specified time frame.  Notably, the form provided by the DOL did not define or otherwise specify various categories of information including which "rate or rates of pay" employers should include on the form.

(N.Y. Sup. Ct. Apr. 27, 2015), for example, the court found the defendants provided sufficient tip credit notice by providing plaintiff a series of documents.  The plaintiff alleged that the defendants were not entitled to take a tip credit because they purportedly failed to comply with notice requirements.  *Id*.  The defendants moved to dismiss, arguing that they provided plaintiff with a Policy Package, a pay rate notice pursuant to NYLL § 195.1, and wage statements that identified "the hours worked, the rate of pay, the restaurant name, taxes withheld, meal deductions, and definitions of certain terms."  *Id*. at *2.  The court held that defendants provided sufficient evidence to demonstrate that they provided plaintiff adequate notice regarding his wages and the tip credit.  *Id.* at *6.  "Although plaintiff may have desired the information in a different format, the only issue is whether or not defendants satisfied their legal requirement for notice, which they have.  However, even if defendants somehow left a box unchecked or engaged in another trivial mistake, plaintiff was not harmed by this and was fully paid."  *Id.*

Plaintiffs' argument is also inconsistent with how courts generally interpret notice provisions.  When statues require notice but remain silent regarding the form, courts do *not* read in requirements that employers provide notice in a particular form.  Several cases demonstrate this principle.  For instance, in *Schaefer v. Walker Bros. Enterprises*, 829 F.3d 551, 558 (7th Cir. 2016), the Seventh Circuit refused to imply a requirement that employers provide tip credit information required by the FLSA in a single document.  The employer's handbook provided incorrect and outdated information regarding the tip credit amount and failed to advise plaintiff that, if he did not receive enough hourly tips to equal or exceed the tip credit, the employer would make up the difference.  *Id.* at 557.  The Seventh Circuit, however, found that the employer furnished that information separately by displaying minimum wage posters in areas that employees frequented.  *Id.*  The Seventh Circuit held that the "handout plus the handbook

64

plus the poster collectively supplied the information required by federal law."  *Id.*  The court reasoned that, although it "certainly would have been preferable for the restaurants to put all of the information in one place . . . and provide accurate numerical examples,"  the statute "does not say that all of the information must be in a single document."  *Id.* at 558; *see Ebbert v. DaimlerChrysler Corp.*, 319 F.3d 103, 109 (3d Cir. 2003) (rejecting defendant's argument that notice of a charge dismissal from the EEOC had to be in writing because the statute offered "no specific command about form"; although a "common sense reading of the regulations suggest they presume a writing . . . that is not same as their requiring a writing and excluding notification by other means.").

In addition to these cases, courts across the country have similarly refused to find that notice must take a particular form in the absence of explicit statutory language.  *See, e.g.*, *United States v. Ionia Mgmt., S.A.*, 537 F. Supp. 2d 324, 326 (D. Conn. 2008) (analyzing notice required under 18 U.S.C. § 3612(d) and holding that, because the "statute contains no particulars on form of notice," sufficient notice is provided if the complaint "contains all of the information required"); *Ribas v. Mukasey*, 545 F.3d 922, 929 (10th Cir. 2008) (interpreting 8 U.S.C. § 1158(d)(4)(A) and holding that "nothing in the statute requires that the notice be provided in verbal form"); *Ajayem Lumber Corp. v. Penn Cent. Transp. Co.*, 487 F.2d 179, 183 (2d Cir. 1973), *supplemented*, 496 F.2d 21 (2d Cir. 1974) (rejecting the contention that notice must be through a formal motion, where the "statute does not require any specific form for the 'flag out' notice"); *Schiff v. United States*, 919 F.2d 830, 833 (2d Cir. 1990) (finding notice sufficient and

noting that "[t]here is no requirement that the Secretary use a specific form to provide notice of a deficiency to a taxpayer").[12]

Neither 12 N.Y.C.R.R. §§ 146-1.3 nor 146-2.2 requires an employer to provide notice in a single document.  Interpreting the regulations in the manner Plaintiffs suggest would be inconsistent with the manner in which the DOL has interpreted its own regulations, inconsistent with how courts have interpreted the regulations, and inconsistent with the manner by which courts generally interpret notice requirements.  As in *Lozano*, although Plaintiffs may have desired the information in a different format, Defendants satisfied their legal requirement for notice.  The Court, therefore, should reject Plaintiffs' attempt to imply a requirement that is conspicuously absent and at odds with the weight of authority.

### C.  Friday's Provided Plaintiffs Ample And Sufficient Notice Of The Manner In Which It Utilized The Tip Credit

Friday's provided Plaintiffs ample notice of the manner in which it utilized the tip credit through multiple sources.  Plaintiffs, accordingly, cannot establish the absence of notice as a matter of law, and disputed issues of material fact preclude the entry of summary judgment in their favor.

First, Friday's provided notice of the tip credit in writing.  Beginning in 2009, Friday's hiring packet contained a "Tip Credit-Pool Notification," that reflected the amount of the cash

---

[12] By contrast, when legislatures have required that notice take a particular form or be limited to a single document, they have expressly so stated.  *See, e.g.*, *Cunningham v. Fleetwood Homes of Georgia, Inc.*, 253 F.3d 611, 620 (11th Cir. 2001) ("The disclosure requirements established by the FTC . . . obligate warrantors to 'clearly and conspicuously disclose [warranty terms] in a single document'") (alteration in original) (quoting 16 C.F.R. § 701.3); *Thomka v. A. Z. Chevrolet, Inc.*, 619 F.2d 246, 249 (3d Cir. 1980) (explaining that Section 226.15(a)(1) requires that the disclosures appear "on the same page and above the place for the lessee's signature") (internal quotation marks omitted) (quoting 12 C.F.R. s 226.15(a)(1)); *Werts v. Fed. Nat'l Mortgage Ass'n*, 48 B.R. 980, 983 (E.D. Pa. 1985) (explaining that 12 C.F.R. § 226.8(a) "state[s] clearly that all required disclosures must appear on a single page").

wage to be paid per hour and the amount of the tip credit.  (Defs.' Resp. 56.1 ¶ 177; Ex. 1,

Cunningham Decl. ¶ 4; Ex. 2, 2009 Tip Credit Notification.)  Friday's required all new hires to

complete the materials in the hiring packet as part of their orientation.  (*Id.*)  In May 2011,

Friday's updated its Tip Credit-Pool Notification to include a statement that, "assuming you have

received a sufficient amount of tips to cover the tip credit, the amount of your tips per hour to be

credited as wages, i.e., the tip credit amount will be $_____."  (Defs.' Resp. 56.1 ¶ 186-88.)

Beginning on November 13, 2009, Friday's directed New York store managers to provide

written notice of additional pay information (including the regular hourly pay rate, the overtime

hourly pay rate, and the regular payday) using a form promulgated by the New York DOL

entitled "Notice and Acknowledgement of Wage Rate and Designated Payday Hourly Rate Plus

Overtime" and to incorporate such forms into its hiring packet.  (Defs.' Resp. 56.1 ¶¶ 178-80.)

Beginning on February 2, 2012, Friday's began utilizing the DOL form entitled "Notice and

Acknowledgement of Pay Rate and Payday" that reflected the regular rate of pay, the overtime

rate of pay, and the regular pay day.  Friday's instructed its New York stores to provide the

notice to all current employees, as well as new hires, starting February 2, 2012, and incorporated

the form into electronic new hire orientation through Stripes U beginning on October 30, 2012.

(Defs.' Resp. 56.1 ¶ 191-92.)

Beginning on January 20, 2015, Friday's directed all current employees and all new hires

to sign a form entitled "NYS Pay/Tip Notice" that included all items mentioned in § 146-2.2 on a

single form.  Using such form, Friday's re-informed all employees of their regular pay rate,

overtime pay rate, tip credit amount, and regular payday and also advised them that "if you do

not receive enough tips . . . so that your tips plus the cash wage . . . exceed the minimum wage, . .

. you will be paid additional wages that week to make up the difference."  (Defs.' Resp. 56.1 ¶ 196; Ex. 17, NYS Pay/Tip Notice.)

Second, employee handbooks and wage statements in effect from January 1, 2011, provide similar information.  They state that:  "[i]n some states, you may make less than minimum wage before tips. . . However, we promise that if you don't make minimum wage with your hourly rate of pay and tips combined, we'll make up the difference."  (Defs.' Resp. 56.1 ¶ 184.)  They contain a list of "starter questions" for each new employee to review with his or her supervisor and complete by hand, including "When do I get paid?" and "Am I in a tip credit state?  How much will I be paid by Friday's per hour?"  (*Id.*)  Friday's required each new employee to complete a written statement acknowledging receipt of the handbook.   (Defs.' Resp. 56.1 ¶ 185.)

Third, the paystubs that Plaintiffs themselves produced show regular hourly pay rate, overtime hourly pay rate, the amount of tip credit, and the regular payday.  For example, the paystub that Plaintiffs produced for Patrick Pink dated December 22, 2014, shows an hourly rate of $5.00 per hour for his work as a waiter and a "tip credit" of $3.00 per hour.  (Defs.' Resp. 56.1 ¶¶ 169-70; Ex. 24, Pink Pay Statements at 57.)

Fourth, Fridays' trained its managers regarding the tip credit, and they explained the tip credit to tipped employees including Plaintiffs.  In addition to incorporating notices into its hiring packets, hiring checklists, and new hire orientation, Fridays provided ongoing training and instruction to all of its managers so that they could explain the tip credit to each new hire.  For example, starting in 2010, "Restaurant Management Essentials" training for all new managers included instruction on "Wage And Hour Practices."  (Defs.' Resp. 56.1 ¶ 181.)  Among other things, Friday's instructed managers that the law "permits restaurants in many states to use the

68

gratuities earned by tipped employees to offset a portion of the minimum wage.  If a tipped Team

Member does not declare enough tips to bring their wage rate of pay to minimum wage, the

deficit will be added to the Team Member's wage rate to ensure the Team Member is paid

minimum wage.  This is an automated process and does not require input by managers." (*Id.*)

 In May 2011, KC Cunningham prepared a memorandum to all managers explaining the

tip credit and directing all managers to notify and obtain acknowledgement from all of their

current tipped employees.  (Defs.' Resp. 56.1 ¶ 186.)  The June 2011, "Orientation Facilitator's

Guide" instructed managers that "before the Trainee arrives at Orientation, there's some

planning that's gonna have to happen . . . Assemble all paperwork, brochures, something to write

with and on for the Trainee: . . . Tip Credit Acknowledgment . . . Tip-Share Agreement Form (if

applicable) New Team Member Orientation Handout." (Defs.' Resp. 56.1 ¶ 191)  In 2013,

Friday's circulated a "Just the Facts, Fridays" memo entitled "Tip Credit Notification" reminding

managers to notify all tipped team members of their cash wage rate of pay, tip credit amount, and

tip pool contribution.  In 2014, Friday's updated "Restaurant Manager Essentials" training.  It

continued to instruct managers that the law "permits restaurants in most states to use the

gratuities earned by tipped employees to offset a portion of the minimum wage. If a tipped Team

Member does not declare enough tips to bring their rate of pay to minimum wage, the deficit will

be added to the Team Member's wages to ensure the Team Member is paid minimum wage. This

is an automated process and does not require input by managers." (Defs.' Resp. 56.1 ¶¶ 193-

194)

 There is ample evidence that demonstrates that each of the Plaintiffs and Non-Party

Putative Class Members received notice of the manner in which Friday's took the tip credit.

Each of the individuals at issue in this motion acknowledges that he or she received written

<div align="center">69</div>

notice of the tip credit.  (Defs.' Resp. 56.1 ¶¶ 6, 29, 57, 97, 125).  All five individuals received Friday's Team Member Handbook, and worked in restaurants that prominently displayed posters, that explained the tip credit and informed them that Friday's would "make up the difference" if their tips were not sufficient to ensure they were paid the minimum wage.  (Defs.' Resp. 56.1 ¶¶ 6, 29, 56, 97, 125).  Each of these individuals also received regular wage statements that listed the hourly rate that he or she was paid and the "tip credit" amount that Friday's credited toward minimum wage.  (Defs.' Resp. 56.1 ¶¶ 6, 29, 56, 97, 125.)

Finally, managers in the restaurants where the Plaintiffs and Non-Party Putative Class Members were employed were trained to explain the tip credit and regularly did so.  (Defs.' Resp. 56.1 ¶¶ 6, 29, 57, 97, 125.)  For example, the managers in the restaurant where Plaintiff Zorrilla worked regularly provided written notices and explained the tip credit to employees. (Defs.' Resp. 56.1 ¶ 29, (Ex. 46, Kim Decl. ¶¶ 10, 14, 17-18; Ex. 47, McHenry Decl. ¶¶ 9, 11, 14-15).  Similarly, Plaintiff Mackey's managers ensured that they conveyed information about tipped Team Members' cash wage rates of pay and tip credit amounts and they obtained written acknowledgments from Team Members to show that they understand these issues.  (Defs.' Resp. 56.1 ¶ 57; Ex. 51, Jensen Decl. ¶ 12; Ex. 49, Morrison Decl. ¶¶ 9, 16; Ex. 53, Pepicelli Decl. ¶¶ 7, 16; Ex. 47, McHenry Decl. ¶¶ 9, 11, 14.)  Non-Party Putative Class Members Pink and Ellis were informed about the tip credit during interviews and onboarding.  (Defs.' Resp. 56.1 ¶¶ 97, 125).

In light of this evidence, any claims that Plaintiffs or Non-Party Putative Class Members that they did not receive "notice" are simply not credible.  At a minimum, this evidence creates genuine issues of material fact that preclude summary judgment.  *See, e.g., Driver v. AppleIllinois, LLC*, 917 F. Supp. 2d 793, 804 (N.D. Ill. 2013) (denying motion for summary

70

judgment finding disputed issues of material fact where human resources manager testified as to

defendants' "policy and practice to inform each tipped employee" about the tip credit at hire, but

plaintiffs swore that they did not receive notice); *Dorsey v. TGT Consulting, LLC*, 888 F. Supp.

2d 670, 683 (D. Md. 2012) (denying motion for summary judgment finding disputed issues of

material fact where, on one hand, an Executive VP testified that the restaurant trained its

managers to inform new hires of the wage structure and, on the other hand, plaintiffs denied that

managers in fact notified them).

## VII.   SUMMARY JUDGMENT SHOULD BE DENIED ON PLAINTIFFS' WAGE NOTICE CLAIMS PURSUANT TO NYLL § 195.1

Plaintiffs are not entitled to summary judgment on their annual wage notice claims.

Amendments to the NYLL, effective April 9, 2011, known as the Wage Theft Prevention Act

("WTPA"), require employers to provide written notice to their employees about their pay rates.

Prior to 2015, NYLL § 195(1)(a) required employers to:

> [P]rovide his or her employees, in writing in English and in the language
> identified by each employee as the primary language of such employee, at the
> time of hiring, and on or before February first of each subsequent year of the
> employee's employment with the employer, a notice containing the following
> information:  the rate or rates of pay and basis thereof, whether paid by the hour,
> shift, day, week, salary, piece, commission, or other; allowances, if any, claimed
> as part of the minimum wage, including tip, meal, or lodging allowances; . . . the
> name of the employer; any "doing business as" names used by the employer; the
> physical address of the employer's main office or principal place of business, and
> a mailing address if different; the telephone number of the employer; plus such
> other information as the commissioner deems material and necessary.

NYLL § 195(1)(a).  On December 29, 2014, the Legislature repealed the annual wage notice

requirement.[13]  Plaintiffs contend that Defendants failed to provide them with annual pay rate

notices pursuant to NYLL § 195(1)(a), and thus are liable for statutory damages set forth in

NYLL § 198(1-d).  (ECF No. 413 at 25-26.)

---

[13] Signed on December 29, 2014, the amendment eliminated the annual notice requirement going
forward.

Plaintiffs and the Non-Party Putative Class Members are not entitled to summary judgment on their annual wage notice claims for at least three reasons. First, the NYLL does not provide a private right of action for failure to provide the ***annual*** wage notices required by NYLL § 195(1). Second, Plaintiffs either received the notices required by NYLL § 195(1) at the time of hire, or they were hired before the law went into effect. Third, Friday's paid Plaintiffs all wages owed to them. As a result, Defendants are protected from liability under the NYLL, which provides an affirmative defense to employers who make timely and complete payment of all wages owed. At a minimum, there are disputed issues of fact that are material to Plaintiff's claims and Defendants' affirmative defenses.

### A. The NYLL Does Not Provide A Private Right Of Action For Failure To Provide Annual Notices

As an initial matter – and contrary to Plaintiffs' assertions – there is no private right of action under the NYLL for failure to provide employees with an annual pay rate notice under NYLL § 195(1).

NYLL § 198(1-b) governs any private right of action for violations of the notice requirements of NYLL § 195(1) and provides that "[i]f any employee is not provided within ten business days of his or her *first day of employment* a notice as required by [§ 195(1)] of this article, he or she may recover in a civil action." NYLL § 195(1) (emphasis added). The plain language of the statute provides a private right of action only for notices required at the time of hire – *not* for annual notices to be provided thereafter. Thus, as a matter of law, Defendants are not liable for any alleged failure to provide annual notices under NYLL § 195(1)(a). *See, e.g., Guan Ming Lin v. Benihana N.Y. Corp.*, No. 10-CV-1335 (RA) (JCF), 2012 WL 7620734, at *8 (S.D.N.Y. Oct. 23, 2012) ("[T]he proper interpretation of NYLL § 198(1-b) is that only employees who did not receive a proper wage and hour notice at the time of hiring can sue for a

penalty pursuant to § 198(1-b).”), *report and recommendation adopted*, No. 10-CV-1335 (RA)

(JCF), 2013 WL 829098 (S.D.N.Y. Feb. 27, 2013); *Hinckley v. Seagate Hosp. Group, LLC*, No.

16-CV-6118 (CGS), 2016 WL 6524314, at *9 (W.D.N.Y. Nov. 3, 2016) (dismissing plaintiffs’

claim for damages pursuant to NYLL 195(1)(a) on the basis that defendants failed to provide

*annual* notice).

       In line with the plain language of the statute, courts consistently have held that NYLL

§ 198(1-b) provides a private cause of action *only* for date of hire notices and does not provide

any such right for annual notices. *See, e.g.*, *Zurita v. High Definition Fitness Ctr., Inc.*, No. 13-

CV-4394 (CBA) (RML), 2016 WL 3619527, at *8 (E.D.N.Y. June 9, 2016) (finding that the

statute did not extend a private right of action to employees who do not receive subsequent

notices on or before February first and recommending that plaintiffs, each of whom were hired

before the statute took effect, receive no damages for purported wage notice violations), *report

and recommendation adopted*, No. 13-CV-4394 (CBA) (RML), 2016 WL 3636020 (E.D.N.Y.

June 29, 2016); *Guaman v. Krill Contracting Inc.*, No. 14-CV-4242 (FB) (RER), 2015 WL

3620364, at *8-9 (E.D.N.Y. June 9, 2015) (finding that the private right of action for § 195(1)(a)

applies to employees who do not receive notices at time of hire but does not extend to employees

who do not receive annual notices); *Carter v. Tuttnaeur U.S.A. Co.*, 78 F. Supp. 3d 564, 570

(E.D.N.Y. 2015) (finding that the plain language of the statute only confers a private right of

action upon those who do not receive their notice at the time of hire and dismissing the plaintiff’s

wage notice claims under the NYLL); *Yuquilema v. Manhattan’s Hero Corp.*, No. 13-CV-461

(WHP) (JLC), 2014 WL 4207106, at *11 (S.D.N.Y. Aug. 20, 2014) (holding that the NYLL only

extends the private cause of action under § 198(1-b) to those who do not receive notice at the

time of hire, but not upon those who do not receive annual notices), *report and recommendation*

*adopted*, No. 13-CV-461 (WHP) (JLC), 2014 WL 5039428 (S.D.N.Y. Sep. 30, 2014); *Reyes v. Sofia Fabulous Pizza Corp.*, No. 13-CV-7549 (LAK) (JCF), 2014 U.S. Dist. LEXIS 188734, at *21 (S.D.N.Y. Apr. 7, 2014) ("There is no private right of action under the WTPA for damages based on an employer's failure to provide subsequent annual notices").

The sole case cited by Plaintiffs for the proposition that an employee may recover statutory damages if he or she does not receive an annual wage notice – *Herrera v. Tri-State Kitchen & Bath, Inc.* – is not persuasive. (ECF No. 413 at 25-26). First, the defendants in *Herrera* defaulted. *See Herrera v. Tri-State Kitchen & Bath, Inc.*, No. 14-CV-1695 (ARR)(MDG), 2015 WL 1529653, at *1 (E.D.N.Y. Mar. 31, 2015). Unlike the cases cited above, in the court's brief opinion in *Herrera*, it did not analyze whether the NYLL provides a private right of action for violation of the annual wage notice requirement. *Compare id.* at *6 *with, e.g.*, *Zurita, Inc.*, 2016 WL 3619527, at *8, *report and recommendation adopted*, 2016 WL 3636020; *Guaman*, 2015 WL 3620364, at *8-9; *Carter*, 78 F. Supp. 3d at 570; *Yuquilema*, 2014 WL 4207106, at *11 *report and recommendation adopted*, 2014 WL 5039428; *Reyes*, 2014 U.S. Dist. LEXIS 188734, at *21; *Guan Ming Lin*, 2012 WL 7620734, at *8.

Not surprisingly, it appears that no court in either New York or the Second Circuit has relied on *Herrera* in analyzing whether a private right of action exists for failure to provide annual notices under NYLL § 195(1). Instead, courts in this Circuit repeatedly have confirmed what the plain statutory language reveals – that NYLL § 198(1-b) provides a private cause of action *only* for time of hire notices and does not provide any such right for annual notices.

### B.    Plaintiffs Fail To Demonstrate That Defendants Have Liability Under NYLL §§ 195(1)(a) And 198(1-b) For "Time Of Hire" Notices

Plaintiffs' sole surviving argument is that Defendants are liable for damages in connection with improper notice provided under NYLL §§ 195(1)(a) and 198(1-b) at the time of

Plaintiffs' hire.  Defendants dispute Plaintiffs' assertion that they did not receive proper time of hire notices, and Defendants have put forth evidence establishing that Plaintiffs received adequate notice.  Plaintiffs cannot demonstrate that they are entitled to summary judgment on their time of hire notice claims given the parties' clear dispute.  Indeed, Defendants have put forth evidence demonstrating that Plaintiffs' time of hire notice claims should fail as a matter of law.

### 1.    Zorrilla And Mackey Were Both Hired Prior to April 9, 2011 And Therefore  Do Not Have A Wage Notice Claim Under NYLL

Two Plaintiffs, Zorrilla and Mackey, were hired prior to the effective date of the WTPA. Zorrilla was hired by Friday's in or around September 2008.  (Defs.' Resp. 56.1 ¶ 27.)  Mackey was hired by Friday's in or around August 2009.  (*Id.* at ¶ 54.)  Accordingly, neither Plaintiff can state a claim for relief.

Courts in the Second Circuit uniformly have held that employees hired prior to the effective date of the WTPA have no claims for failure to provide notice at the time of hire under the NYLL.  *See Guan Ming Lin*, 2012 WL 7620734, at *8 (holding that, because "[e]very single one of the class representatives began working before April 9, 2011, the date the WTPA went into effect . . . none of them was entitled to receive a wage and hour notice 'at the time of hiring'"), *report and recommendation adopted*, 2013 WL 829098; *Guaman*, 2015 WL 3620364, at *9 (finding that, because the plaintiff was hired prior to the WTPA's effective date, the plaintiff did not have a private right of action for defendant's alleged failure to provide rate notices); *Canelas v. A'Mangiare Inc.*, No. 13-CV-3630 (VB), 2015 WL 2330476, at *5 (S.D.N.Y. May 14, 2015) (holding that three plaintiffs could not collect damages under the WTPA because a private right of action only extended to failure to provide notices on date of hire and all three employees were hired prior to the effective date of the WTPA); *Franco v.*

75

*Jubilee First Ave. Corp.*, No. 14-CV-07729 (SN), 2016 WL 4487788, at *13 (S.D.N.Y. Aug. 25, 2016) (dismissing WTPA claims against defendant because all plaintiffs were hired before WTPA took effect on April 9, 2011); *Kone v. Joy Constr. Corp*, No. 15-CV-1328 (LTS), 2016 WL 866349, at *5 (S.D.N.Y. Mar. 3, 2016) (same).

Because Friday's hired both Zorrilla and Mackey years before the WTPA went into effect, their claims under NYLL § 195(1)(a) fail as a matter of law.

### 2.      Reid, Pink, and Ellis Were Provided Adequate Notice Upon Hire

Friday's provided Plaintiffs Reid, and Non-Party Putative Class Members Pink and Ellis, several documents during their orientation and around their dates of hire that provided all of the information required by NYLL § 195(1)(a).[14]  Plaintiffs argue that the notice they received was deficient because:  (i) it did not include the regular rate of pay; (ii) it did not include the correct overtime rate of pay; and (iii) it did not disclose the fact that the Defendants took a tip credit. (ECF No. 413 at 26-28.)  Plaintiffs' arguments, however, rest entirely on the false premise that all pieces of information listed in NYLL § 195(1)(a) must be communicated through a single

---

[14] Plaintiffs Reid and Pink assert that the Notice and Acknowledgement of Pay Rate and Payday forms they received violated NYLL § 195(1)(a) because the notices did not list the minimum wage as the "rate of pay."  Instead, the forms listed $5.00, which was their cash wage, as the rate of pay.  (Defs.' Resp. 56.1 ¶¶ 17, 18, 133, 134.)  Plaintiffs Reid and Pink assert that the forms should have listed the minimum wage because it was the "regular rate of pay."  (Pls. Mem. at 26.)  This argument conflates the "regular rate of pay," which is a defined term in certain New York regulations, with "rates of pay," which is an undefined phrase contained in NYLL § 195(1)(a).  Plaintiffs cite three regulations in support of their argument – 12 N.Y.C.R.R. §§ 137-2.1 and 137-2.2 (repealed eff. Jan. 1, 2011) and 146.2 – none of which defines "rates of pay" or indicates that "rates of pay" is synonymous with the "regular rate of pay" or the minimum wage. NYLL § 195(1)(a) could have, but did not, state that employers must provide notice of the "regular rate of pay," or the minimum wage as part of the annual notice.  Friday's did not mislead or misstate Plaintiffs' rate of pay in the Notice and Acknowledgement of Pay Rate and Payday forms – it simply set forth their cash wage, which was, in fact, their rate of pay.  In any case, Plaintiffs' argument ultimately fails because they received notice of their cash wage, the minimum wage (which they argue is the regular rate of  pay), and their overtime rate through several different documents, and the notice they received fully satisfied the statutory notice requirements.

76

source or single document.  Specifically, Reid and Pink argue that Friday's provided insufficient notice because it failed to include all required information on a single form – the Notice and Acknowledgement of Pay Rate and Payday.  In a similar vein, Plaintiff Ellis argues that Friday's provided insufficient notice because it failed to give him the Notice and Acknowledgement of Pay Rate and Payday form at the time he was hired.

As discussed above, with respect to the tip credit notice, Plaintiffs insistence that notice must be provided on a single form is incorrect.  Neither the statute nor any regulations implementing the statute contain a requirement that all of the information listed in NYLL § 195(1)(a) be provided to employees in a single form.  Whereas the DOL provides a sample wage notice form for the convenience of employers, it does not require that employers use that specific form; rather, employers must simply provide the required information under NYLL § 195(1)(a) in writing within a specified time frame.[15]  Friday's satisfied the statutory requirement by providing the required notice to Plaintiffs through several documents.  This approach is fully compliant with the law.  *See Lozano v. Rugfrit 1350 LLC*, No. 159570/2014, 2015 WL 1938754, at *6 (N.Y. Sup. Ct. Apr. 27, 2015).

Friday's provided Plaintiffs here several documents during their orientation and around their dates of hire that provided the information required by NYLL § 195(1)(a).  Accordingly, and as further explained below, Reid, Pink and Ellis were all provided adequate notice under § 195(1)(a).  Further, each Plaintiff was paid completely and in a timely manner for every hour worked.  (Defs.' Resp. 56.1 ¶¶ 154, 163, 165.)[16]

---

[15] Notably, the form provided by the DOL does not define or otherwise specify what constitutes the "rate or rates of pay" required to be included on the form.

[16] Plaintiffs Zorrilla and Mackey were also paid completely and in a timely manner for every hour worked.  (Defs.' Resp. 56.1 ¶¶ 156, 160.)

### 3.      Reid Received Adequate Notice Upon Hire

Reid worked for Friday's for less than one month, from December 26, 2012 through January 20, 2013.  (Defs.' Resp. 56.1 ¶ 4.)  During her orientation and around her date of hire, Friday's provided Reid several documents outlining her pay and relevant additional  information.

On or about December 12, 2012, Friday's provided Reid a document that begins with "Dear Tipped Member," in which it informed Reid of:  (a) the amount of cash wages she would be paid per hour; (b) the tip credit amount; and (c) her right to retain tips received except for the applicable tip pooling arrangement.  (Defs.' Resp. 56.1 ¶ 6.)  Reid signed this notice in December 2012 around the time of her hire.  (*Id*. ¶ 6.)  Additionally, Friday's provided Reid a copy of Friday's Team Member Handbook, which included the amount Friday's would pay her by the hour, an explanation of the tip credit, and an explanation that, if Plaintiff did not make minimum wage with her hourly rate and tips combined, then Friday's would make up the difference.  (*Id*. ¶¶ 6, 7, 8.)  Friday's provided Reid wage statements clearly showing her regular rate of pay and the tip credit amount – that is, the amount of tips Reid received during the pay period credited toward minimum wage.  (*Id*. ¶ 19.)  Further, on January 16, 2013, Reid signed a document entitled "Notice and Acknowledgement of Pay Rate and Payday" – a DOL form designed specifically to meet the notice requirements under NYLL § 195(1)(a).  (*Id*. ¶ 16.)  Reid's own testimony and briefing establish that she received each of these documents.  (Pls.' Ex. 3, Reid Dep. at 123:2-17 (affirming that she received and signed the document beginning "Dear Tipped Member"); Pls.' 56.1 Stmt. ¶ 6 (admitting that she received the document beginning "Dear Tipped Member"); Pls.' 56.1 Stmt. ¶ 12 (admitting that she acknowledged receiving the Team Member Handbook); Pls.' Ex. 3, Reid Dep. at 181:10-182:10 (admitting that she received and tore off the bottom portion of her wage statements); Pls.' Ex. 3, Reid Dep. at 315:19-316:6 (admitting that she received a document entitled "Notice and Acknowledgement of

78

Pay Rate and Payday"); Pls.' 56.1 Stmt. ¶ 16 (admitting that she received the Notice and

Acknowledgement of Pay Rate and Payday).)  Reid's managers also conspicuously displayed

posters approved by the US DOL and the New York DOL in well-traveled areas of the restaurant

where she worked at the time of her hire and throughout her employment stating that employees

must be paid overtime at "1 1/2 times" the hourly rate, that "[a] specified allowance may be

credited toward the minimum wage for tips earned," and that "[i]f an employee's tips combined

with the employer's cash wage . . . do not equal the minimum hourly wage, the employer must

make up the difference." (Defs.' Resp. 56.1 ¶¶ 6, 8, 10.)  The posters advised Reid of the

minimum wage throughout her employment.  (*Id.*)

All of these documents, taken together, satisfy the notice requirements of § 195(1)(a).

*See Lozano v. Rugfrit 1350 LLC*, No. 159570/2014, 2015 WL 1938754, *4-6 (N.Y. Sup. Ct. Apr.

27, 2015).  Through these documents, Friday's provided Reid with notice of each item of

information listed in NYLL § 195(1)(a) including, among other things, her rates of pay, her

overtime rate, and the tip credit.

### 4.    Pink Received Adequate Notice Upon Hire

Pink worked for Friday's from 2012 through December 2014.  (Defs.' Resp. 56.1 ¶ 123.)

During his orientation and around his date of hire, Friday's provided Pink several documents

outlining his pay and relevant additional  information.  On or about April 24, 2012, Friday's

provided Pink with a document that begins with "Dear Tipped Member," in which Friday's

provided Pink:  (a) the amount of cash wage he would be paid per hour; (b) the tip credit amount;

and (c) his right to retain tips received except for the applicable tip pooling arrangement.  (*Id.* ¶¶

125, 126.)  Pink signed this notice in April 2012 around the time of his hire.  (*Id.* ¶ 125.)  Pink

was also provided written notice of his pay rate and the amount of the tip credit in a notice

entitled "Notice and Acknowledgment of Pay Rate and Payday" that he signed dated April 27,

2012.  (*Id.*)  Additionally, Friday's provided Pink a copy of Friday's Team Member Handbook,

which included the amount Friday's would pay him by the hour, an explanation of the tip credit,

and an explanation that, if Plaintiff did not make minimum wage with his hourly rate and tips

combined, then Friday's would make up the difference.  (*Id.*)  Pink also received wage

statements clearly showing his regular rate of pay, his overtime rate of pay, and tip credit amount

– that is, the amount of tips Pink received during the pay period credited toward minimum wage.

(*Id.*)  Further, on January 13, 2013, Pink signed a document entitled "Notice and

Acknowledgement of Pay Rate and Payday" – a DOL form designed specifically to meet the

notice requirements under NYLL § 195(1)(a).  (Defs.' Resp. 56.1 ¶125.)  Pink's own testimony

and briefing establish that he received each of these documents.  (Pls.' 56.1 Stmt. ¶ 125

(admitting that he received the document beginning "Dear Tipped Member"); Pls.' 56.1 Stmt., ¶

131 (admitting that he acknowledged receiving the Team Member Handbook); Pls.' 56.1 Stmt. ¶

151 (indicating that Pink received wage statements); Pls.' Ex. 37, Pink Dep. at 115:2-21

(admitting that he received his paystubs while he worked at Friday's); Pls.' 56.1 Stmt. ¶¶ 132,

139, 144 (admitting that he received and signed a document entitled "Notice and

Acknowledgement of Pay Rate and Payday").)  Pink's managers also displayed posters approved

by the US DOL and New York DOL in well-traveled areas of the restaurant where he worked at

the time of his hire and throughout his employment stating that employees must be paid overtime

at "1 1/2 times" the hourly rate, that "[a] specified allowance may be credited toward the

minimum wage for tips earned," and that "[i]f an employee's tips combined with the employer's

cash wage . . . do not equal the minimum hourly wage, the employer must make up the

difference." (Defs.' Resp. 56.1 ¶¶ 126, 127, 129.)  The posters advised Pink of the minimum

wage throughout his employment.  (*Id.*)  Pink's managers confirmed that they provided new

hires with written notice of the tip credit, the Notice and Acknowledgment of Pay Rate and

Payday (or a later electronic equivalent), and the Team Member Handbook. (*See* Defs.' Resp.

56.1; Ex. 40 ¶¶ 11-22; Ex. 50 ¶¶ 19-27; Ex. 51 ¶¶ 17-25; Ex. 52 ¶¶ 11-18; Ex. 54 ¶¶ 11-18.)

As with Reid, all of these documents, taken together, are sufficient to satisfy the notice

requirement of § 195(1)(a). *See Lozano v. Rugfrit 1350 LLC*, No. 159570/2014, 2015 WL

1938754, *4-6 (N.Y. Sup. Ct. Apr. 27, 2015). Through these documents, Friday's provided Pink

with notice of each item of information listed in NYLL § 195(1)(a) including among other things

his rates of pay, his overtime rate, and the tip credit.

### 5.      Ellis Received Adequate Notice Upon Hire

Ellis worked for Friday's from June 2014 through the present. (Defs.' Resp. 56.1 ¶ 95.)

During his orientation and around his date of hire, Friday's provided Ellis several documents

outlining his pay and relevant additional  information. Ellis admits that he signed a document

during his orientation that begins "Dear Tipped Member" and that outlined:  (a) the amount of

cash wages he would be paid per hour; (b) the tip credit amount; and (c) his right to retain tips

received except for the applicable tip pooling arrangement. (Defs.' Resp. 56.1 ¶¶ 98, 99.)

Additionally, during his orientation, Friday's provided Ellis a copy of Friday's Team Member

Handbook, which included the amount Friday's would pay him by the hour, an explanation of

the tip credit, and an explanation that if Plaintiff did not make minimum wage with his hourly

rate and tips combined, then Friday's would make up the difference. (Defs.' Resp. 56.1 ¶ 106.)

Ellis signed a receipt for the Handbook acknowledging that he had read and understood it. (*Id*.)

Ellis also received wage statements clearly showing his regular rate of pay, his overtime rate of

pay, and tip credit amount – that is, the amount of tips Ellis received during the pay period

credited toward minimum wage.  (*Id*.)  Further, on February 21, 2015, Ellis signed a document

entitled "Notice and Acknowledgement of Pay Rate and Payday" – a DOL form created

specifically to meet the notice requirements under NYLL § 195(1)(a).  (Defs.' Resp. 56.1 ¶ 107.)

Ellis received each of these documents.  (Pls.' Ex. 31, Ellis Dep. at 101:6-102:22 (admitting that

he received, and had an opportunity to review, the document beginning "Dear Tipped Member"

during orientation); Pls.' Ex. 31, Ellis Dep. at 99:20-100:9, 198:19-22 (admitting that he received

and was familiar with the Team Member Handbook); Defs.' Resp. 56.1 ¶ 119; Ex. 20, Colson

Decl. ¶¶ 9-10) (describing how Ellis received wage statements); Pls.' 56.1 Stmt. ¶¶ 107

(admitting that Ellis received and signed a document entitled "Notice and Acknowledgement of

Pay Rate and Payday"); Def's Ex. 55 (Stripes U transcript showing that Ellis received Tip Credit

Notification during onboarding).)  Ellis's managers also displayed posters approved by the US

DOL and the New York DOL in well-traveled areas of the restaurant where he worked at the

time of his hire and throughout his employment stating that employees must be paid overtime at

"1 1/2 times" the hourly rate, that "[a] specified allowance may be credited toward the minimum

wage for tips earned," and that "[i]f an employee's tips combined with the employer's cash wage

. . . do not equal the minimum hourly wage, the employer must make up the difference."  (Defs.'

Resp. 56.1 ¶¶ 97, 99, 104.)  The posters advised Ellis of the minimum wage throughout his

employment.  (*Id.*)  Ellis' manager confirmed that he provided new hires with written notice of

the tip credit, the Notice and Acknowledgment of Pay Rate and Payday (or a later electronic

equivalent), and the Team Member Handbook.  (*See* Defs.' Resp. 56.1 ¶ 102;  Ex. 43 ¶¶ 11-21.)

As with Reid and Pink, all of these documents, taken together, satisfy the notice

requirement of § 195(1)(a). *See Lozano v. Rugfrit 1350 LLC*, No. 159570/2014, 2015 WL

1938754, *4-6 (N.Y. Sup. Ct. Apr. 27, 2015).  Through these documents, Friday's provided Ellis

with notice of each item of information listed in NYLL § 195(1)(a) including his rates of pay, his

overtime rate, and the fact that Friday's took a tip credit.[17]

### C.      Defendants Have No Liability Under § 195(1) Because They Paid Plaintiffs All Wages Owed

Even if Friday's failed to provide adequate notice at the time of hire – which it did not –

Defendants still would not be liable under the NYLL.  The NYLL provides an affirmative

defense for employers who, while failing to provide proper notice, make complete and timely

payment of all wages owed.  NYLL § 198(1-b) ("In any action or administrative proceeding to

recover damages for violation of paragraph (a) of [NYLL § 195(1)], it shall be an affirmative

defense that . . . the employer made complete and timely payment of all wages due pursuant to

this article . . . to the employee who was not provided notice as required by [NYLL §

195(3)].").[18]

---

[17] To the extent Plaintiffs argue that Defendants are liable under Section 195(1) on the ground that Defendants supposedly did not retain a copy of Ellis's Tip Credit Notification – which they certainly do not argue explicitly in their brief – Plaintiffs' argument fails. First, Plaintiffs have failed to demonstrate that Defendants have not retained a copy of Ellis's Tip Credit Notification, as the only evidence they have to support that assertion is a legal conclusion by their own Plaintiffs' counsel (*see* Swartz Decl. ¶¶ 26-27) – not a material fact pursuant to Local Rule 56.1 – and a statement by Plaintiffs' counsel is not admissible evidence.  (*See* Defs.' Resp. 56.1 ¶ 98.) Second, Ellis *admits* that he was provided the Tip Credit Notification and Friday's maintained an electronic notice of acknowledgment of receipt of the notification on Stripes U (*id.*), which is all that is required.  Under the plain language of NYLL Section 198(1-b), an employee "may recover in a civil action" if he or she "is not ***provided*** within ten business days of his or her first day of employment a notice as required by subdivision one of section one hundred ninety-five of this article."  (emphasis added.)  The statute does not provide a separate theory of recovery for failure to maintain a copy of that notice.  Indeed, the only preservation requirement under Section 195(1) – which in any event ***does not*** give rise to any cause of action under the plain language of Section 198 – is that the employer preserve and maintain for six years "a signed and dated written acknowledgment . . . of receipt of this notice."  NYLL Section 198(1-b).  Here, Friday's has done just that, by maintaining and preserving such acknowledgment on Stripes U. (*See* Defs.' Resp. 56.1 ¶ 98.)

[18] Prior to January 1, 2015, the section included a typographical error, stating that "in any action or administrative proceeding to recover damages for violation of paragraph *(d)* of subdivision one of section one hundred ninety-five of this article." *See* Memorandum regarding State Assembly Bill A03090, which proposed an amendment to delete the reference to "paragraph (d)

83

Friday's made complete and timely payment of all wages due to Zorrilla, Mackey, Reid, Pink and Ellis.  (Defs.' Resp. 56.1 ¶¶ 154, 156, 160, 163, 165.)  Even if Plaintiffs were somehow able to establish that they did not receive proper notice of the tip credit, they still received at least the minimum wage for all hours worked and proper overtime payments for any hours worked in excess of 40 per week.  Indeed, it is undisputed that Friday's paid each Plaintiff and Non-Party Putative Class Member at least the cash wage, and it is undisputed that, with tips, Plaintiffs and Non-Party Putative Class Members received at least the minimum wage.  Because Friday's paid all plaintiffs completely and in a timely manner, it has an affirmative defense to Plaintiffs' claims under NYLL § 195(1)(a), and Plaintiffs' motion for summary judgment on their wage notice claims should be denied.

## VIII.   SUMMARY JUDGMENT IS NOT APPROPRIATE ON PLAINTIFFS' WAGE STATEMENT CLAIMS

Summary judgment is not appropriate on Plaintiffs' wage statement claims because Plaintiffs have failed to demonstrate that Defendants provided Plaintiffs non-compliant wage statements and, in any event, Plaintiffs received complete and timely payment of all wages owed, a complete defense to their claims.

Effective April 9, 2011, NYLL § 195(3) required every employer to "furnish each employee with a statement with every payment of wages, listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; ***allowances, if any, claimed***

---

to make clear that the violation in question would be a violation of subdivision 1 of S 195." (*available at* http://assembly.state.ny.us/leg/?default_fld=&bn=A03090&term=2013&Summary=Y&Actions=Y&Votes=Y&Memo=Y&Text=Y). While Bill A03090 was never passed, in 2014 both the Assembly and the Senate passed State Assembly Bill A08106C that corrected the typographical error in § 198(1-b), changing the "(d)" to "(a)," and resulting in the statutory language in place today.

84

*as part of the minimum wage*; and net wages." (emphasis added). "In order to establish the defendants' liability, the plaintiffs must (1) establish that the wage statements the defendants provided did not satisfy the requirements under NYLL § 195(3), and (2) overcome the defendants' affirmative defense that they made 'complete and timely payment of all wages due.' NYLL § 198(1-d)." *Guan Ming Lin v. Benihana N.Y. Corp.*, No. 10-CV-1335 (RA) (JCF), 2012 WL 7620734, at *10 (S.D.N.Y. Oct. 23, 2012).

Plaintiffs cannot meet their burden under either prong. They incorrectly assert that the wage statements they received were not compliant with NYLL § 195(3) because they "failed to indicate [they were] taking an allowance for the tip credit." (ECF No. 413 at 28-29.) In fact, as shown below, wage statements issued to Plaintiffs clearly list the tip credit. Moreover, Fridays made complete and timely payment of all wages due to Plaintiffs and, as a result, Plaintiffs are barred from collecting damages for any purported wage statement violations. Thus, Plaintiffs' bid for summary judgment on their wage statement claims should be denied.

As an initial matter, Plaintiffs Zorilla, Mackey, and Non-Party Putative Class Member Ellis rely on documents that are not, in fact, the wage statements that Friday's issued to them. (Defs.' Resp. 56.1 ¶¶ 49-53, 91-94, 111-12, 119-22.) These Plaintiffs point to purported "pay statements," which are actually printouts from Friday's Ultipro system that reflect a limited amount of payment information. (*Id.*; Ex. 20, Colson Decl. ¶ 11.) As Friday's Senior Director of Payroll explained, these "pay statement" printouts are not copies of – or otherwise representative of – the actual wage statements generated by Friday's payroll provider and provided to Plaintiffs. (*Id.*) And, in any event, these "pay statements," in fact, reflect the tip credit.

Contrary to Plaintiffs' assertions, the paystubs that Friday's made available to Plaintiffs fully comply with New York statutory requirements. In fact, they clearly show the "pay begin date," the "pay end date," as well as the hourly rates of pay, and the tip credit (per hour as well as in total). (*Id.*; Ex. 20, Colson Decl. ¶¶ 12-16); *see also* N.Y. Dep't of Labor Op., RO-08-0096 (Aug. 11, 2008) (stating that employers can comply with statute by giving employees access to their wage statements on a computer system from which the employees have the option to print); *Sexton v. Am. Golf Corp.*, No. 13-CV-873 (RJD) (SMG), 2015 WL 5884825, at *6 (E.D.N.Y. Oct. 8, 2015) (holding that bi-weekly pay stubs and W-2s satisfied NYLL § 195(3)'s requirements). For example, the "employee view" for Plaintiff Reid's paystubs dated February 4, 2013, show an hourly rate of $5.00 per hour for her work as a host and a "tip credit" of $2.25 per hour. (Defs.' Resp. 56.1 ¶ 7; Ex. 23, Plaintiff Reid's Wage Statements.) A review of the other Plaintiffs' wage statements reveals that Friday's provided each of them with fully compliant wage statements, including both their hourly rates and the amount of the tip credit. (Defs.' Resp. 56.1¶ 126; Ex. 24, Non-Party Putative Class Member Pink's Wage Statements (listing the hourly rate and the tip credit taken); Defs.' Resp. 56.1 ¶ 30; Ex. 25, Plaintiff Zorrilla's Wage Statements (same); Defs.' Resp. 56.1 ¶ 57; Ex. 26, Plaintiff Mackey's Wage Statements (same); Defs.' Resp. 56.1 ¶ 104; Ex. 27, Non-Party Putative Class Member Ellis' Wage Statements (same).)

Perhaps realizing their mistake in relying on irrelevant "pay statement" printouts, Plaintiffs have shifted their argument, and they now attempt to find fault with the perfectly compliant wage statements they received from Friday's. Plaintiffs suggest that their wage statements did not meet the statutory requirements because Fridays' listed the tip credit under the "earnings" heading rather than the "deductions" heading. (*See* ECF No. 413 at 24; ECF No. 414

¶¶ 24-26, 151-153.)  This argument is misplaced.  The statute merely requires employers to "list[] . . . allowances, if any, claimed as part of the minimum wage" and does not specify the placement on the paystub.  NYLL § 195(3).  No other statutes, regulations, or other authority suggests that an employer violates § 195(3) by listing the tip credit under "earnings."

Indeed, the existing authority affirms that the requirements of § 195(3) are satisfied so long as all of the required information is conveyed to the employee, regardless of the form in which the information is conveyed.  *See Sexton v. Am. Golf Corp.*, No. 13-CV-873 RJD SMG, 2015 WL 5884825, at *6 (E.D.N.Y. Oct. 8, 2015) (rejecting the plaintiff's argument that the employer was required to send a written disclosure of pay rates separate from a W-2 in order to satisfy the second prong of § 195(3), and finding that the plaintiff's bi-weekly stubs and W-2 provided all of the information required by § 195(3)); *Lozano v. Rugfrit 1350 LLC*, No. 159570/2014, 2015 WL 1938754, at *6 (N.Y. Sup. Ct. Apr. 27, 2015) ("Although plaintiff may have desired the information in a different format, the only issue is whether or not defendants satisfied their legal requirement for notice, which they have.  However, even if defendants somehow left a box unchecked or engaged in another trivial mistake, plaintiff was not harmed by this and was fully paid. . . . '[w]age statement requirements even under the New York Labor Law do not require this kind of calculation and expression . . . This is just extra stuff he would like there to be.'").

Moreover, the cases on which Plaintiffs rely do not support the argument that wage statements are deficient if the tip credit is shown in the earnings column.  Indeed, the two cases cited by Plaintiffs relate to claims where employers failed to indicate on the wage statements that they were taking the tip credit.  *See Salinas v. Starjem Rest. Corp.*, 123 F. Supp. 3d 442, 475 (S.D.N.Y. 2015) (finding that wage statements showed only the amount of tips earned but did

not indicate that the tip credit was being taken); *Inclan v. N.Y. Hosp. Grp., Inc.*, 95 F. Supp. 3d 490, 502 (S.D.N.Y. 2015) (finding wage statements showed only the amount of tips earned but did not show the per-hour amount of the tip credit, the total amount of the tip credit allowance taken, or the employee's gross wages before tip credit allowance).

Unlike the cases cited by Plaintiffs, wage statements provided to Plaintiffs included the per-hour amount of the tip credit as well as the total amount of the applicable tip credit resulting from the tip credit per hour multiplied by the number of hours worked.  (Defs.' Resp. 56.1 ¶¶ 24, 49, 91, 119, 136 & Exs. 25-26.)  In any event, the tip allowance represents earnings – earnings that employees received through tips – that the law allows employers to count as "wages" for purposes of meeting minimum wage requirements.  Thus, there was nothing misleading or unlawful about listing the tip credit amount in the earnings column of the wage statement. Although Plaintiffs might have preferred that the information on their wage statements be laid out differently, they have pointed to no authority for the proposition that the information was legally required to be arranged according to their preferences.

Further, even if Defendants somehow failed to supply compliant wage statements, summary judgment still must be denied.  The complete and timely payment of all wages due provides an affirmative defense to a wage statement claim.  *See* NYLL § 198(1-d) (providing that "[i]n any action or administrative proceeding to recover damages for violation of [NYLL § 195(3)], it shall be an affirmative defense that . . . the employer made complete and timely payment of all wages due pursuant to this article or articles nineteen or nineteen-A of this chapter to the employee who was not provided statements as required by [NYLL § 195(3)]."  *Id.*

Here, Defendants have put forth ample evidence that they paid Plaintiffs all the wages to which were entitled.  (Defs.' Resp. 56.1 ¶¶ 154, 156, 160, 163, 165.)  Among other things,

Plaintiffs' managers testified that they required Plaintiffs to record all time worked, and

Defendants' payroll personnel testified that they ensured that Plaintiffs received at least the

minimum wage for all hours recorded.  (Defs.' Resp. 56.1 ¶ 200; Ex. 20 ¶¶ 6-7; Ex. 40 ¶¶ 25-29

(testifying that manager who once saw Pink trying to perform off-the-clock work instructed Pink

to clock in before working); Ex. 43 ¶¶ 25-31 (affirming that manager who supervised Ellis and

Mackey never observed or heard of them working off-the-clock and specifically instructed

Zorrilla not to work off-the-clock on the one occasion that Zorrilla tried to help another server

while not clocked in; Ex. 46 ¶¶ 21-26 (stating that manager who supervised Zorrilla and Mackey

never observed or heard of them working off-the-clock); Ex. 47 ¶¶ 21-26 (same); Ex. 49 ¶¶ 24-

28 (stating the manager who supervised Mackey never observed or heard of Mackey working

off-the-clock); Ex. 50 ¶¶ 30-37 (affirming that manager who supervised Pink, Zorrilla, and

Mackey never observed or heard of them working off-the-clock); Ex. 51 ¶¶ 27-35 (affirming that

manager who supervised Pink and Mackey never observed or heard of them working off-the-

clock); Ex. 52 ¶¶ 23-28 (stating that manager who supervised Pink never observed or heard of

Pink working off-the-clock); Ex. 53 ¶¶ 26-30 (testifying that manager who supervised Mackey

never observed or heard of Mackey working off-the-clock); Ex. 54 ¶¶ 21-25 (stating that

manager who supervised Pink never observed or heard of Pink working off-the-clock).)

 At a minimum, this testimony demonstrates genuine disputed issues of material fact that

preclude summary judgment.  It is undisputed that that Friday's paid each Plaintiff and Non-

Party Putative Class Member at least the cash wage, and it is undisputed that, with tips, Plaintiffs

and Non-Party Putative Class Members received at least the minimum wage.  Because Friday's

paid all plaintiffs completely and in a timely manner, it has an affirmative defense to Plaintiffs'

claims under NYLL § 195(3).

In sum, Friday's provided Plaintiffs fully compliant wage statements, which contained all of the information required by § 195(3).  Plaintiffs' hyper technical interpretation of the statute's requirements is unsupported by the plain language of the statute and the relevant case law.  In any case, Plaintiffs cannot overcome Friday's affirmative defense that it made complete and timely payment of all wages due.  There is, at the very least, a dispute of fact as to whether Plaintiffs received wage statements compliant with § 195(3) and the Court should deny Plaintiffs' motion for summary judgment on their wage statement claims.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' motion for partial summary judgment.

Dated:  December 7, 2016                        Respectfully submitted,

                                                SEYFARTH SHAW LLP


                                                By:    /s/ Gerald L. Maatman, Jr.
                                                       Gerald L. Maatman, Jr.

Gerald L. Maatman, Jr.
Jennifer A. Riley
SEYFARTH SHAW LLP
131 S. Dearborn Street, Suite 2400
Chicago, Illinois  60603-5577
(312) 460-5000

Scott R. Rabe
Brendan M. Sweeney
SEYFARTH SHAW LLP
620 Eighth Avenue
New York, New York  10018-1595
(212) 218-5500

*Attorneys for Defendants*

21399126v.9

<u>**CERTIFICATE OF SERVICE**</u>

Gerald L. Maatman, Jr., an attorney, certifies that on December 7, 2016, he caused a true

and correct copy of **DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS'**

**MOTION FOR PARTIAL SUMMARY JUDGMENT** to be filed via the CM/ECF system,

which will notify counsel of record, including the following:

> Justin M. Swartz
> Sally J. Abrahamson
> Outten & Golden LLP
> 3 Park Avenue, 29th Floor
> New York, New York 10016
>
> Joseph A. Fitapelli
> Brian S. Schaffer
> Frank J. Mazzaferro
> Fitapelli & Schaffer, LLP
> 475 Park Avenue South, 12th Floor
> New York, New York 10016

> */s/ Gerald L. Maatman, Jr.*
> Gerald L. Maatman, Jr.

91